**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF GEORGIA**
**SAVANNAH DIVISION**

| | |
|---|---|
| **SOLOMAN OLUDAMISI AJIBADE** and **ADENIKE HANNAH AJIBADE,** as natural parents of Mathew Ajibade, and | |
| **THE ESTATE OF MATHEW AJIBADE** and Chris Oladapo, its Executor, | **CASE NO. 4:16-CV-82-WTM-GRS** |
| **Plaintiffs,** | |
| *v.* | |
| **JOHN WILCHER,** in his official capacity as Chatham County Sheriff, et al., | |
| **Defendants.** | |

**PLAINTIFFS' MOTION TO COMPEL PRODUCTION OF DOCUMENTS,**
**DEPOSITION TESTIMONY, AND FOR SANCTIONS**
**(PHOENIX SYSTEM)**

**ORAL ARGUMENT REQUESTED**

The Plaintiffs now seek production of documents—data—improperly withheld by the Sheriff. The data sought is from the Sheriff's "inmate management system," Phoenix. Initially, the Sheriff told the Plaintiffs the data did not exist. However, now, it is not disputed that (1) the Phoenix data does exist; (2) the Sheriff did not produce that data; (3) the chief custodian of the Phoenix data was never asked to produce it; and (4) the Sheriff designated a witness on Phoenix without properly preparing that witness. The Plaintiffs have repeatedly requested the data, starting in June 2016, and most recently in a letter sent on September 21. (Ex. A at 6-7.) The Sheriff knows it should be produced, but has failed to do so.

1

The Sheriff's discovery violation here is serious. At least seven depositions have been taken in reliance on the false basis that the data did not exist. Further, the Court should be advised that counsel for the Sheriff have direct access to the system and could have searched for the data themselves, but they chose not to do that and they also chose not to advise the Plaintiffs about that choice. Rather, up until September 20, the Sheriff's lawyers continually maintained that the data did not exist. (Ex. B, Shuff Dep. 9/20/16, 25:25-26:2 (Sheriff's attorney: "I object as to form because the testimony's been that [Ajibade] never made it into Phoenix.").)

The Plaintiffs ask the Court to order the Sheriff to produce the data from Phoenix. We also ask the Sheriff to produce another 30(b)(6) witness on the documents—properly prepared this time—and to order sanctions against the Sheriff in the form of fees and costs incurred in taking the first 30(b)(6) deposition and in bringing this motion. Rule 37(a)(5)(A) makes the award of fees and costs usually mandatory.

Unless the Sheriff accedes to *all* the relief sought on this motion, including the monetary sanctions, oral argument is requested. Plaintiffs seek the earliest possible hearing date because the documents withheld are fundamental and could be used at every deposition going forward. At the hearing, the Sheriff should produce a technical witness capable of advising the Court and the parties as to the relevant contents of Phoenix and its capabilities.

I.      **Introduction and relevant facts.**

The subject of this motion is data in the Sheriff's inmate management system Phoenix. Most of the knowledge Plaintiffs have about Phoenix comes from the deposition

of Travis Shuff, an IT analyst who described himself as the "maintainer" of the system

and whom the Sheriff designated as a person able to testify on his behalf about Phoenix.

(Ex. B, Shuff Dep. 11:2-9, 4:14-19.)

Phoenix is a program that was written by the Sheriff over a decade ago, *id*. at 13:11-

12, and is still in use today, *id*. at 14:2-8. It is a private, internal web site, *id*. at 12:16-24,

where deputies and others may enter, read, and change data regarding inmates.

The data available in Phoenix is substantial: "You'd find defendant information,

charge information, arrest history, incarceration history, warrants. It's pretty much the

sheriff's office system. **So anything digital the sheriff's office does is probably in**

**Phoenix.**" *Id*. at 17:20-18:4 (emphasis added).

Importantly, Phoenix also includes the capability to track whether a detainee

"would have a mental health problem." *Id*. at 18:14-23.

Phoenix runs entirely on servers owned and controlled by the County or the

Sheriff, and as such it is entirely within the Sheriff's custody or control. *See id*. at 14:18-23,

23:12-17, 24:1-6. Phoenix logs everything that is done on the system, including searches,

alterations, and modifications. *Id*. at 18:6-19. These logs would have timestamps down to

the second. Nothing is ever deleted out of Phoenix. *Id*. at 32:8-10.

