# EXHIBIT I

Page 1

IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF GEORGIA
SAVANNAH DIVISION

SOLOMAN OLUDAMISI AJIBADE and    )
ADENIKE HANNAH AJIBADE, as       )
natural parents of Mathew        )
Ajibade, and                     )
                                 )
THE ESTATE OF MATHEW AJIBADE     )
and CHRIS OLADAPO, its           )
Executor,                        )
                                 )
            Plaintiffs,          )CIVIL ACTION NO.
                                 )
       vs.                       )4:16-CV-82-WTM-GRS
                                 )
JOHN WILCHER, in his official    )
capacity as Chatham County       )
Sheriff, et al.,                 )
                                 )
            Defendants.          )


VIDEOTAPED DEPOSITION OF


JASON KENNY


September 12, 2016
9:34 a.m.


218 West State Street

Savannah, Georgia


Mynjuan P. Jones, RPR, CCR-B-1422

```
                                                       Page 2

 1                  APPEARANCES OF COUNSEL

 2   On behalf of the Plaintiffs:

 3        MARK M. O'MARA, Esq.
          O'Mara Law Group
 4        221 NE Ivanhoe Boulevard, Suite 200
          Orlando, Florida   32804
 5        mark@omaralawgroup.com

 6        TROY A. RAFFERTY, Esq.
          WILLIAM F. CASH, III, Esq.
 7        Levin, Papantonio, Thomas, Mitchell, Rafferty
          & Proctor, P.A.
 8        316 South Baylen Street
          Suite 600
 9        Pensacola, Florida   32502
          trafferty@levinlaw.com
10        bcash@levinlaw.com

11        CAMERON C. KUHLMAN, Esq.
          The Claiborne Firm, P.C.
12        410 East Bay Street
          Savannah, Georgia   31401
13

14   On behalf of the Defendants Debra Johnson and Andrew
     Evans-Martinez:
15
          BENJAMIN PERKINS, Esq.
16        Oliver Maner, LLP
          218 West State Street
17        Savannah, Georgia   31401
          bperkins@olivermaner.com
18

19

20

21

22

23

24

25
```

```
                                                             Page 3
 1   On behalf of the Defendants Corizon Health, Corizon,
     and Gregory Brown:
 2
         THOMAS S. CARLOCK, Esq.
 3       Carlock Copeland
         191 Peachtree Street, NE
 4       Suite 3600
         Atlanta, Georgia  30303-1740
 5       tcarlock@carlockcopeland.com

 6       THOMAS A. WITHERS, Esq.
         Gillen, Withers & Lake, LLC
 7       8 East Liberty Street
         Savannah, Georgia  31401
 8       twithers@gwllawfirm.com

 9
     On behalf of the Defendant Sheriff John Wilcher:
10
         R. JONATHAN HART, Esq.
11       JENNIFER R. BURNS, Esq.
         Chatham County Attorney's Office
12       124 Bull Street
         Suite 240
13       Savannah, Georgia  31401
         jburns@chathamcounty.org
14
15   Also Present:
     Debra Johnson
16   Gregory Brown
     Dave Liebhauser, Videographer
17

18
                         - - -
19

20

21

22

23

24

25
```

```
 1       A.    A muffle.
 2       Q.    Okay.  You didn't hear the noise of the
 3   Taser?
 4       A.    No.  That doesn't sound like a Taser to
 5   me.
 6       Q.    Okay.  Just move it forward.
 7             MR. CASH:  That was a minute one second
 8       one.
 9       Q.    (By Mr. O'Mara)  Stop.  What are you doing
10   there?
11       A.    I drive-stun him.
12       Q.    Where did you get him?
13       A.    On the thigh.
14       Q.    Where on the thigh?
15       A.    Like the middle right thigh.
16       Q.    You pointed to -- and you can't be seen on
17   the camera.  You want to just stand up and tell us
18   where that is.
19       A.    Right here (indicating), middle thigh,
20   middle right thigh.
21       Q.    What do you mean by middle when you say
22   middle --
23       A.    The middle.  Am I saying that right?
24       Q.    I don't know.  It's your testimony.
25       A.    Is this the middle?  The middle, you cut
```

Page 195

1  in half, this is the middle, like that (indicating).
2       Q.    Okay.  And that -- it's your testimony
3  that's where you drive-stunned him on this video?
4       A.    That looks like -- from the video that
5  looks like wherever --
6       Q.    Okay.  Let's let it run.  I think that's
7  about it.  Let's back up about 15 seconds and see
8  where we are.
9             MR. CASH:  I'm going to start at a minute
10       one.
11            MR. O'MARA:  Back up some more.  Just back
12       up another 15 seconds from there.
13            MR. CASH:  Okay.  This would be a second
14       forty-seven.
15      Q.    (By Mr. O'Mara) Okay.  Stop.  Now, we are
16  where we are before, which is what I -- where is
17  that?
18      A.    The thigh.
19      Q.    Okay.  And that's the -- would you agree
20  that's the upper thigh?
21      A.    Yes.
22      Q.    And it is looking on top of, is it not,
23  the actual underwear that he has on him; is that
24  accurate?
25      A.    Uh-huh.

 1    Q.   Okay.  Let's just let it run.  How long
 2  did you drive-stun him that time?
 3    A.   I don't remember.  I think that was the
 4  five-second one.  I don't remember which amount of
 5  time.  I know I try not -- that was the only time I
 6  gave him -- I did a five-second one, but I don't
 7  remember exact time.
 8    Q.   And what is that other noise that you hear
 9  as you're drive-stunning him?
10    A.   Him screaming.
11    Q.   Do you remember where in the scheme of the
12  other drive-stuns this one was?
13    A.   (Shakes head negatively).
14    Q.   You have to answer out loud.
15    A.   No, ma'am.
16    Q.   This seems to have -- from the --
17  presuming for the today's moment that the timing is
18  accurate, that was earlier on in the process and that
19  there were drive-stuns afterwards?  Does that make
20  sense to you or no?
21    A.   I really don't recall.
22    Q.   So tell me what happened with the last
23  drive-stun, whenever that was, whichever video this
24  was.  Tell me about that one.
25    A.   After?

| | | |
|---|---|---|
| 1 | Q. | You decided to use the Taser? |
| 2 | A. | Yes. |
| 3 | Q. | Four times, correct? |
| 4 | A. | Yes. |
| 5 | Q. | You decided to make sure you got him in |
| 6 | the restraint chair, correct? | |
| 7 | A. | Yes. |
| 8 | Q. | Those are all decisions you made based |
| 9 | upon the available information, correct? | |
| 10 | A. | Yes. |
| 11 | Q. | And your duties, right? |
| 12 | A. | Yes. |
| 13 | Q. | I'm asking whether or not those decisions |
| 14 | that you made would have been different if you had | |
| 15 | the information available to you that he was a mental | |
| 16 | health concern and that he had come into the jail | |
| 17 | with some mental health medication?  Would that have | |
| 18 | impacted your decision? | |
| 19 | A. | No. |
| 20 | Q. | None whatsoever? |
| 21 | A. | He would still have to go in the restraint |
| 22 | chair. | |
| 23 | Q. | Okay.  One thing you said was you would |
| 24 | have put him in the detox cell to be observed? | |
| 25 | A. | Yes. |