# EXHIBIT P

Page 1

IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF GEORGIA
SAVANNAH DIVISION

SOLOMAN OLUDAMISI AJIBADE and   )
ADENIKE HANNAH AJIBADE, as      )
natural parents of Mathew       )
Ajibade, and THE ESTATE OF      )
MATHEW AJIBADE and CHRIS        )
OLADAPO, its Executor,          )
                                )
            Plaintiffs,         )
                                )
       vs.                      )CIVIL ACTION NO.
                                )
JOHN WILCHER, in his official   )4:16-CV-82-WTM-GRS
capacity as Chatham County      )
Sheriff, et al.,                )
                                )
            Defendants.         )
                                )


VIDEOTAPED DEPOSITION OF


RUSSELL SMITH


January 23, 2017

10:05 a.m.


Chatham County Attorney's Office

124 Bull Street, 4th Floor

Savannah, Georgia


Annette Pacheco, RPR, RMR, CCR-B-2153

```
 1                APPEARANCES OF COUNSEL
 2   On behalf of the Plaintiffs:
 3        WILLIAM F. CASH III, Esq.
          LEVIN, PAPANTONIO, THOMAS, MITCHELL,
 4           RAFFERTY & PROCTOR, P.A.
          316 South Baylen Street
 5        Suite 600
          Pensacola, Florida  32502
 6        850-435-7163
          bcash@levinlaw.com
 7
     On behalf of the Defendants Debra Johnson and Andreux
 8   Evans-Martinez:
 9        BENJAMIN M. PERKINS, Esq.
          LAUREN E.H. MEADOWS, Esq.
10        OLIVER MANER LLP
          218 West State Street
11        Savannah, Georgia  31401
          912-236-3311
12        bperkins@olivermaner.com
          lmeadows@olivermaner.com
13
     On behalf of the Defendants Corizon Health, Corizon,
14   and Gregory Brown:
15        EMILY C. WARD, Esq.
          CARLOCK COPELAND & STAIR, LLP
16        191 Peachtree Street, NE
          Suite 3600
17        Atlanta, Georgia  30303-1740
          404-522-8220
18        eward@carlockcopeland.com
19   On behalf of the Defendants Sheriff John Wilcher and
     the Chatham County Detention Center:
20
          JENNIFER R. BURNS, Esq.
21        CHATHAM COUNTY ATTORNEY'S OFFICE
          124 Bull Street
22        Suite 240
          Savannah, Georgia  31401
23        912-652-7881
          jburns@chathamcounty.org
24
     Also Present:  David Liebhauser, Videographer
25                      - - -
```

Page 76

1  wrong.
2      Q.   So that -- that's telling us that every
3  supervisor has the opportunity to review these use of
4  force forms?
5      A.   Yes.
6      Q.   They have a duty to do that as well, don't
7  they?
8      A.   That's correct.
9      Q.   So when they reject a form, or it says --
10 or what happens when they reject one of these forms?
11     A.   Well, they're sent back to the officer
12 saying -- you know, usually they'll attach or, you
13 know, tell the officer or something that there's a
14 problem with, you know, the report, be it spelling,
15 grammatical, you know, grammar, punctuation.  You
16 know, they might have had the unit wrong, you know,
17 just unknown.
18     Q.   How does the deputy get that notice that
19 their document was rejected?
20     A.   It should be -- well, as I said, it's a
21 couple of ways.  SharePoint would kick it back to
22 them and they should see that their report's not been
23 approved.
24     Q.   They come in like an e-mail?  It would be
25 the next time they log onto SharePoint?

Page 77

1    A.    The next time they log on, they should
2    look at their reports and see which ones are pending.
3    Q.    Okay.
4    A.    They should.  But, again, the officer
5    should communicate with the supervisor verbally and
6    say, hey, what about my report.  I hadn't got it back
7    yet.  And that's how you communicate verbally.
8    Q.    So you're saying it's a shared duty
9    between the deputy and the supervisor to see --
10   A.    Absolutely.
11   Q.    -- that these reports get filled out and
12   then they get approved?
13   A.    Sure.
14   Q.    The deputy has the duty to follow up to
15   make sure that it gets approved?
16   A.    Sure.
17   Q.    Okay.
18   A.    Partly, not solely.
19   Q.    The other part is the supervisor?
20   A.    Yes.
21   Q.    It's a joint duty?
22   A.    Yes.
23   Q.    Yes.  Okay.  All right.  Next one, please.
24   No. 40?
25   A.    Document modified.  That's a corrected

1  process sooner than she ultimately did with this IA
2  investigation?
3      A.    Sure.
4      Q.    And do you think that that enforcement,
5  that discipline could have prevented one, two, or
6  maybe all three of these incidents?
7      A.    Don't know.
8      Q.    Now, just to sum up, none of these events
9  came to light until this May 2015 IA investigation
10 was open; correct?
11     A.    That's my understanding.
12     Q.    And that was after Mathew died at the
13 jail?
14     A.    Yes.
15     Q.    And so if these reports had been followed
16 up on earlier, it's possible that the sheriff and his
17 higher ups might have enforced the rules on tasering
18 earlier and provided Mathew Ajibade from being
19 tasered?
20     A.    I don't know.
21     Q.    Certainly, the sheriff's IA department
22 were not aware of the extent of the tasering that
23 was going on at the facility; true?
24     A.    That's true.
25     Q.    And if IA had been -- had been made