# EXHIBIT T

Page 1

IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF GEORGIA
SAVANNAH DIVISION

SOLOMAN OLUDAMISI AJIBADE and  )
ADENIKE HANNAH AJIBADE, as     )
natural parents of Mathew      )
Ajibade, and THE ESTATE OF     )
MATHEW AJIBADE and CHRIS       )
OLADAPO, its Executor,         )
                               )
          Plaintiffs,          )
                               )
     vs.                       )CIVIL ACTION NO.
                               )
JOHN WILCHER, in his official  )4:16-CV-82-WTM-GRS
capacity as Chatham County     )
Sheriff, et al.,               )
                               )
          Defendants.          )
                               )

DEPOSITION OF

LaMILES HILL

January 18, 2017

9:22 a.m.

Chatham County Attorney's Office

124 Bull Street

Savannah, Georgia

Annette Pacheco, RPR, RMR, CCR-B-2153

```
                                                          Page 2
 1                    APPEARANCES OF COUNSEL
 2   On behalf of the Plaintiffs:
 3        WILLIAM F. CASH III, Esq.
          LEVIN, PAPANTONIO, THOMAS, MITCHELL, RAFFERTY
 4        & PROCTOR, P.A.
          316 South Baylen Street, Suite 600
 5        Pensacola, Florida  32502
          850-435-7163
 6        bcash@levinlaw.com
 7   On behalf of the Defendants Debra Johnson and Andreux
     Evans-Martinez:
 8
          BENJAMIN M. PERKINS, Esq.
 9        LAUREN E.H. MEADOWS, Esq.
          OLIVER MANER LLP
10        218 West State Street
          Savannah, Georgia  31401
11        912-236-3311
          bperkins@olivermaner.com
12        lmeadows@olivermaner.com
13   On behalf of the Defendants Corizon Health, Corizon,
     and Gregory Brown:
14
          EMILY C. WARD, Esq. (By telephone)
15        CARLOCK COPELAND & STAIR LLP
          191 Peachtree Street, NE, Suite 3600
16        Atlanta, Georgia  30303-1740
          404-522-8220
17        eward@carlockcopeland.com
18   On behalf of the Defendants Sheriff John Wilcher and
     the Chatham County Detention Center:
19
          R. JONATHAN HART, Esq.
20        JENNIFER R. BURNS, Esq.
          CHATHAM COUNTY ATTORNEY'S OFFICE
21        124 Bull Street
          Suite 240
22        Savannah, Georgia  31401
          912-652-7881
23        jburns@chathamcounty.org
24   Also Present:  Constance Cooper
25                        - - -
```

```
 1        A.      Right.
 2        Q.      Okay.
 3        A.      All I can go by with that is basically,
 4   like in my IA interview, you know, when they talked
 5   to me in my IA interview about the same incident that
 6   I had with the aggressive female, the one who
 7   assaulted the officer, which I brought up, hey, I had
 8   a situation where someone was in and I stepped in and
 9   had to help an officer.  And . . .
10        Q.      Okay.  They also say this:  "Any inmate
11   placed in the restraint chair during intake in
12   Receiving and Discharge will be placed in detox cell
13   1, 2 or 6 in the old booking area."  Now, is that a
14   new rule?
15        A.      At that time I wasn't up at one of the
16   officers who -- I didn't work up in booking prior
17   to -- actually never worked in -- well, afterwards,
18   maybe back in late 2015, I got moved, assigned up to
19   booking.  But that would be someone who worked --
20   you'd have to ask someone who worked in booking or
21   R&D area right after they opened it up after
22   construction.  You know what I mean?  If that was put
23   up.
24        Q.      Okay.  At the bottom they say, "No officer
25   will routinely carry a Taser in a holster or by any
```

Page 123

```
 1   other means within the facility."  Did that happen?
 2        A.    When?
 3        Q.    At any time?  Did people carry a Taser
 4   routinely?
 5        A.    At one point.
 6        Q.    When was that?
 7        A.    Years ago.  I can't -- it was years ago in
 8   Unit 4.
 9        Q.    The mental health unit --
10        A.    Right.  Right.
11        Q.    -- that you worked in?
12        A.    No.  No.  I mean, well, back at that time,
13   I wasn't working there.  But years ago, you'd have to
14   ask them who actually ran it.  But at one point the
15   secondary officer had one because we had had several
16   assaults on staff in there.
17        Q.    Okay.  So that officer was permitted to
18   carry a Taser in a holster at all times?
19        A.    Uh-huh.  But that didn't last long.  I
20   think they stopped it.
21        Q.    Okay.
22        A.    After a couple of months.
23        Q.    Can you give me any detail when this would
24   have been?
25        A.    Between -- wow.  I came in in '04.  2008
```