# EXHIBIT X

IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF GEORGIA
SAVANNAH DIVISION

| | |
|---|---|
| SOLOMAN OLUDAMISI AJIBADE and ADENIKE HANNAH AJIBADE, as natural parents of Mathew Ajibade, and THE ESTATE OF MATHEW AJIBADE and CHRIS OLADAPO, its Executor<br><br>Plaintiffs,<br><br>vs.<br><br>JOHN WILCHER, in his official capacity as Chatham County Sheriff, CORIZON HEALTH, INC., CORIZON, LLC, GREGORY BROWN, FREDERICK BURKE, ABRAM BURNS, MARK CAPERS, MAXINE EVANS, ANDREW EVANS-MARTINEZ, PAUL FOLSOME, DEBRA JOHNSON, JASON KENNY, and ERIC VINSON,<br><br>Defendants. | )<br>)<br>)<br>)<br>)<br>)<br>) Case No.: 4:16-CV-82-WTM-GRS<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>) |

**DEFENDANT'S RESPONSES TO PLAINTIFFS' FIRST INTERROGATORIES**

COME NOW Defendant John Wilcher, as Chatham County Sheriff ("County"), and

pursuant to Federal Rules of Civil Procedure 26 and 33, responds to Plaintiffs' First

Interrogatories as follows:

**OBJECTIONS TO INTERROGATORIES**

(a) The County Defendants object to Plaintiffs' Interrogatories' instructions and definitions insofar as they exceed the applicable scope of discovery as defined in the Federal Rules of Civil Procedure and to the extent that they require the County Defendants to provide information protected by the attorney/client privilege and the work product doctrine.

(b) The County Defendants object to each and every interrogatory to the extent that it would require them to respond by disclosing their attorney's or other representative's mental impressions, conclusions, opinions, computations, calculations, projections, reasons, legal theories, other work product or the like, on the ground that said interrogatory exceeds the permissible scope of discovery under the Federal Rules of Civil Procedure.

(c) The County Defendant objects to each and every interrogatory to the extent that it, whether standing alone or taken in conjunction with any and all other interrogatories, is calculated or would operate to annoy, embarrass, oppress, unduly burden, or unduly cause expense, or would be unduly vexatious or unduly burdensome to respond to, or would require the County Defendant to engage in investigative efforts burdensome to the point of oppression, on the ground that said interrogatory exceeds the permissible scope of discovery under the Federal Rules of Civil Procedure.

(d) The County Defendant objects to each and every interrogatory to the extent that it requires them to respond by acquiring or supplying information which would be irrelevant to the subject matter or issues of this action, and by producing information which is not proportional to the needs of the case, on the ground that said interrogatory exceeds the permissible scope of discovery under the Federal Rules of Civil Procedure.

(e) The County Defendant objects to each and every interrogatory to the extent that it requires County to respond by waiving its attorney-client privilege, on the ground that said interrogatory exceeds the permissible scope of discovery under the Federal Rules of Civil Procedure.

(f) The County Defendant objects to the caption or preface to the interrogatories to the extent that they are requested to file responses which exceed the scope of discovery of the applicable Rules of Civil Procedure or within a period of time which is less than that allowed to respond to the interrogatories under the Federal Rules of Civil Procedure. The County Defendant's responses herein are made in compliance with the Federal Rules of Civil Procedure and not pursuant to the conditions sought to be imposed by Plaintiff in the caption or preface to the interrogatories.

(g) The County Defendant objects to each and every interrogatory to the extent it requires the producing of information or materials obtained in anticipation of litigation or which constitutes work product of counsel and for which there has been no requisite showing that Plaintiffs have substantial need and that Plaintiffs could not obtain the substantial equivalent by other means.

(h) The County Defendant objects to Plaintiffs' First Interrogatories to the extent that the requests or preface thereto require supplemental responses not required by the Federal Rules of Civil Procedure.

(i) After responding to Plaintiffs' First Interrogatories, the County Defendant reserves the right to supplement all such responses, and to correct all errors or omissions attributable to human error.

