# EXHIBIT AA

# CHATHAM COUNTY ATTORNEY

R. JONATHAN HART
COUNTY ATTORNEY

JENNIFER R. BURNS
ASSISTANT COUNTY ATTORNEY

124 BULL STREET
ROOM 240

SAVANNAH, GEORGIA 31401

PLEASE REPLY TO:
P.O. BOX 8161
SAVANNAH, GEORGIA 31412
912/652-7881
FAX 912/652-7887

September 4, 2015

Mrs. Constance Cooper
The Claiborne Firm, P.C.
410 East Bay Street
Savannah, GA 31401

**VIA E-MAIL TO: conny@claibornefirm.com**

Re:   Open Records Act Request dated September 1, 2015

Dear Mrs. Cooper:

Our office is in receipt of your Open Records Act Request dated September 1, 2015. Please consider this our response within three business days. In your request you asked for a copy of the following:

"...Chatham County Sheriff's Office employee Vivian Bacon's letter appealing disciplinary action related to the use of force on Michael Corbett."

Pursuant to O.C.G.A. § 50-18-71(d), the County is authorized to collect a "reasonable charge" for producing the records. There were 12 copies charged at the rate of $.10 per page for a total of $1.20. Please remit a check made payable to Chatham County in the amount of $1.20 to reimburse the County for its expenses incurred in producing the documents.

I am,

Sincerely,

R. Jonathan Hart
County Attorney

RJH/jr

enclosures

I:\Subject Files\Open\Open Records Act\Claiborne, William\ORA Req At 09-01-15\Vivian Bacon\Cooper.letter providing initial response and documents.wpd

BACON 1

Ex. P108

# OFFICE OF THE SHERIFF
# CHATHAM COUNTY, GEORGIA




*Sheriff*
Al St. Lawrence

*Chief Deputy*
Roy J. Harris

*Enforcement Operations Administrator*
Colonel Brian M. Counihan, Sr.

*Assistant Enforcement Administrator*
Major Russell A. Smith

*Jail Administrator*
Colonel Thomas M. Gilberg

*Assistant Jail Administrator*
Melissa S. Kohne

*Jail Operations*
Major Kimberly G. Middleton

*Jail Security*
Major Gloria G. Wilson

February 28, 2015

Corporal Vivian Bacon
Chatham County Sheriff's Office

Re: Letter of Disciplinary Action

Corporal Bacon:

This letter serves as written notice that a disciplinary action is being taken against you based on your conduct and violations of the following department policy:

### 3-01/010.05    Conduct General

On January 24, 2015, while in the Receiving and Discharge Unit, you used a Taser on an inmate who was in full restraints. Your actions were in direct conflict with a verbal directive given by the Jail Administrator on January 6, 2015 and a written directive given by the Corrections Captains on January 9, 2015. Your conduct in this matter was unacceptable. Any further violations of this type will result in disciplinary actions up to and including termination.

Your reprimand will consist of the following:

> 5 days (40 hours) Suspension Without Pay
> 40 hours training to include: (Use of Force, Supervision and Taser Usage)

You are reminded to contact Captain Dixie Barbour to schedule your suspension and Captain Monica Bryant to schedule the appropriate training.

Enforcement Bureau - P.O. Box 10026 - Savannah, GA 31412
Jail - 1050 Carl Griffin Drive, GA 31405

Telephone (912) 652-7634 - Fax (912) 652-7600
Telephone (912) 652-7752 - Fax (912) 652-7775

BACON 2

In accordance with established policy and procedure, you may appeal this personnel action to Colonel Thomas Gilberg within (7) seven days of this letter.

Sincerely,

Major Kimberly Middleton
Operations Commander
Chatham County Sheriff's Office

Cc: Sheriff Al St Lawrence
    Chief Deputy R. Harris
    Colonel T. Gilberg, Jail Administrator
    M. Kohne, Assistant Jail Administrator
    Major G. Wilson
    Captain D. Barbour
    Captain M. Bryant
    Lt. W. Williams
    Human Resources
    File

March 9, 2015

Colonel Thomas Gilberg

In reference to the Disciplinary Action that accused me of violating policy 3-01/010.05 General Conduct, the following is my appeal. The totality of all circumstances must be reviewed.

