# EXHIBIT CC

## UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF GEORGIA
## SAVANNAH DIVISION

| | | |
|---|---|---|
| **DEBORAH SIMMONS,** | * | |
| | * | |
| **Plaintiff,** | * | |
| | * | |
| | * | **CIVIL ACTION NO.:** |
| **v.** | * | **4:14-00167** |
| | * | |
| | * | |
| **CHATHAM COUNTY SHERIFF'S** | * | |
| **DEPARTMENT, and GLORIA** | * | |
| **WILSON, individually and in her** | * | |
| **official capacity as a Captain with the** | * | |
| **Sheriff's Department of Chatham** | * | |
| **County, Georgia, and THOMAS M.** | * | |
| **GILBERG, individually and in his** | * | |
| **official capacity as a Lt. Colonel with** | * | |
| **the Sheriff's Department of Chatham** | * | |
| **County, Georgia; AL ST. LAWRENCE,** | * | |
| **individually and in his official capacity** | * | |
| **as Sheriff of Chatham County, Georgia,** | * | |
| | * | |
| **Defendants.** | * | |
| _____ | * | |

## <u>AMENDED COMPLAINT</u>

COMES NOW Plaintiff Deborah Simmons, by and through counsel, and

hereby files this Amended Complaint against the above-named Defendants,

showing the Court as follows:

1.

This is a civil rights action against the Chatham County Sheriff's

Department (hereinafter referenced as the Sheriff's Department), Gloria Wilson, a

Captain employed by the Sheriff's Department, Thomas M. Gilberg, formerly a

Major and now a Lt. Colonel employed by the Sheriff's Department, and Al St.

Lawrence, the Sheriff of Chatham County.   The named individuals are joined both

in their official and individual capacities.

2.

Ms. Simmons' rights under the following statutes have been violated by her

employer, Defendant Chatham County Sheriff's Department:  the Civil Rights Act

of 1964, 42 U.S.C. § 2000e *et seq*., for employment discrimination based on race

(retaliation); and the Civil Rights Act of 1866, 42 U.S.C. § 1983, for deprivation of

Ms. Simmons' rights under 42 U.S.C. § 1981 (retaliation).

3.

Ms. Simmons' rights under the following statute have been violated by the

Defendants Gloria Wilson, Thomas M. Gilberg and Al St. Lawrence:   the Civil

Rights Act of 1866, 42 U.S.C. § 1983, for deprivation of Ms. Simmons' rights

under 42 U.S.C. § 1981 (retaliation).

**JURISDICTION AND VENUE**

4.

Jurisdiction is conferred upon this Court pursuant to 28 U.S.C. § 1331

(federal question) and 28 U.S.C. § 1343 (civil rights) because the matters in

2

controversy arise under the Constitution and laws of the United States.

5.

Venue is proper in this Court under 28 U.S.C. § 1391 because it is a district where all Defendants reside or do business and where a substantial part of the events or omissions giving rise to Ms. Simmons' claims occurred.

6.

All conditions precedent to jurisdiction under the Civil Rights Act of 1964 have occurred, including Ms. Simmons' exhaustion of all applicable administrative remedies, including specifically, filing of a timely charge of discrimination with the U.S. Equal Employment Opportunity Commission (EEOC).

7.

On September 18, 2013, the EEOC found:

"that [Ms. Simmons] engaged in a protected activity when she made several verbal and written complaints of racial discrimination to management.  The evidence further reveals that the Charging Party filed an EEOC charge against the Respondent in August 2012 and about one week after filing her charge, she was terminated.  [The Sheriff's Department] failed to provide any evidence to support its reason for discharging [Ms. Simmons].  Based upon the evidence and the record as a whole, there is reasonable cause to conclude that [Ms. Simmons] was subjected to retaliation for complaining about discrimination in violation of Title VII of the Civil Rights Act of 1964, as amended."

3

8.

Efforts by the EEOC to resolve the matter failed and the matter was forwarded to the U.S. Department of Justice.

9.

On July 7, 2014, the U.S. Department of Justice issued Ms. Simmons a notice-of-right-to-sue letter and Ms. Simmons thereafter timely filed this Complaint within ninety (90) days of receipt of that letter.

