# UNITED STATES DISTRICT COURT
# SOUTHERN DISTRICT OF GEORGIA
# SAVANNAH DIVISION

SOLOMON OLUDAMISI AJIBADE, *et al.*,

    Plaintiffs,

v.      CV416-082

JOHN WILCHER, in his official capacity as Chatham County Sheriff, *et al.*,

    Defendants.

## ORDER

This case involves civil claims arising from Mathew Ajibade's death while in the custody of the Chatham County, Georgia Sheriff. *See* doc. 21 (Amended Complaint). Plaintiffs move to compel further deposition testimony from non-party Betty Riner.[1] Doc. 125. Riner is a nurse formerly employed by defendant Corizon Health, Inc., which was contracted to provide medical services at Chatham County Detention

---

[1] Defendant Corizon argues that plaintiffs' motion to compel her appearance at a second deposition is not ripe because they have not sought leave to conduct a second deposition. Doc. 131 at 17-18. Corizon is correct that a second deposition of the same deponent requires leave. *See* Fed. R. Civ. P. 30(a)(2)(A)(ii). But the situation is not as simple as Corizon's argument suggests. Rule 29 permits parties to stipulate to changes in the ordinary deposition procedure. *See* Fed. R. Civ. P. 29(a) (allowing stipulation that "a deposition may be taken before any person, at any time or on any notice, and in the manner specified -- in which event it may be used in the same way as any other deposition . . . ."). Riner, as discussed below, is willing to testify. Thus, once the confidentiality issue is resolved, there seems to be no need to compel her testimony.

Center. *See* doc. 131 at 3. Corizon opposes plaintiffs' motion, asserting that Riner's testimony is precluded or limited by a settlement agreement between them. *See id*. at 10-17. Riner responds that she is "willing and eager to fully comply with her obligation to give truthful testimony," but "[a]bsent a court order, her Settlement Agreement with Corizon prohibits her from offering [the requested] testimony." Doc. 130 at 7-8.

None of the parties has produced the settlement agreement at issue -- plaintiffs don't have it, and Riner and Corizon protest that the agreement itself is confidential, offering to produce it only for *in camera* review. *See* doc. 130 at 6; doc. 131 at 18; doc. 137 at 3. The lack of any indication by either protesting party about how and why it bars Riner's testimony obstructs judicial interpretation of it. *See* doc. 130 at 7-8. The parties' arguments about the relevance of Riner's testimony[2] are also

---

[2] Corizon argues that plaintiffs have not shown that Riner's testimony would be relevant. *See* doc. 131 at 10-16. Plaintiff's counter that Corizon lacks standing to object to the relevance of discovery from a third party. *See* doc. 137 at 4-6. Even if it did have standing, and despite the likelihood that Riner does not have knowledge of Ajibade's detention, they contend that she could illuminate what the Sheriff and Corizon knew about the general quality of medical care provided to inmates. *See id*. at 6-7. They also contend that her testimony is relevant to corroborate or refute the testimony of defendant Brown. *Id*. at 7. Those relevancy claims are not obviously specious, and, after all, relevance is not a demanding standard. *United States v. Tinco*, 304 F.3d 1088, 1120 (11th Cir. 2002) ("The standard for what constitutes relevant evidence is a low one."); *Republic of Equador v. Hinchee,* 741 F.3d 1185, 1189 (11th Cir. 2013) (explaining Federal Rules of Civil Procedure "favor full discovery whenever possible") (quotes and cite omitted)). Since Riner hasn't

obscured by her refusal to answer many of the questions posed at her deposition, including apparently innocuous ones.[3]  Left in the dark on the facts, the Court must rely on the law for light.