Until the end of Mr. Shuff's deposition, as noted above, the Sheriff's attorneys and

his designee maintained that no data on Mr. Ajibade was ever entered into Phoenix. *E.g.*,

*id*. at 25:25-26:2; *see also id*. 28:23-24 ("The gentleman did not make his way into

Phoenix.").

However, it was at this deposition that, for the first time, any witness explained

how Phoenix *must* contain data on Ajibade:

> **Q.**     Okay. We know from documents in this case that
> inmates are assigned inmate ID's or detainee numbers,
> some kind of unique identifier for inmates.
>
> **A.**     Correct.
>
> **Q.**     Where is that done? Is that done in Phoenix?
>
> **A.**     Yes.
>
> **Q.**     So my first encounter with the jail, I would get my
> inmate number and it would track me for the rest of
> my life?
>
> **A.**     You would receive a number for your—for that record.
> Yes.
>
> . . .
>
> **Q.**     What's the format for an inmate number?
>
> **[LAWYER]:** I'm sorry.
>
> **A.**     It begins with the letter P for Phoenix, two digits for
> the year. So in 2016, you would get P16, and then it is a
> county *(sic, counting?)* number up from that point. I
> believe it's eight digits.
>
> . . .
>
> **Q.**     Well, let me show you, this is from our Exhibit P-7.
> **That's the client's name and then there's a number
> after that, P1501045.**
>
> **A.**     Yes.
>
> **Q.**     Right there. **That's a Phoenix inmate number?**
>
> **A.**     **Correct.**

*Id*. at 32:11-33:21.

Immediately after this passage, Mr. Shuff testified he was "not sure" how Ajibade

would have such a number. But he never changed his testimony that the number

assigned to Ajibade on the Sheriff's document—"P1501045"—was a Phoenix inmate

number. And that's the first time any lawyer in this case, including on Defendants' side,

apparently, recognized this fact.

So, indisputably and according to the Sheriff's designee, Mathew Ajibade has a

record in Phoenix. Mathew Ajibade's Phoenix data would be relevant to this action for

several reasons:

- It would directly bear on the truthfulness and completeness of deputy
  testimony regarding actions the Sheriff and his deputies took, because
  Phoenix is a computer system with a complete log of activities taken.

- The data, being the record of "anything digital the sheriff's office does," *id.*
  at 18:3-4, could contain information regarding what deputies knew about
  Ajibade and when they knew it. With respect to any available information
  about Ajibade's mental health status, that information bears directly on
  whether the deputies committed a constitutional violation, because police
  must treat "mental health" detainees with heightened sensitivity, and must
  take into account their unique vulnerabilities when deciding whether to
  apply force. *Martin v. City of Broadview Heights*, 712 F.3d 951, 962 (6th Cir.
  2013) (officers encountering a mentally unstable person must "de-escalate
  the situation and adjust the application of force downward"). If Phoenix
  contained information about Ajibade's mental health, but deputies either
  ignored it or were unaware of it, then that would be highly relevant to
  Plaintiffs' claims.

- It would tend to disprove Defendants Corizon and Brown's assertion that
  they had no responsibility for Ajibade because he was not yet properly
  booked into the jail. Brown, Corizon's nurse, denied having any ability to
  deal with Ajibade, saying, "I can't do an intake on [detainees] because
  they're not in the system for me to pull up." (Ex. C, Brown Dep. 74:13-
  75:10.) If Phoenix shows otherwise, that bears on the accuracy of Brown's
  testimony.

- Most fundamentally, this is the system the Sheriff's own designee says is the repository for "anything digital the Sheriff's office does." Hence, *anything* in there is likely to be highly relevant information.

The Phoenix data held by the Sheriff would also bear directly on the truthfulness of testimony by Evans, who filled out the restraint chair log that supposedly documented the deputies' checks on Ajibade's health and life. Here is why that is vitally important:

According to testimony, video, and documents, Ajibade spent approximately the last 90 minutes of his life strapped to a restraint chair and locked in a cell. The Sheriff's deputies and nurse Brown were supposed to make regular checks on Ajibade to assure his physical condition was stable and that he was not in danger of injury, harm, or death. They failed to do that; Ajibade died.

The Sheriff maintained a form, a "restraint chair log," where deputies were supposed to record checks on Ajibade's condition. (Ex. D, a/k/a Ex. P7.) This is the document that was shown to Shuff and which contains the preprinted "P1501045" number that comes from Phoenix.