(j) Subject to and without waiving the above objections, on the basis of information now known to the County Defendant, and without waiving any objection or admitting the relevance or materiality of any of the information sought, the County hereby responds to Plaintiffs' interrogatories as follows:

**INTERROGATORIES**

1. Identify each of your deputies, officers, employees, agents and/or representatives who
interacted, communicated with, or otherwise encountered, Mathew Ajibade, at any time,
including the dates, places and times of such interactions, and describe each such
interaction.

ANSWER:

**Jason Kenny**. Kenny responded to the 10-78 call on 1/1/15 to assist with the struggle between
the deputies and Ajibade. He requested a Taser be brought. Kenny used the X-26 Taser on
Ajibade. Refer to witness statement of Jason Kenny contained in the IA report provided in
Wilcher's response to plaintiff's request for production for more details.

**Debra Johnson**, Johnson was the watch commander on January 1. She responded to the 10-78
call. Refer to witness statement of Debra Johnson contained in the IA report provided in
Wilcher's response to plaintiff's request for production for more details.

**Sgt. Anza Rowland**. Rowland attempted to deploy a drive stun on Ajibade after the struggle
began between Ajibade and other deputies on January 1. Rowland called the 10-78 for
assistance. Refer to witness statement of Sgt. Rowland contained in the IA report provided in
Wilcher's response to plaintiff's request for production for further details.

**Maxine Evans**. Maxine Evans directed Capers to assist with the booking process of Ajibade on
January 1. She conducted a visual check on Ajibade after he was placed in the restraint chair.
She requested assistance to remove Ajibade from the chair and was present when efforts were
taken to revive Ajibade. Refer to witness statement of Maxine Evans contained in the IA report
provided in Wilcher's response to plaintiff's request for production for more details.

**Mark Capers**. Capers assisted other deputies to try to control Ajibade during the struggle on
January 1, 2015.  After Ajibade was placed in the restraint chair, Capers went to Ajibade's cell to
secure the chain on the leg irons to the chair. Refer to witness statement of Mark Capers
contained in the IA report provided in Wilcher's response to plaintiff's request for production for
more details.

**Eric Vinson**. Vinson was involved in the struggle with Ajibade in an attempt to gain control of
him on January 1, 2015. Vinson kicked the Taser from Ajibade's hand. Refer to witness
statement of Eric Vinson contained in the IA report provided in Wilcher's response to plaintiff's
request for production for more details.

**Samuel Richardson**. On January 1, 2015, Richardson performed a unit count, including
Ajibade's cell # 6.  He later released Ajibade from the holding cell to begin the booking process.
He became involved in a struggle with Ajibade after he directed Ajibade to return to his cell.

**Frederick Burke**. Burke was one of the deputies who conducted shift change head count on
January 1. When he reached Ajibade's cell, he had Ajibade step out and provide his name. He
also witnessed Ajibade using his shower shoes to beat on various surfaces. He later responded to

the 10-78 call and assisted in the struggle between deputies and Ajibade in an attempt to hold Ajibade's legs in order for other officers to apply leg restraints. He also assisted in carrying Ajibade to the cell and in placing him in the restraint chair.

**David Cody**. Cody responded to the 10-78 call in booking on January 1. He assisted the officers with their struggle to help restrain Ajibade. Cody assisted officers to carry Ajibade to the old pre booking area to be placed in the restraint chair. Refer to witness statement of David Cody contained in the IA report provided in Wilcher's response to plaintiff's request for production for more details.

**Aisha Groover**. Groover responded to the 10-78 call and attempted to assist officers in trying to restrain Ajibade on January 1. Groover also responded to the Code Black called for Ajibade. Refer to witness statement of Aisha Groover contained in the IA report provided in Wilcher's response to plaintiff's request for production for more details.

**Abram Burns**. On January 1, Burns responded to the 10-78 in the booking area. Burns prepared the restraint chair for the other officers and stood behind the chair as Ajibade was being placed in it. Burns also responded to the Code Black and assisted in removing Ajibade from the restraint chair. Refer to witness statement of Abram Burns contained in the IA report provided in Wilcher's response to plaintiff's request for production for more details.