On the morning of January 24, 2015 at the beginning of our shift ( A-Watch) in the Receiving and Discharge area, I was informed that arrestee Corbett, Michael was placed the restraint chair, **detox cell #2 (Exhibit 1)** because he was banging and kicking on Pre-Booking cell #1. As a result of his behavior, at 03:15, he was placed in the restraint chair by B-Watch. At 0805 arrestee Corbett was taken out the restraint chair and placed in hand, waist chain and leg restraints, per Watch Commander, Lt. Johnson instructions, and his behavior was continually monitored for removal of restraints per Lt. Johnson. Throughout the morning, Lt. Johnson and I spoke with arrestee Corbett on several occasions, while also, assessing his demeanor. At 0920, arrestee Corbett was taken out of the waist chain and his hand restraints where moved to the front, so that he could eat **(Exhibit 2)**. Since he had not eaten breakfast due to the situation, he was later given a sandwich and juice. Lt. Johnson was in the area when the change of restraints took place. After the change of restraints, I asked arrestee Corbett if he wanted to use the telephone so he could bond out and he replied: "Yes." I informed him that in order for him to use the telephone, he must be processed into the system. He was then taken out of detox #2 and taken to the Pre-Booking and then to the

BACON 4

center station to be processed by the clerk. During the process with the clerk, Mr. Corbett's behavior was passive resistant. He would not cooperate when asked to verify information, and he refused to respond to the clerk's questions. Since he refused to comply with the clerk, to expedite matters, he was then taken to Booking holding cell #4 to use the telephone. He then contacted someone and began holding a conversation with the person on the other side of the phone. During the entire booking process Mr. Colbert remained in hand restraints to the front and leg restraints. **Because of Arrestee's Corbett alarming behavior, I decided to contact his mother, who is named as his emergency contact to ask her if he was on any mental health medication. His mother indicated that a couple of weeks prior to his arrest, his behavior had changed, and he had become quite and withdrawn. She felt that he had gotten some bad drugs.** While on the phone with arrestee's mother, at approximately 1200hrs. The clerks (Jones & Liddell) began yelling for me to come over the center station area. I then informed arrestees' Corbett's' mom that I had to end our conversation and attend to a situation in the area. Since I was not aware of the situation at hand, I instinctively removed the taser from the taser box. I then observed Pvt. Byrd, and Pvt. Burke on the floor, wrestling with arrestee Corbett. **I then instructed the arrestee to stop resisting officers and comply with directives. He refused, would not calm down, and began pushing his body up from the floor trying to keep the officers from controlling him.** Later on Pvt. Capers arrived to assist in the combative situation. I then instructed the clerk to call Lt. Johnson to the area. Since the officer were having a difficult time controlling his behavior, I then "drive stunned" arrestee Corbett twice due to his aggressive non-compliant behavior.

It needs to be understood that having an inmate's hands cuffed in the front with no waist chain and leg restraints, gives him more control of his hands, arms and body which can and would allow him room to harm officers during a combative situation. Once Lt. Johnson arrived in the R&D area, she requested the restraint chair for arrestee Corbett. He was then placed back into the restraint chair for his safety and the safety of the officers. At approximately, 1215, Capt. Brooks arrived to the Booking area to get information concerning the incident.

BACON 5

I told Capt. Brooks what had occurred and my actions during the incident. Capt. Brooks informed me that it was authorized to fully tase an inmate if they are in full restraints, resisting and not responding to officer's directives. Later on, Lt. Johnson called me, informing me that per Col. Gilberg, no one will be tased while in full restraints unless there is an emergency, no exceptions. On January 9, 2015(Exhibit 3) a letter written by Col Gilberg concerning the taser usage and inmates in full restraints was read by Lt. Johnson during briefing. It is my understanding that "drive stunning and tasing are two different actions. However, both are used to subdue, control or maintain an aggressive subject. On February 9, 2015 (Exhibit 4) a letter from Maj. Wilson and Maj. Middleton concerning drive stunning was addressed which stated that no one will be "drive stunned" while in full restraints. This letter stated that "Less than lethal force may be used to gain control over a non-compliant and/or aggressive subject, and is never applied maliciously or as punishment." Notwithstanding, It appears that two separate letters where done within a month apart of the other since there had been some confusion concerning the difference between tasing versus drive stunning. Not to tase in full restraints has always been a directive and I have never tased anyone in full restraints. Drive stunning previously has been a practice throughout the Department and had been utilitized prior to the letter on February 9th. Note that it was never my intention to harm or punish arrestee Corbett just to control the situation, especially after speaking with is mother, who stated that it was possible, that he may have been under the influence of some type of drug. At 1730hrs. Arrestee Corbett was escorted out of the facility, and was released on bond, by Lt. Johnson, Pvt. Richardson, Pvt. Capers, and Pvt. Byrd. During his release, he was not in any restraints. However, Lt. Johnson had the taser in her hand as a precaution.

Please be aware that the only other time I have been involved in a taser incident was several years ago. I utilize my ability to use my IPC skills when dealing with aggressive or non-compliant individuals.

BACON 6

Prior to releasing arrestee Corbett, I spoke to him during the day, and finally convinced him to get processed. He was also given a meal, and allowed to use the phone; all under my supervision. In addition, I also took the liberty to contact his mother, to find out if he was on mental health status.