**PARTIES**

10.

Plaintiff Deborah Simmons is a white, Caucasian citizen of the United States and a resident of the State of Georgia and County of Chatham.  She was employed by the Sheriff's Department from November 13, 2007 to September 5, 2012 and never received a disciplinary comment or action prior to complaining about racial discrimination in the workplace.

11.

Defendant Chatham County Sheriff's Department is located in Chatham County, Georgia in the Savannah Division of the U.S. District Court for the Southern District of Georgia.  The Sheriff's Department can be served with process by serving Sheriff Al St. Lawrence at the Department's offices located at 1050 Carl Griffin Drive, Savannah, Georgia 31405.

12.

Defendant Sheriff Al St. Lawrence is, and was at all times relevant to this action, employed by the Chatham County Sheriff's Department, with supervisory responsibilities over Ms. Simmons.  He is a resident of Chatham County, Georgia, in the Savannah Division of the U.S. District Court for the Southern District of Georgia and can be served with process personally at his office located at 1050 Carl Griffin Drive, Savannah, Georgia 31405.

13.

Defendant Lt. Colonel Thomas M. Gilberg is, and was at all times relevant to this action, employed by the Chatham County Sheriff's Department, with supervisory responsibilities over Ms. Simmons.  He is a resident of Chatham County, Georgia, in the Savannah Division of the U.S. District Court for the Southern District of Georgia and can be served with process personally at his office located at 1050 Carl Griffin Drive, Savannah, Georgia 31405.

14.

Defendant Captain Gloria Wilson is, and was at all times relevant to this action, employed Chatham County Sheriff's Department, with supervisory responsibilities over Ms. Simmons.  She is a resident of Chatham County, Georgia, in the Savannah Division of the U.S. District Court for the Southern District of Georgia and can be served with process personally at her office located at 1050

Carl Griffin Drive, Savannah, Georgia 31405.

## STATEMENT OF FACTS

### 15.

On or about November 13, 2007, Ms. Simmons was hired by the Chatham County Sheriff's Department as a Law Enforcement Records Specialist 1, and was promoted to a Law Enforcement Records Specialist 2 in 2009.

### 16.

From the beginning of her employment until her employment was terminated on September 5, 2012, Ms. Simmons and other white staff in the Records Department suffered a workplace environment saturated with harassment, bullying and verbal confrontations by African-American co-workers based on race.

### 17.

Ms. Simmons attempted to resolve the conflict by reporting the incidents to her supervisors on several occasions but nothing was done to correct the conduct of these co-workers.

### 18.

Complaints set forth in incident reports were filed by Ms. Simmons on October 8, 2009, December 18, 2009, August 2, 2010 and November 2, 2010.

### 19.

In the 2009 and 2010 incident reports, Ms. Simmons never attributed the

abusive conduct of her co-workers to racial discrimination.

20.

The 2009 and 2010 incident reports filed by Ms. Simmons were largely ignored by her superiors.  Ms. Simmons experienced no retaliation, and there was no change in the conduct of Ms. Simmons' co-workers.

21.

In July 2012, Ms. Simmons made complaints of similar conduct by her co-workers and, for the first time, attributed the abusive conduct to racial tension and discrimination.

22.

The reaction of her employer and its supervisory employees, agents and representatives to these complaints, as described below, was dramatically different from the reaction in response to the 2009 and 2010 complaints.

23.

On July 12 or 13, 2012, Ms. Simmons verbally complained to her immediate supervisor Beverly Thompson regarding the abusive conduct and attributed that conduct to racial tension and discrimination.

24.

Ms. Thompson reported Ms. Simmons' complaint up the chain of command.

25.

Ms. Thompson is a white, Caucasian individual.   Upon information and belief, either Ms. Thompson's employment was terminated or she retired.

26.

Ms. Thompson feared confronting the African-American employees in the Records Department she supervised and, virtually without exception, would report complaints up the chain of command rather than deal with them herself.

27.