Regardless of the contract's specific terms, "[t]he public policy of Georgia does not 'permit parties to contract privately for the confidentiality of documents [or testimony], and [thereby] foreclose others from obtaining, in the course of litigation, materials that are relevant to their efforts to vindicate a legal position.  To hold otherwise would clearly not serve the truth-seeking function of discovery in [civil] litigation.'"  *Barger v. Garden Way, Inc.*, 231 Ga. App. 723, 725 (1998) (alterations in original) (quoting *Grumman Aerospace Corp. v. Titanium Metals Corp. of America,* 91 F.R.D. 84, 87–88[1] (E.D.N.Y.1981)).  To effectuate that policy, a provision allowing the contracting party to "testify or otherwise comply with a subpoena, court order, or applicable

---

answered even basic questions, *see* note 3 *infra*, it's not clear what the content of her testimony is likely to be.  Riner does not assert that her testimony is irrelevant, but only seeks assurance that testifying will not subject her to liability.  *See generally* doc. 130.

[3]  For example, Riner's counsel advised her not to answer questions about the identity of Corizon's "medical director" and whether that person, whoever it was, was her immediate supervisor.  Doc. 125-1 at 39-40.  It is difficult to fathom what possible interest Corizon could have in keeping that information confidential.  However, the Court will not second-guess Riner's counsel's caution in protecting his client against possible liability for breach of the settlement.

law," is implied in every confidential settlement agreement. *Id*. at 725-26.

Federal law takes a similarly skeptical view of such agreements' power to limit discovery. *See In re Enron Corp. Sec., Derivative & ERISA Litig.*, 623 F. Supp. 2d 798, 838 (S.D. Tex. 2009) (citing, *inter alia*, "*Griffin v. Mashariki*, . . . ,1997 WL 756914, *2 (S.D.N.Y. Dec. 8, 1997) ('[T]he mere fact that settling parties agreed to maintain the confidentiality of part of the settlement ... cannot serve to shield that statement from discovery'); *Tribune Co. v. Purcigliotti*, . . . , 1996 WL 337277, *3 (S.D.N.Y. June 19, 1996) (same proposition); *Magnaleasing, Inc. v. Staten Island Mall,* 76 F.R.D. 559, 562 (S.D.N.Y.1977) (confidentiality clause does not bar discovery of relevant portions of a settlement agreement)"). The legal authority is, thus, unequivocal that the agreement between Corizon and Riner cannot *bar* plaintiffs' discovery.[4]

---

[4] Assuming that Georgia law governs the settlement agreement -- the Court assumes that it does because Corizon cites to Georgia case-law, including *Barger*, in its brief, *see* doc. 131 at 10-11 -- *Barger*'s implied caveat allows that someone subject to a confidentiality agreement "may nevertheless *testify* or *otherwise comply with a subpoena*." 231 Ga. App. at 725 (emphasis added). Thus, whatever the "significant confidentiality requirements" the parties' agreement "purports" to impose, doc. 130 at 2, they would be subject to *Barger*'s caveat. Since Fed. R. Civ. P. 45 does not require a subpoena to enumerate the subjects upon which testimony is sought, and

Weighing against the plaintiffs' discovery interest is the dispute-resolution efficiency promoted by settlements, which are only as attractive as they are enforceable. *See Harrison v. Bankers Standard Ins. Co.*, 2015 WL 3617108 at * (S.D. Cal. June 9, 2015) (quoting *MedImuune, L.L.C. v. PDL BioPharma, Inc.*, 2010 WL 3636211 at * 2 (N.D. Cal. 2010)) ("Courts 'must balance [one party's] interest in the discovery of potentially relevant information against [another party's] interest in protecting a settlement negotiated with the expectation of confidentiality."); *cf. Bennett v. Behring Corp.*, 737 F.2d 982, 986 (11th Cir. 1984) (referring to "the strong judicial policy favoring settlement"). Thus, "[w]here private parties, represented by counsel, contract for confidentiality of the settlement agreement terms, courts should be loathe to interfere." *In re Enron*, 623 F. Supp. 2d at 837 (citing *Centillion Data Sys., Inc. v. Ameritech Corp.*, 193 F.R.D. 550, 551-52 (S.D. Ind. 1999); *EEOC v. Rush Prudential Health Plans*, 1998 WL 156718 at * 5 (N.D. Ill. Mar. 31, 1998)). That reticence is compounded in