Corrections Bureau Restraint Chair Log

Tracking #: 2015010061

| Lieutenant Authorized | LT JOHNSON | | Inmate Name-DIN | AJIBADE, MATTHEW, P1501045 | | | Date/Time Beginning | 01/01/2014 2345 | Resp-Nurse | NURSE BROWN,G |

Security Staff Name (rows with Ck entries, hrs, Capt Notified / Maj Notified columns)

Cpl EVANS

Removed by Lieutenant: [signature] Lt Johnson    Date-Ended 1/2/14    Time-Ended 0143

Reviewed by Manager

Comments

"Checks must be no more than 15 minutes apart. Any inmate placed in restraint chair for longer than six hours requires a Captain or above approval. No inmate should be placed in the restraint chair for more than twenty four hours without a Major or above approval."

PA00216

PLAINTIFF'S EXHIBIT 4

STATE'S EXHIBIT 48

The form states right at the bottom that: "Checks must be no more than 15 minutes apart." Corporal Evans, using her own handwriting, made the notes of the times that she or other deputies supposedly checked on Ajibade's condition: "2345, 0010, 0040, 0100, 0130." (Ex. E, Evans Dep. 111:18-112:15.) (The Court can observe that even if Evans's testimony is credited, checks were not done often enough according to the policy printed on the form.) Evans testified—and this is critical—that she filled this form out *contemporaneously, as the checks were done. E.g., id.* at 113:11-13 ("Q. And when did you fill that in? A. When I looked at the clock and it was 0010.").

What does this have to do with Phoenix? Answer: Evans's log is handwritten, but Ajibade's name and the "P1501045" Phoenix ID number were pre-printed at the top. This means that Ajibade would *have* to have been entered into Phoenix before the time this form was printed out. This number could not appear on this form without Ajibade being entered into Phoenix *first*. Evans said her first contemporaneous check was at 23:45. *Id*. at 112:3-16. If Ajibade's data was entered into Phoenix any time *after* 23:45, however, that proves that Evans was not truthful about handwriting the entries onto the form at the times she said. (The Court should be aware that Evans was criminally prosecuted for falsifying this document. The line of argument discussed here was not pursued by either the prosecution or the defense. Evans was acquitted.)

The question of what Ajibade's physical and mental status was in his final minutes is of enormous importance to the issues in this action, since the parties dispute that there was a use of excessive force, the parties dispute that the Defendants were deliberately indifferent to Ajibade's serious medical needs, and since the testimony from the only remaining living witnesses to this tragic event is already conflicting. The restraint chair log is a key document and its trustworthiness depends on knowing when it was printed out and filled in. Phoenix data, therefore, is fundamentally important to this action. And when served with a discovery request in June, the Sheriff didn't produce any Phoenix data.

***Worse, the Sheriff didn't even look for that data.*** If he had, he would have found it and produced it. Or, if he had a valid objection or privilege to assert in defense to

8

production, he would have done that. He did neither. And the Sheriff's designee, the man

designated to testify on this data, never looked for it either:

> **Q.**     Do you know whether you were asked to search the
> database or perform any functions at all on Phoenix
> with respect to the lawsuit that my client's family has
> filed against the county, the sheriff?
>
> **A.**     Which portion of the database?
>
> **Q.**     Any.
>
> **A.**     Inside of Phoenix?
>
> **Q.**     Yes.
>
> **A.**     No.
>
> **Q.**     Nobody asked you to look in Phoenix—
>
> **A.**     No.
>
> **Q.**     —as part of this lawsuit?
>
> **A.**     The gentleman did not make his way into Phoenix.[1]

(Ex. B, Shuff Dep. 28:10-24.)

Mr. Shuff confirmed again that he did not do *any* search on Phoenix at *any* time: "I

have not been asked to look at records for your client." *Id*. at 37:11-22.

During Mr. Shuff's deposition, the Sheriff's attorney who has personal access to

the system refused to search the system for any relevant data:

> **Q.**     Do you have that ability to do that right now?
>
> **[LAWYER]:**   Yes, but we have security concerns.

---

[1] Of course, this testimony came before Mr. Shuff explained that the "P1501045" number was a
Phoenix-generated number.