**Antonio Solomon**. Solomon assisted other officers in trying to control Ajibade on January 1 and helped apply restraints on Ajibade. Solomon helped carry Ajibade to the cell. Refer to witness statement of Antonio Solomon contained in the IA report provided in Wilcher's response to plaintiff's request for production for more details.

**Sgt. Blanton**. On January 2, 2015, Sgt. Blanton made contact with Fisayo Odewole, the girlfriend of Ajibade, in an effort to obtain next of kin information. Sgt. Blanton, along with Lt. Rhode went to Ms. Odewole's residence at 209B E. Duffy St. Blanton spoke with Odewole about the behavior and mental state of Ajibade on the previous day. Refer to witness statement of Sgt. Blanton contained in the IA report provided in Wilcher's response to plaintiff's request for production for more details.

**Lt. Gregg Rhode**. Lt Rhode went with Sgt. Blanton to Ms. Odewole's residence at 209B E. Duffy St. Refer to witness statement of Gregg Rhode contained in the IA report provided in Wilcher's response to plaintiff's request for production for more details.

**Officer Steven Cahall**. Officer Cahall was one of the deputies assigned to booking at the time Ajibade was brought into the CCDC on January 1. Refer to witness statement of Steven Cahall contained in the IA report provided in Wilcher's response to plaintiff's request for production for more details.

**Officer O'Neill Young**. Officer Young was assigned to booking at the time Ajibade was brought into the CCDC on January 1. He attended to Ajibade upon his arrival. He also conducted a pat search of Ajibade and escorted him to booking. Refer to witness statement of O'Neill Young contained in the IA report provided in Wilcher's response to plaintiff's request for production for more details.

2. Identify the single highest-ranking person, other than the Sheriff, responsible for the operations of the CCDC from December 1, 2014 to January 31, 2015. Identify each such person if these responsibilities were reassigned during the period.

**ANSWER: Chief Deputy Sheriff Roy Harris**

3. Did you conduct any investigation or reviews into: (1) the death of Mathew Ajibade, (2) the use of force on Mathew Ajibade, or (3) the physical or mental health care and treatment rendered to Mathew Ajibade at the CCDC? If so, describe each investigation; state the dates during which each investigation was conducted; identify all persons who conducted and/or participated in each investigation; and identify the specific person ultimately responsible for each investigation.

**ANSWER:**

**The following witnesses were interviewed pertaining to the 10-78 called, use of force issue and death of inmate, Mathew Ajibade:**

| Date | Investigator(s) | Witness |
|------|-----------------|---------|
| **01/02/15** | Sgt. Warren Blanton/Cpl. Rick Hall | **Samuel Richardson, Maxine Evans** |
| **01/02/15** | Rick Hall/Inv. Nicole Meyers | Jason Kenny, Mark Capers, Abram Burns, Fred Burke, Aisha Groover, David Cody, Eric Vinson |
| **01/02/16** | Sgt. W. Blanton/N. Meyers | Antonio Solomon, Christopher Reed |
| **01/06/15** | Sgt. Warren Blanton/Lt. Gregg Rhode | 2nd interview of Jason Kenny (clarify statements made in previous interview) |
| **01/06/15** | Sgt. Warren Blanton/Nicole Meyers | |
| **01/07/15** | Sgt. W. Blanton/N. Meyers | Antonio Solomon |
| **01/07/15** | Sgt. Warren Blanton/N. Meyers | Ambrose, Paul Folsome |
| **01/07/15** | Sgt. W. Blanton/N. Meyers | Subsequent interview David Cody |
| **01/08/15** | Inv. Jeffrey Young/N. Meyers | Subsequent interview Aisha Groover |
| **01/08/15** | Sgt. W. Blanton/N. Meyers | Dontrae Wheeler |
| **01/09/15** | Sgt. W. Blanton/N. Meyers | Eureka Thomas, Andrew Evans-Martinez, Sheila Bryant-Baker, Benjamin Webster, 2nd interview of Fred Burke |
| **01/13/15** | Sgt. W. Blanton/N. Meyers | 3rd interview Jason Kenny |