The totality of circumstances concerning my actions leading up to me applying the drive stunning on arrestee Corbett, was solely due in part to his combative behavior, and other officer's actions during this incident should been taken into consideration along with the two letters from Administration, one on **TASING** and the other on **DRIVE STUNNING**, Capt. Brooks conversation with me, and instructions and statement from Lt. Johnson concerning the incident. **PROGRESSIVE DISCIPLINE** actions are put into place when dealing with inmates when they don't obey a directive, yet concerning this incident, there has been no PROGRESSIVE DISCIPLINE offered to me. Also, this is my second incident dealing with the taser in a combative situation in 13 years which needs to be considered.

Respectfully Submitted,

*Corporal V. F. Bacon* 2056

Corporal Vivian F. Bacon

Exhibit 4

CONT 1/23/15 .. Cpl Bacon A Watch 0800-2000
1430  1 to 2B
1450  1 to 9B

B* WATCH Cpl Bacon 1/23/15 . 8P-8A
1430  Relieved by Lt Johnson on common area and
      Cpl Bacon on R and D activities
      Staff Lvl T/C 38 M 31 F 7
2200  1 to 2C M/S (Greene, Corner)
2230  4 to 2B
2320  1 to 9B
 "    1 to 9C
00:?  1 to 2B
 "    5 to 2A
0108  2 to 9C
0120  2 to 5302 (Wheelchairs)
0315  Corbett, Michael is placed in the restraint
      chair due to him banging and kicking
      on the door of the booking cell #1.
      He has been placed in the chair in
      Detox Cell #2.
0420  1 to Med (Carter, Richard)
0420  7 to 2A
0525  2 to 9B
      Nurse Dawn received I/O, comments, vitals
      and pupils accomp w/ Carter Brown
      and all is normal.
0805  Inm Corbett Michael taken out of
      restraint chair + placed in hand, leg
      + waist chains per Lt. Johnson.
      His behavior will be monitored
      upon removal of chains/restraints

BACON  8

| | |
|---|---|
| | Briefed by [Cpl?] ... on complete previous activities. Briefed by Cpl Brennan on R+D previous activities. STAFF TIC mtl FX Taser checked ... |
| 0920 | Arrestee Corbett waist chain removed, hand restraints move to the first. He was given a sandwich & juice to eat. AB |
| 1020 | 3 to Medical - Cogdell Ronald, Harter Gary, Hatcher Holly |
| 1204 | Im Corbett Michael placed back in restraint chair due charging ... by ... Im was dry stunned twice with Taser by Cpl ... due him resisting while on the floor + not complying ... directives to calm down |
| 1215 | Per Capt Brooks, Authorized to fully tase while Im in full restraints & is resisting, not responding to officers directives. |
| 400? | ... |
| 1710 | 3 to Medical - Jackson Logan, Scott Joshua, Bragg Rayford 9 to 2B |
| 1730 | Arrestee Corbett escorted out the jail by LT Johnson, PVT Richardson, PVT Capers + PVT Byrd. |

Exhibit X

BACON 9



Exhibit 3

## Inter-Office Correspondence

Date:    January 9, 2015

To:      All Staff

From:    Captain H. Harley, Security
         Captain E. Davis, Operations
         Captain D. Barbour, Administration
         Captain R. Brooks

Re:      Taser Usage

Per Policy and Procedures, no inmate is to be Tasered while in full restraint (arm/leg), in or being placed in restraint chair. All usage of the Taser MUST be approved by the on duty Watch Commander (Lieutenant) or higher authority per the Directive received on January 6, 2015.

PER COL. GILBERG – EFFECTIVELY IMMEDIATELY, NO TASER WILL BE USED WITHIN THE FACILITY, UNLESS EXPRESSED PERMISSION IS GRANTED BY THE WATCH COMMANDER OR HIGHER AUTHORITY. PERMISSION TO UTILIZE THE TASER CAN BE GRANTED VIA RADIO, TELEPHONE OR IN PERSON. NO OFFICER WILL ROUTINELY CARRY A TASER IN A HOSLTER OR BY ANY OTHER MEANS WITHIN THE FACILITY. ALL UNIT TASERS WILL BE SECURED IN THE BOX PROVIDED AT THE HUB DESK, UNTIL AUTHORIZED FOR USE. ALL HUB OFFICERS WILL CONTINUED TO CHECK THE OPERABILITY OF TASERS AT THE BEGINNING OF EACH WATCH AND PROPERLY DOCUMENT IT'S STATUS IN THE LOGBOOK. FAILURE TO FOLLOW THIS DIRECTIVE WILL RESULT IN SERIOUS AND IMMEDIATE DISCIPLINARY ACTIONS. THIS DIRECTIVE WILL REMAIN IN PLACE UNTIL FURTHER NOTICE.