Captain Gloria Wilson is a black, African-American employee of the Sheriff's Department above Ms. Simmons and Ms. Thompson in the supervisory chain of command.

28.

On July 16, 2014, Captain Wilson confronted Ms. Simmons with the report of her July 12 or 13, 2014 verbal complaint and directed her to immediately put the complaint in writing, leading Ms. Simmons to another office with a computer and further directing her to remain in that office until the written complaint was completed.

29.

Two days after delivering her written complaint, on July 18, 2012, Ms. Simmons received a false written disciplinary action from Captain Wilson.

30.

As Captain Wilson delivered the false disciplinary write-up, and while Ms. Simmons was reading it, Captain Wilson stated to Ms. Simmons, "you have filed a complaint for racism and we don't like that around here."

31.

The July 18, 2012 disciplinary action was the first disciplinary action received by Ms. Simmons in the course of her employment with the Sheriff's Department.

32.

Immediately after the July 18, 2012 write-up, Ms. Simmons visited with Van Johnson, Director of the office of the Chatham County Human Resources Department (H.R. Department).  The H.R. Department provides consultation to the Sheriff's Department on personnel matters.

33.

The fact of Ms. Simmons' visit to the H.R. Department and the subject matter of her discussion with Mr. Johnson were communicated to the Sheriff's Department.

34.

One week later, on July 24, 2012, Ms. Simmons was called to a meeting with Sheriff's Department then-Major (now Lt. Colonel) Gilberg for the purpose of

discussing her complaint.

35.

In the meeting with Lt. Colonel Gilberg, threats by African-American co-worker's of "cutting someone" in the office were characterized by Lt. Colonel Gilberg as an "oblique reference" constituting "no evidence" of a threat to Ms. Simmons' physical safety.  In an attempt to destabilize and confuse Ms. Simmons, Lt. Colonel Gilberg characterized certain statements of Ms. Simmons' supervisor, Ms. Thompson, as inappropriate, reminding Ms. Simmons of by Ms. Thompson's apology for the statement, but then he followed his characterization with suggestions that the statements were in fact justified.  Lt. Colonel Gilberg found fault with Ms. Simmons for making "known to anyone else" misconduct related to racial tension in the workplace.  Lt. Colonel Gilberg attempted to sow uncertainty in Ms. Simmons' truthful statement of fact and to undermine her relationships within the Department, stating for example that Ms. Simmons was not a team player and he knew this because he was told by Ms. Thompson and others that she was not a team player and that everyone in the Sheriff's Department knew she was not a team player.  Lt. Colonel Gilberg's write-up of the meeting falsely states that Ms. Simmons was "allowed . . . to speak at length" when in fact, in the meeting, Ms. Simmons was repeatedly interrupted, belittled and berated by Lt. Colonel Gilberg.  Ms. Simmons was never able to complete one sentence of any statement

she made in the meeting. Lt. Colonel Gilberg intentionally and maliciously humiliated Ms. Simmons, causing her to cry whereupon he offered her the Department's employee assistance program, suggesting she needed mental health counseling.

36.

Finally, in the same meeting of July 24, 2012, Lt. Colonel Gilberg delivered to Ms. Simmons another false disciplinary write-up.

37.

As a result of the false disciplinary write-up of July 24, 2012, Ms. Simmons was directed by Lt. Colonel Gilberg to take all matters involving corrections she believed needed to be made by other Records Department staff to her supervisor, Beverly Thompson.

38.

On July 27, 2012, Lt. Colonel Gilberg followed-up his July 24, 2012 meeting with a written response to Ms. Simmons' complaint, stating "we have reviewed, investigated and responded to all of your complaints and . . . Sheriff St. Lawrence [has] been briefed fully."

39.

Sometime after July 24, 2012 but before July 29, 2012, it was discovered by Ms. Simmons that an African-Amercian Records Department staff person, Nicole

11

Ferguson, had made an error in paperwork.  In accordance with the directives of Ms. Thompson and Lt. Colonel Gilberg, Ms. Simmons reported the error and need for correction to Ms. Thompson that day, setting the file on her desk chair (in Ms. Thompson's absence) with a detailed note.