---

Riner does not contend that the subpoena imposes and undue burden, nor move the Court to quash or modify it, it is not clear what she means by requesting the Court "clarify the scope of the subpoena." Doc. 131 at 2. However, the Court expects that Riner, the parties, and their respective counsels will all appreciate *Barger*'s significance.

this case by Corizon's insistence that Riner's evidence would be merely cumulative. *See* doc. 131 at 16-17.

Given the importance of the interests on both sides of this dispute, and the relative lack of factual specificity, the parties should attempt a compromise solution, before the Court takes more drastic action.[5] Within 21 days from the date this Order is served, the parties should confer and attempt to agree to a protective order that will allow plaintiffs' counsel to conduct discovery, including taking Riner's

---

[5] The extent of the parties' conference prior to the deposition and instant motion is, like the other facts involved, murky. Plaintiffs' motion attaches email correspondence with Riner's counsel, and includes a boilerplate certification of conference. *See* doc. 125 at 22; doc. 125-6 (emails from Riner's counsel); doc. 125-7 (emails from plaintiffs' counsel). Corizon does not address the conference requirement at all. *See generally* doc. 131. Riner explains that the conference among the parties was limited, but should suffice to satisfy the Federal Rules and this Court's Local Rules. *See* doc. 130 at 5.

What is not clear is whether the parties discussed the possibility of an agreement, possibly memorialized in an Order, protecting any fact Riner reveals from public disclosure, while allowing plaintiffs, or at least their counsel, to hear that testimony and evaluate its relevance. Assuming that any of her testimony is later sought to be introduced in a subsequent motion or at trial, the parties and the Court would have the benefit of a fully-developed factual record in evaluating those arguments.

In that regard, a protective order is a meat-and-potatoes item often produced by meaningful, pre-compel motion conferences. Local Rule 26.5(c), for that matter, reminds attorneys "that Fed. R. Civ. P. 26(c) and 37(a)(2) require a party seeking a protective order or moving to compel discovery to certify that a good faith effort has been made to resolve the dispute before coming to court. "That rule is enforced." *Hernandez v. Hendrix Produce, Inc.*, 2014 WL 953503 at * 1 (S.D. Ga. Mar. 10, 2014). And the conference must be meaningful. *Hernandez v. Hendrix Produce, Inc.*, 297 F.R.D. 538, 540 (S.D. Ga. 2014); *State Farm Mut. Auto. Ins. Co. v. Howard*, 296 F.R.D. 692, 697 (S.D. Ga. 2013).

testimony, while preventing Riner or Corizon from forfeiting the benefit of their bargained-for protection from *public* disclosure. If, after a good-faith conference, they cannot reach a mutually satisfactory agreement, the parties should explain *specifically* the impediments, including their respective proposals for resolution.[6] The Court authorizes the filing, under seal and for *in camera* review, the confidential settlement agreement in question. And if any party contends that they cannot provide or support such an explanation on the Court's public docket, they are free to move the Court to seal relevant filings under Local Rule 79.7.

    **SO ORDERED,** this __19th__ day of July, 2017.

*/s/ G. R. Smith*
UNITED STATES MAGISTRATE JUDGE
SOUTHERN DISTRICT OF GEORGIA

---

[6] If plaintiffs wish to maintain the portion of their motion seeking to recover the costs of the Riner's testimony, they are free to do so after attempting to negotiate a mutually satisfactory agreement. Hopefully, if they chose proceed, they and the Court will have the benefit of a full understanding of the limitations allegedly imposed by the settlement agreement to inform an evaluation of counsels' conduct at her first deposition.