> **MR. CASH:**   Why don't you put those security concerns on the record because this is your deponent on Phoenix, and it's now unclear whether or not he has data in Phoenix.
>
> **[LAWYER]:**   That he's what?
>
> **[LAWYER]:**   That he has data in Phoenix.
>
> We probably need to talk to Nick. Can we go off the record for a moment?
>
> **MR. CASH:**   Well, no. I'd like to know what the security concerns are about giving us the data about our client who died in jail.
>
> **[LAWYER]:**   My security concerns are having someone else manipulate my computer and manipulate a system that our director of our IT department has a proprietary interest in. I think I'm using the correct word that he used yesterday.

*Id*. at 34:10-35:5.

The Sheriff's attorney again cited unknown "security concerns" about producing

this data:

> **MR. CASH:**   Okay. But there are security concerns but we just don't know what they are?
>
> **[LAWYER]:**   Right.
>
> **MR. CASH:**   Okay.
>
> **[LAWYER]:**   I was told very specifically. Exactly. I don't know. I mean, I don't have the wherewithal to answer the question.

*Id*.at 36:1-7.

The Sheriff has said nothing further about Phoenix since then.

## II.   Procedural history

Data from Phoenix was first requested on June 30. (Ex. F, Pls.' Request for Production of Documents No. 1.)

The Sheriff responded to that request, Ex. G, but did not produce anything from Phoenix.

Depositions of Sheriff's deputies and County IT employees—Johnson, Kenny, Brown, Capers, Evans, Batey, and Shuff—were taken during September 7-20. Johnson, Kenny, and Evans each testified about Phoenix generally, but Plaintiffs were unable to use any data from Phoenix at these depositions. Batey and Shuff are County IT staff who could have answered questions about Phoenix data had that been produced.

Travis Shuff was the Sheriff's designee specifically on Phoenix. His deposition was on September 20.

After Shuff's deposition, the same Sheriff's attorney promised to "put in a request" to have the database searched. Plaintiffs haven't seen any response to that request.

Plaintiffs sent a letter to the Sheriff, Ex. A, setting out their position about the inadequate Phoenix production. This letter was sent the day after the Shuff deposition. No response to the Phoenix part of the letter has ever been given.

As of today, data from Phoenix still has not been produced and the "security concerns" have not been substantiated, either. This motion follows.

11

### III.    Legal standards

This is a motion to compel discovery. Fed. R. Civ. P. 37(a)(3)(B)(iv) is the rule providing that a motion can be made when a party fails to produce requested documents.

Under Rule 37(a)(5)(A), the Court must award the Plaintiffs reasonable attorney's fees incurred in filing this motion if this motion is granted or "or if the disclosure or requested discovery is provided after [this] motion was filed," unless the failure to produce is justified.

Rule 30(b)(6) requires an organizational party, such as the Sheriff acting in his official capacity, to designate witnesses to testify "about information known or reasonably available to the organization." That organizational party has a duty to prepare designated witnesses and to ensure that they are qualified to discuss their designated topic.

Under Rule 26(e)(1)(A), a party who has responded to a request for production "must supplement or correct its disclosure or response . . . in a timely manner if the party learns that in some material respect the disclosure or response is incomplete or incorrect." The exception is if the information has been made available through some other means.

Rule 26(g)(1)(B) requires the attorney signing a discovery response to certify that it is "consistent" with the discovery rules, and moreover that the attorney signed the response after a "reasonable inquiry." Rule 26(g)(3) provides that in the event a certification is made "without substantial justification, the court . . . *must* impose an appropriate sanction on the signer, the party . . . , or both." (Emphasis added.)

## IV.   Argument

The Sheriff has committed multiple discovery violations. First, the Sheriff failed to

produce or even search for data that was responsive to the Plaintiffs' June document

request. Second, the Sheriff produced a witness who was not prepared to discuss the data

that the Sheriff indisputably has. Third, having been advised of his discovery violation,

the Sheriff has failed to supplement his discovery as required by Rule 26(e). The Court

should order the Sheriff to do that which he refuses to do voluntarily; namely, comply

with the Rules of Civil Procedure.

### A.   Failure to produce requested documents.

The Plaintiffs' first request for production was:

> 1.   Your entire file(s) which in any way pertains to
> Mathew Abijade, his arrest, his detention at the CCDC, the
> force used on him at the CCDC, the physical or mental health
> care rendered to him at the CCDC, the absence of any such
> care, or his death.

(Ex. F.)