**In addition, on January 13, 2015 and January 14, 2015, Lt. Lamiles Hill (CERT Team Leader), Sgt. Trey Leggett (CERT member), Lt. Edwin Meeks (CERT member) and Cpl. Ronald Robinson (Taser Certified Instructor) were interviewed by Sgt. W. Blanton and Nicole Myers. Lt. Hill pertaining to the Dynamic Cell Extracting Training class they attended in Florida. Cpl. Robinson was questioned pertaining to his training with regard to Tasers.**

On January 14, 2015, Pvt Issac Guthery (Certified Taser Instructor) and Cpt. Robert Brooks were interviewed by N. Meyers and Sgt. Blanton pertaining to various training of officers including tasers and restraint chairs.

See IA reports of Cpl. Rick Hall and Nicole Meyers for further details of witness statements.

All known interviews were conducted either by GBI or IA and are contained in those reports.

4. Identify the persons responsible for training deputies who were employed at the CCDC on the use of force (including but not limited to the use of Tasers), restraints, and spit hoods. The timeframe for this interrogatory is from January 1, 2005 to today. State each person's name, title, physical location, and the dates each person had these responsibilities.

ANSWER:

Cpl. Ronald Robinson (Certified Taser Instructor);

Cpt. Robert Brooks (Restraint Chair Instructor)

Pvt. Issac Guthery (Taser Certified Instructor)

Peace Officers Standards and Training Council.

5. State whether you took any disciplinary, remedial, punitive, or adverse action against anyone in connection with the death of Mathew Ajibade, the use of force against Mathew Ajibade, the treatment and care rendered to Mathew Ajibade, or the lack of treatment or care rendered to Mathew Ajibade. Describe the action taken, identify those persons who made the decision to take the action, and identify those persons against whom the action was taken.

ANSWER: County Defendant objects to this interrogatory to the extent that it requires County Defendant to respond by waiving its attorney-client privilege, on the ground that said interrogatory exceeds the permissible scope of discovery under the Federal Rules of Civil Procedure. By way of further answer,

Jason Kenny terminated. Decision-makers: Sheriff St. Lawrence, Roy Harris, Col. Brian Counihan and Major Russell Smith.

Frederick Burke terminated. Decision-makers: Sheriff St. Lawrence, Roy Harris, Col. Brian Counihan and Major Russell Smith

Maxine Evans terminated. Decision-makers: Sheriff St. Lawrence, Roy Harris, Col. Brian Counihan and Major Russell Smith

Burt Ambrose terminated. Decision-makers: Sheriff St. Lawrence, Roy Harris, Col. Brian Counihan and Major Russell Smith

**Abram Burns terminated. Decision-makers: Sheriff St. Lawrence, Roy Harris, Col Brian Counihan and Major Russell Smith**

**Paul Folsome terminated. Decision-makers: Sheriff St. Lawrence, Roy Harris, Col. Brian Counihan and Major Russell Smith**

**Debra Johnson resigned in lieu of termination. Decision-makers: Sheriff St. Lawrence, Roy Harris, Col. Brian Counihan and Major Russell Smith**

**Andrew Evans-Martinez terminated but rehired.  Decision-makers: Sheriff St. Lawrence, Roy Harris, Col. Brian Counihan and Major Russell Smith**

**Christopher Reed terminated. Decision-makers: Sheriff St. Lawrence, Roy Harris, Col. Brian Counihan and Major Russell Smith**

**Eric Vinson terminated. Decision-makers: Sheriff St. Lawrence, Roy Harris, Col. Brian Counihan and Major Russell Smith**

6. State whether you approved and/or approve of each of the uses of force used on Mathew Ajibade during his detention at the CCDC.