FAILURE TO FOLLOW THIS DIRECTIVE WILL RESULT IN SERIOUS AND IMMEDIATE DISCIPLINARY ACTIONS.

Cc:  Colonel Gilberg
     Melissa Kohne
     Major Middleton
     Major Wilson
     File

BACON 10

Exhibit 4



Chatham County Sheriff's Office

# MEMORANDUM

Date: February 9, 2015

To: All Staff

From: Major G. Wilson, Security
Major K. Middleton, Operations

Re: TASER© Conducted Electrical Weapon

**THIS DIRECTIVE WILL REMAIN IN PLACE UNTIL FURTHER NOTICE.**

All staff are reminded that no (TASER) conducted electrical weapon is to be used when a detainee is in full restraints. Do not "drive stun" any detainee while in full restraints. Do not utilize any conducted electrical weapon to gain control of a detainee who is in full restraints while in a restraint chair. Full restraints means that the detainee's hands and feet are being restrained and restricted.

Staff should be guided by the Pressure Point Control Tactics (PPCT) force continuum when using less than lethal force. The PPCT force continuum is designed to offer staff maximum control with minimum physical application of force. All usage of the Taser MUST be approved by the on duty Watch Commander (Lieutenant) or higher authority per the directive received on January 6, 2015.

Less than lethal force may only be used to gain control over a non-compliant and/or aggressive subject, and is never applied maliciously or as punishment. All use of force incidents must be reported and are subject to departmental review.

Cc:   Sheriff Al St Lawrence
      Chief Deputy R. Harris
      Colonel T. Gilberg, Jail Administrator
      Melissa Kohne, Assistant Jail Administrator
      All Corrections Captains
      File

BACON   11




# OFFICE OF THE SHERIFF
# CHATHAM COUNTY, GEORGIA

Sheriff
Al St. Lawrence

Chief Deputy
Roy L Harris

Enforcement Operations Administrator
Colonel Brian M. Counihan, Sr.

Assistant Enforcement Administrator
Major Russell A. Smith

Jail Administrator
Colonel Thomas M. Gilberg

Assistant Jail Administrator
Melissa G. Kelme

Jail Operations
Major Kimberly O. Middleton

Jail Recovery
Major Gloria G. Wilson

March 17th, 2015

Re: Appeal to Disciplinary Action Dated 28th of February, 2015

Cpl. Vivian Bacon

In response to your appeal I have reviewed all attached documents and conferred extensively with the Corrections Bureau Majors and the Assistant Jail Administrator. I am partially granting your appeal and reducing your disciplinary sanction from five days suspension (40 hours) without pay to a one day suspension (8 hours) without pay.

This letter will be placed in your personnel file. In accordance with policy and procedure, you may appeal this personnel action to Sheriff Al St Lawrence or his designee within (7) seven days receipt of this letter.

Sincerely,

Colonel T. Gilberg
Jail Administrator
Chatham County Sheriff's Office

Cc: Sheriff Al St Lawrence
Chief Deputy R. Harris
Assistant Jail Administrator M. Kelme
Major K. Middleton
Major G. Wilson
All Corrections Captains
R&D Manager Lt. Williams
Internal Affairs
Human Resources
File

Enforcement Bureau - P.O. Box 10026 - Savannah, GA 31412
Jail - 1050 Carl Griffin Drive, GA 31405

Telephone (912) 652-7634 - Fax (912) 652-7600
Telephone (912) 652-7752 - Fax (912) 652-7773

BACON 12

March 26, 2015

In response to the appeal letter date March 17, 2015, I'm appealing the response.

On February 11, 2015, I was accused of **drive-stunning** arrestee Corbett, Michael (P1108087) based on a Personal Conduct Report dated February 11, 2015. Then on February 28, 2015 the accusation was changed to tasing arrestee (Corbett, Michael). On January 9, 2015 a letter written from Administration stating that "**no inmate will be tased while in full restraints**". Due to the confusion many of my colleagues had a second letter was generated on February 9, 2015 describing what drive stunning was. It read: "**Drive stunning no inmate while in full restraints.** Please note that no policy or procedure had been cleared concerning the use of drive stunning during this time until February 9, 2015 which was after my incident occurred. Because of the many questions posed by my colleagues, it appears that administration was also unclear of the difference between tasing, and drive stunning.

Therefore, based on these differences between the dated correspondence and the incident I was involved in concerning drive stunning which occurred prior to the drive stunning letter, I am therefore requesting that this disciplinary action against me be dismissed and not placed in my personal file concerning this matter.

Cpl Force