### 40.

Later that day, Ms. Thompson confronted Ms. Simmons asking her if she left the file and note on her (Ms. Thompson's) desk chair.  Ms. Simmons acknowledged doing so whereupon Ms. Thompson angrily threw the file across the room.

### 41.

On August 28, 2012, Ms. Simmons verbally reported to Ms. Thompson an incident regarding distribution of work involving her co-worker Ms. Ferguson.

### 42.

Ms. Ferguson had directed another Records Department staff person to place papers requiring work into Ms. Simmons' inbox after 12:00 p.m. in violation of work rules (hoping to have Ms. Simmons do her (Ms. Ferguson's) work).

### 43.

Ms. Thompson scolded Ms. Simmons for reporting the incident, stating to Ms. Simmons, "you're not happy if you don't have enough work and now you're complaining you have too much work."

44.

Despite a specific directive from Ms. Thompson that Ms. Simmons report work distribution issues directly to her, Ms. Thompson scolded Ms. Simmons and threatened her employment, further stating "you are either going to work this out between yourselves or I will find somebody who will."

45.

The next day, on August 29, 2012, Ms. Simmons submitted to Ms. Thompson an incident report regarding this work distribution issue and regarding her report of the issue to Ms. Thompson.

46.

On the same date, August 29, 2012, Ms. Simmons was called by Lt. Colonel Gilberg to meet with him about the incident report.

47.

In the meeting with Lt. Colonel Gilberg, Ms. Simmons complained again of racially-motivated conduct in the workplace affecting her ability to perform her job.

48.

In the August 29, 2012 meeting, Lt. Colonel Gilberg was again condescending, abusive and repeatedly interrupted Ms. Simmons.  He accused her of "attempt[ing] to create racial conflict" and accused her of not being a "team

player."  Ms. Simmons politely disagreed with Lt. Colonel Gilberg's criticism of her whereupon he accused of being insubordinate.  Ms. Simmons was told by Lt. Colonel Gilberg not to question her supervisor, Ms. Thompson, stating specifically, "you don't ask questions here, we do."  Lt. Colonel Gilberg concluded the meeting, telling Ms. Simmons, "I'm going to decide what to do with you."

49.

The next day, on August 30, 2012, Ms. Simmons was called by her supervisor, Ms. Thompson, and told that Captain Russell Smith and Corporal Warren Blanton of the Sheriff's Department Professional Standards Division were waiting on her for a meeting.  Ms. Simmons was not previously informed of the meeting.

50.

The Professional Standards Division conducts internal investigations of Sheriff's Department employees at the direction of the Sheriff.

51.

In the meeting with Captain Smith and Corporal Blanton, Ms. Simmons was questioned about her reports of discriminatory conduct.  She specifically informed them that she was planning to file a Charge of Discrimination with the EEOC.

52.

Later the same day, on August 30, 2012, Ms. Simmons was told by her

superiors that she was being placed on administrative leave with pay, but from that date until the day her employment was terminated on September 5, 3012, she was not paid.

53.

On August 31, 2012, Ms. Simmons filed a Charge of Discrimination with the Savannah Office of the EEOC, alleging racial discrimination and retaliation for opposing racial discrimination in the workplace.

54.

Ms. Simmons' employment with the Sheriff's Department was terminated on September 5, 2012 by Lt. Colonel Gilberg based on his determination that Ms. Simmons was insubordinate.

55.

Ms. Simmons appealed the decision to terminate her employment through appropriate channels in the Sheriff's Department.

56.

Ms. Simmons appealed her termination of employment up the chain of command, first to Colonel John T. Wilcher and then to the Sheriff St. Lawrence.

57.

Both Colonel Wilcher and Sheriff St. Lawrence rejected her appeal, Sheriff St. Lawrence specifically referencing "claims [by Ms. Simmons] that could not be

substantiated . . . racial favoritism . . . and a hostile work environment that you cannot prove."

58.