Indisputably, the Sheriff maintains a Phoenix record on Ajibade; Mr. Shuff testified

that the existence of a Phoenix-format inmate ID number means the person is entered

into the database. And indisputably, no Phoenix data was produced. That is really the end

of the matter here.

Parties producing documents under a request to produce have a duty to conduct a

reasonable inquiry into their files. Moreover, *attorneys* have a duty to certify that *they*

have made a "reasonable inquiry into the factual basis" of any discovery response. Fed. R.

Civ. P. 26(g)(1)(B); *In re Delta/AirTran Baggage Fee Antitrust Litig.*, 846 F. Supp. 2d 1335,

1349-50 (N.D. Ga. 2012). Rule 26(g) "broadly imposes an affirmative duty to engage in pretrial discovery in a responsible manner" consistent with the discovery rules. *Id*. at 1350 (quote marks omitted).

There's nothing particularly difficult about searching in Phoenix. Recall that this is the Sheriff's *own* system, designed and maintained specifically by and for the Sheriff; this is not some unfamiliar software product whose inner workings are concealed.

And in this case, where counsel for the Sheriff has direct access to the Phoenix, the Sheriff's failure to produce the documents is particularly unreasonable. No one can say that the Sheriff is an unsophisticated litigant or that his attorneys with direct access to Phoenix are unaware of the importance of data in Phoenix, the Sheriff's main inmate database. Accordingly, the Sheriff and his attorneys violated Rule 26(g) in certifying their response to Plaintiffs' request for production which sought "[y]our entire file(s) which in any way pertains to Mathew Ajibade." (Ex. F.)

The Sheriff's failure to even *try* to look for this data, supported both by Mr. Shuff's comments and the assertions on the record by counsel, is all the more unreasonable. And the fact that it has been two weeks now since the Shuff deposition that uncovered the Sheriff's failure is not susceptible to any reasonable explanation at all.

The Sheriff violated Rule 34 and Rule 26(g).

14

**B. Failure to produce an adequately-prepared 30(b)(6) witness.**

The Sheriff designated Mr. Shuff as his witness on this topic:

5. The Phoenix inmate management system, its contents, capabilities, and usual practices for operation.

(Ex. H, deposition notice under R. 30(b)(6).)

However, although Mr. Shuff was mostly cooperative, he was not properly prepared. The topic specifically called for the Sheriff to produce a witness who could testify on Phoenix's *contents*. But as noted above, Shuff was not *asked* to look in the Phoenix database and *did not look* at its contents. (Ex. B, Shuff Dep. 28:10-24, 37:11-22.)

An organizational defendant like the Sheriff has a "duty to present **and prepare**" a designee on the organization's knowledge, and that duty goes beyond the deponent's own personal knowledge. *Strategic Decisions, LLC v. Martin Luther King, Jr. Ctr.*, No. 1:13-CV-2510-WSD, 2015 WL 2091714, at *6 (N.D. Ga. May 5, 2015) (emphasis added). A failure to present a properly prepared designee is the same as a failure to appear at all. *Id.* at *7.

In producing an unprepared 30(b)(6) designee for deposition, the Sheriff wasted every party's time. While Mr. Shuff provided important foundational information, the only real value of the deposition was to enable Plaintiffs to be in a position to write this motion (which also is a waste of Plaintiffs' time, in that the Sheriff should have produced the data months ago). Accordingly, the Sheriff violated Rule 30(b)(6).

**C.     Failure to supplement discovery.**

The Federal Rules place an obligation on parties to supplement their responses to requests for production when knowledge of incompleteness comes to light. Fed. R. Civ. P. 26(e)(1)(A).

The obligation to supplement is not conditional and does not permit parties to make their own subjective analysis of other parties' need for responsive documents or the importance of such documents. If parties have an objection to serve or privilege to assert, they must do so. In this case, the Sheriff has no legitimate objection to the production of the data from Phoenix, and he can have no excuse for failing to supplement even now. The "security concerns" excuse is not a legitimate privilege available under federal law, and even if it were, it hasn't even been substantiated (in writing or otherwise).

There are no reasonable excuses; the Sheriff is just delinquent in supplementation and thus continues to violate Rule 26(e)(1)(A).

**V.     Conclusion and relief sought.**

The Plaintiffs now demand production of data from Phoenix as follows:

- Good-quality, color copies of every web page on Phoenix that discloses anything related to Ajibade. We ask that these copies be made by navigating to the relevant pages in Internet Explorer, and taking screenshots in PNG format. We seek copies of the pages as they would have appeared to deputies on duty the night of January 1, 2015. If the interface has materially changed since then, we seek a written explanation as to how.