**RESPONSE: Defendant Sheriff objects to this Interrogatory on the grounds that it is vague, overbroad, and capable of many different interpretations and answers. Defendant further objects to this Interrogatory to the extent that it calls for Defendant to disclose information protected from disclosure by the Attorney Client Privilege or the Doctrine of Work Product prepared in anticipation of litigation. Subject to and without waving these specific objections or the above stated General Objections,**

**The uses of force at issue are not "approved," which implies advance approval before the uses of force occurred, since the uses of force were the result of split second decision-making in response to rapidly unfolding events. Moreover, no advance request of the Sheriff for approval was made, and thus the uses of force were not "approved" in advance. As to whether the uses of force were approved after the fact, the Sheriff does not "approve" uses of force after they occur.  After uses of force are reported to supervisors, additional steps may be taken. Instead, the Sheriff trains deputies in advance to make appropriate split second decisions referenced above.**

7. Describe the use of force training, including training and certification on the use of Tasers, restraint chairs, and spit hood, that each individual Defendant named in the initial Complaint underwent during his or her employment with the Chatham County Sheriff's Office, including the dates on which training was completed.

**ANSWER: See training records for each defendant provided in Wilcher's response to request for production.**

8. Identify the type of Taser used on Mathew Ajibade at the CCDC, including the identity of the manufacturer, the model number, and the serial number.

**ANSWER: Taser International X26 (SN# XI300112A).**

9. Identify the people, company, or other entity most knowledgeable about all video surveillance systems at the CCDC as they existed in January 2015. Specifically, state: the name of each natural person, company, or entity; the system(s) about which that person has familiarity; a summary of that person's knowledge about each system; and whether that person is under your control for purposes of appearing for deposition.

**ANSWER: Nick Batey, Director, Chatham County ICS Department; Bobby Ervin, Chatham County Sheriff's Office. Bobby Ervin specifically knows what videos were secured upon order of the command staff. Other than Bobby Ervin, Russell Smith was aware of all video coverage and decisions made to keep the videos being produced by County.**

10. State whether any insurance agreements exist under which any person or company carrying on an insurance business may satisfy part or all of the judgment which may be entered in this action against you or any other Defendant, or to indemnify anyone for payments made to satisfy a judgment or settlement. If so, state: the name of each company that has issued any such policy; the policy number; the limits of liability, including any excess liability or umbrella coverage; and whether you have been notified that the terms of any such policy in any way exclude coverage in this matter.

**ANSWER: No. Chatham County is self-insured.**

11. Identify the manufacturer, year, make, and model of the restraining chair in which Mathew Ajibade was restrained while detained at the CCDC; also identify the retailer or seller that provided it to you.

ANSWER: **Restraint chair utilized by CCDC is manufactured by AEDEC International. County is in the process of locating the year, make, model and seller, and will supplement this response.**

12. Identify: each inmate or detainee who died at the CCDC or at a medical facility to which the inmate or detainee was transferred after being held at the CCDC, and identify whether those deaths were ruled homicides by the coroner or anyone else. The timeframe for this interrogatory is from January 1, 2005 to present.

**ANSWER: County objects to this interrogatory to the extent that it, whether standing alone or taken in conjunction with any and all other interrogatories, is calculated or would operate to annoy, embarrass, oppress, unduly burden, or unduly cause expense, or would be unduly vexatious or unduly burdensome to respond to, or would require the County**

**Defendant to engage in investigative efforts  burdensome to the point of oppression, on the ground that said interrogatory exceeds the permissible scope of discovery under the Federal Rules of Civil Procedure. Further, Sheriff objects to this interrogatory on the basis that it seeks confidential protected health information and will not be provided without a qualified protective order.**

13. Identify each and every person responsible for: (1) interviewing, (2) recommending, or (3) selecting Corizon as the medical and mental health provider at the CCDC.

**ANSWER: The County Defendant objects to interrogatory number 13 as it asks for decisions regarding legislative process. Those matters are not discoverable. See <u>Delk v. Clayton County Board of Commissioners</u>, 257 Ga. 541. See also, <u>Fulton County v Dangerfield,</u> 260 Ga. 665 (1990). Subject to and without waiving said objection,**

**9 present Board of Commissioners and Assistant County Manager, Michael Kaigler.**

14. Identify and describe each and every: (1) verdict rendered against, or (2) settlement paid by, you, your deputies, employees, or officers, in connection with claims asserted or brought against you, your deputies, employees, or officers by any CCDC, detainee or inmate, whether filed in court or not. The timeframe for this interrogatory is from January 1, 2005 to present.