During the process of opposing Ms. Simmons' internal appeals and her application for unemployment compensation benefits, Sheriff St. Lawrence disowned Lt. Colonel Gilberg's determination of insubordination and substituted in lieu thereof the reason of "Ms. Simmons' history of unfounded accusations against co-workers, supervision, and general attitude towards her position[]" and the reason that Ms. Simmons "created so many disruptions and antagonized her co-workers and superiors to a point where she was a detriment to [the Sheriff's] department."

59.

Finally, on December 11, 2012, the Chatham County Personnel Board concluded that "the Sheriff's Department did not address your expressed grievances in a timely manner, in clear violation of the Chatham County Personnel Ordinance".

60.

The Chatham County Personnel Board further concluded that "we found no evidence that your actions amounted to insubordination or necessitate termination."

61.

The Chatham County Personnel Board recommended that the decision to terminate Ms. Simmons' employment "be reversed, [and that she] be reinstated with back pay and benefits and that any and all corrective actions and documents concerning this termination be removed from your personnel file."

62.

The Sheriff's Department has agreed to follow and abide by the Chatham County Personnel Ordinance.

63.

Despite that agreement, Sheriff St. Lawrence responded to the Personnel Board's recommendation, stating, "[t]he Board's recommendation to reinstate you is just that, a recommendation, one that I am not obligated to follow."  Sheriff St. Lawrence further stated, "I do not believe that your reinstatement would solve your perceived issues with staff and management."

64.

At the time her employment was terminated, Ms. Simmons had applied for a promotion and was the most qualified individual for the available position.  A less-qualified African-American individual – in fact, one of the primary harassers of Ms. Simmons – was awarded the position.

65.

As noted above, on September 18, 2013, the EEOC concluded:

"that [Ms. Simmons] engaged in a protected activity when she made several verbal and written complaints of racial discrimination to management.  The evidence further reveals that the Charging Party filed an EEOC charge against the Respondent in August 2012 and about one week after filing her charge, she was terminated.  [The Sheriff's Department] failed to provide any evidence to support its reason for discharging [Ms. Simmons].  Based upon the evidence and the record as a whole, there is reasonable cause to conclude that [Ms. Simmons] was subjected to retaliation for complaining about discrimination in violation of Title VII of the Civil Rights Act of 1964, as amended."

66.

Efforts to resolve the matter failed and the matter was forwarded to the U.S. Department of Justice.

67.

On July 7, 2014, the U.S. Department of Justice issued Ms. Simmons a notice-of-right-to-sue letter and Ms. Simmons thereafter timely filed her Complaint within ninety (90) days of receipt of that letter.

**COUNT ONE**
**RETALIATION UNDER THE CIVIL RIGHTS ACT OF 1964**

68.

The allegations set forth in paragraphs hereinabove and below, are incorporated by reference as though fully set forth herein.

69.

Ms. Simmons' opposition to race discrimination in the workplace and/or her participation in the EEOC proceeding was a significant and determining factor in the decision of Defendants to harass and humiliate her and then terminate her employment.

70.

The reasons given for Ms. Simmons' termination of employment are false and a pretext for the discriminatory retaliation motivating their actions.

71.

Defendant Sheriff's Department, through its agents and employees, knowingly, willfully and intentionally discriminated against Ms. Simmons, as set forth above and as further to be proved at trial, because she opposed race discrimination in the workplace and because she participated in the EEOC proceeding, in violation of the Civil Rights Act of 1964, 42 U.S. C. § 2000e, *et seq.*

72.

As a direct, legal and proximate result of this discriminatory conduct, Ms. Simmons has suffered, and continues to suffer, significant financial loss, emotional distress and other damages in an amount to be proved at trial.

73.

Accordingly, Ms. Simmons is entitled to both damages and equitable relief

for the violation of her rights under 42 U.S.C. § 1981, which rights are protected

from infringement by the Civil Rights Act of 1871, 42 U.S.C. § 1983.

## COUNT TWO
## RETALIATION UNDER THE CIVIL RIGHTS ACTS OF 1866 AND 1871
## DEPARTMENTAL AND OFFICIAL CAPACITY LIABILITY

74.

The allegations set forth in paragraphs hereinabove and below, are

incorporated by reference as though fully set forth herein.

75.

The actions of Department and the individual defendants in their official

capacities were committed intentionally and with reckless disregard of Ms.