- Digital copies of every column of every row of every table that contains any information about Ajibade, in CSV format. This includes all data on Ajibade from any table, and includes any necessary data from other tables that is linked together to make up what's presented in the Phoenix user interface.

- All audit logs from Phoenix for the time period from noon on Jan. 1, 2015 until 11:59pm on Jan. 4, 2015. We would like to have logs showing *all* access to Phoenix (creation, modification, addition, deletion of any data) for the whole time period, in CSV format. We also request any other data or metadata necessary to make sense of the logs. E.g., if the log tables track access by numeric user ID only, then we request a table that cross-references user IDs with user names.

- All audit logs from Phoenix from *any* time period whatsoever—from the beginning of 2015 until today—that show access to Ajibade's records: searches, modifications, additions, etc. We request CSV-formatted files and sufficient additional data to make sense of the logs.

The Plaintiffs also ask the Court to order:

- That the Sheriff serve a list specifically describing the types of information contained in the system by category, sufficient to learn what else might be on Phoenix and what else might have been overlooked by the Sheriff in making his production.

- That, after production of the missing data, the Sheriff must produce any necessary witness to testify about the newly-produced data.

- That the Sheriff must pay the Plaintiffs' costs and attorney fees associated with the deposition of Travis Shuff on September 20.

- That the Sheriff must pay the Plaintiffs' attorney fees incurred in preparing and bringing this motion.

- That the Plaintiffs have leave to file proof of their costs and fees until after this motion is heard and any entitlement to costs or fees is determined.

- Oral argument on this motion, with the Sheriff required to provide a technical witness capable of advising the Court and the parties as to the relevant contents of Phoenix and its capabilities.

Respectfully submitted,


/s/ William F. Cash III
Troy A. Rafferty (Fla. Bar No. 024120)
Timothy M. O'Brien (Ga. Bar No. 548714)
William F. Cash III (Fla. Bar No. 68443)
**LEVIN, PAPANTONIO, THOMAS,**
**MITCHELL, RAFFERTY & PROCTOR, P.A.**
316 South Baylen Street, Suite 600
Pensacola, FL 32502
Phone:     850-435-7059
Fax:         850-435-7020
E-mail:    trafferty@levinlaw.com
                bcash@levinlaw.com

William R. Claiborne (Ga. Bar No. 126363)
Cameron C. Kuhlman (Ga. Bar No. 596159)
**THE CLAIBORNE FIRM, P.C.**
410 East Bay Street
Savannah, GA 31401
Phone:     912-236-9559
Fax:         912-236-1884
E-mail:    cameron@claibornefirm.com

Mark O'Mara (Fla. Bar No. 359701)
Alyssa Flood (Fla. Bar No. 99755)
**O'MARA LAW GROUP**
1416 East Concord Street
Orlando, FL 32803
Phone:     407-898-5151
Fax:         407-898-2468
E-mail:    mark@omaralawgroup.com

*Counsel for the Plaintiffs*

**CERTIFICATE OF CONFERENCE WITH DEFENDANT**
**REQUIRED BY FED. R. CIV. P. 26(c)(1) AND 37(a)(1)**

I certify that Plaintiffs have made genuine attempts to resolve this dispute with the

Sheriff, but these attempts have been unsuccessful. The Plaintiffs sought to resolve this

dispute in person on September 20, by letter on September 21 (Ex. A), and in a phone call

thereafter. Although the Sheriff repeatedly promised to follow up on the issue, no

response has come, and the dispute remains outstanding and unresolved.

/s/ William F. Cash III
William F. Cash III

**CERTIFICATE OF SERVICE**

I certify that on October 7, 2016, a copy of this motion was sent by electronic mail

to the e-mail list agreed to by the parties, and was also sent by U.S. Mail to the individuals

identified below:

Mark Capers
307 Stonebridge Circle
Savannah, GA 31419
E-mail: markcapers23@yahoo.com

Eric Vinson
1307 Stubbs Street
Savannah, GA 31404
E-mail: slvinson@visitsavannah.com

Paul Folsome
5 Holiday Court
Savannah, GA 31419
E-mail: pfolsome@aol.com

/s/ William F. Cash III
William F. Cash III

19