**ANSWER: The County Defendant objects to interrogatory number 14 to the extent that it is unduly burdensome to respond to, or would require the County Defendant to engage in investigative efforts burdensome to the point of oppression, on the ground that said interrogatory exceeds the permissible scope of discovery under the Federal Rules of Civil Procedure. County defendant objects to said interrogatory to the extent that it requires it to respond by acquiring or supplying information which would be irrelevant to the subject matter or issues of this action, and by producing information which is not proportional to the needs of the case, on the ground that said interrogatory exceeds the permissible scope of discovery under the Federal Rules of Civil Procedure. Subject to and without waiving said objections,**

**County does not keep records of lawsuits from 2005 by category of whether an issue was disposed of by verdict or settlement or whether the plaintiff is or was an inmate at the Chatham County Detention Center. The lawsuits located by reasonable search that were filed by inmates and disposed of by verdict or settlement are as follows:**

**James Labella v Chatham County; CV409-092 (consent order entered in 2010).**

**Rachel Taylor v City of Savannah and County; STCV09-4052 (settled in 2013)**

**Barry Beaubien v Corizon, et al.; STCV12-01020 (settled in 2012)**

**Antwan Colclough v Corizon, et al., STCV12-01181 (settled in 2012)**

**Calique Hamilton v Corizon, et al., STCV12-01151 (settled in 2012)**

15. Provide a list of all of the times since January 1, 2005 that an inmate or detainee at CCDC was Tasered by you or one of your deputies, employees, or officers. State the name of the detainee, the date on which the Taser was used, and the person who used the Taser.

**ANSWER: See Use of Force List involving tasers attached in response to Wilcher's request for production number 20.**

This ___ day of August, 2016.

/s/ R. Jonathan Hart
R. JONATHAN HART
State Bar No. 333692
/s/ Jennifer R. Burns
JENNIFER R. BURNS
State Bar No. 330328
ATTORNEYS FOR COUNTY

P. O. Box 8161
Savannah, GA 31412
T: (912) 652-7881
F: (912) 652-7887
Email: rjhart@chathamcounty.org;
jburns@chathamcounty.org

## CERTIFICATE OF SERVICE

This is to certify that I have on this day served the below listed parties in this case by US

Mail, addressed as follows.

| | | |
|---|---|---|
| William R. Claiborne, Esq.<br>Cameron C. Kuhlman, Esq.<br>The Claiborne Firm, P.C.<br>410 East Bay Street<br>Savannah, GA 31401<br>**Counsel for Plaintiffs** | Mark O'Mara, Esq.<br>Alyssa Flood<br>O'Mara Law Group<br>1416 East Concord Street<br>Orlando, FL 32803<br>**Counsel for Plaintiffs** | Troy A. Rafferty, Esq.<br>Timothy M. O'Brien, Esq.<br>William F. Cash, III, Esq.<br>Levin, Papantonio, Thomas,<br>Mitchell, Rafferty & Proctor<br>316 South Baylen St, Suite 600<br>Pensacola, FL 32502 |
| Benjamin M. Perkins, Esq.<br>Lauren E. H. Meadows<br>Oliver Maner LLP<br>P.O. Box 10186<br>Savannah, GA 31412<br>**Counsel for Debra Johnson** | Eric Vinson<br>1307 Stubbs Street<br>Savannah, GA 31404 | Jason Kenny<br>157 Junco Way<br>Savannah, GA 31419 |
| Thomas Carlock, Esq.<br>Emily Ward, Esq.<br>Carlock, Copeland & Stair<br>191 Peachtree St., Suite 3600<br>Atlanta, GA 30303<br>**Counsel for Corizon** | Paul Folsome<br>5 Holiday Court<br>Savannah, GA 31419 | Fred Burke<br>1313 E. Anderson Street<br>Savannah, GA 31404 |
| Mark Capers<br>307 Stonebridge Circle<br>Savannah, GA 31419 | | |

This 8th day of August, 2016.

/s/ R. Jonathan Hart
Attorney for Defendant Wilcher

P. O. Box 8161
Savannah, GA  31412
T: (912) 652-7881
F: (912) 652-7887