Simmons' right to be free from discriminatory treatment because of her opposition

to racial discrimination, as described above and to be further proved at trial, in

violation of 42 U.S.C. § 1981.  Ms. Simmons' employment was terminated

because she opposed discriminatory practices in the workplace.

76.

Defendants, in their official capacity, were acting under color of statute,

ordinance, regulation, custom, or usage, and subjected Ms. Simmons, or caused her

to be subjected, to the deprivation of rights, privileges, or immunities secured by

the laws of the United States.

77.

As a direct, legal and proximate result of the violations of Ms. Simmons'

legal rights by Defendants in their official capacities, Ms. Simmons has suffered,

and continues to suffer, significant financial loss, emotional distress and other

damages in an amount to be proved at trial.

78.

Accordingly, Ms. Simmons is entitled to both damages and equitable relief

for the violation of her rights under 42 U.S.C. § 1981, which rights are protected

from infringement by the Civil Rights Act of 1871, 42 U.S.C. § 1983.

## COUNT THREE
## RETALIATION UNDER THE CIVIL RIGHTS ACTS OF 1866 AND 1871
## INDIVIDUAL CAPACITY LIABILITY

79.

The allegations set forth in paragraphs hereinabove and below, are

incorporated by reference as though fully set forth herein.

80.

The actions of Defendants Sheriff St. Lawrence, Lt. Colonel Gilberg and

Captain Wilson, in their individual capacities, were committed intentionally and in

reckless disregard of Ms. Simmons' right to be free from discriminatory treatment

because of her opposition to racial discrimination, as described above and to be

further proved at trial, in violation of 42 U.S.C. § 1981.

81.

Defendants Sheriff St. Lawrence, Lt. Colonel Gilberg and Captain Wilson, in their individual capacities, acting under color of statute, ordinance, regulation, custom, or usage, subjected Ms. Simmons, or caused her to be subjected, to the deprivation of rights, privileges, or immunities secured by the laws of the United States.

82.

As a direct, legal and proximate result of the violations of Ms. Simmons' legal rights by Defendants Sheriff St. Lawrence, Lt. Colonel Gilberg and Captain Wilson, in their individual capacities, in their individual capacities, Ms. Simmons suffered, and continues to suffer, significant financial loss, emotional distress and other damages in an amount to be proved at trial.

83.

Accordingly, Ms. Simmons is entitled to equitable and monetary relief for the violation of her rights under 42 U.S.C. § 1981, which rights are protected from infringement by the Civil Rights Act of 1871, 42 U.S.C. § 1983.

**PRAYER FOR RELIEF**

WHEREFORE, Plaintiff prays that this Court:

(a)    Take jurisdiction of this matter and declare that Ms. Simmons' rights

under the statutes set forth above were violated by Defendants;

(b)     Permanently enjoin Defendants from further discriminating against

Ms. Simmons because of her race;

(c)     Award Ms. Simmons compensatory damages, including without

limitation, all back pay benefits, and other forms of compensation lost

as a result of Defendants' unlawful discrimination;

(d)     Award Ms. Simmons front pay, as just, equitable and appropriate;

(e)     Award Ms. Simmons prejudgment and postjudgment interest;

(f)     Award Ms. Simmons punitive damages against the individual

Defendants, Sheriff St. Lawrence, Lt. Colonel Gilberg and Captain

Wilson;

(g)     Award Ms. Simmons all costs and expenses of this action, including

reasonable attorney fees as authorized by law;

(h)     Grant a trial by jury; and

(i)     Award such other and further legal and equitable relief as will

effectuate the purposes of the referenced statutes or as the Court

deems just and proper.

RESPECTFULLY SUBMITTED, this 25th day of November, 2014.


[signature on next page]

23

/s/ S. Wesley Woolf
S. WESLEY WOOLF
Georgia Bar No. 776175
*Attorney for Plaintiff*

S. WESLEY WOOLF, P.C.
408 East Bay Street
Savannah, Georgia  31401
T:  (912) 201-3696
F:  (912) 236-1884
woolf@woolflawfirm.net