UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF GEORGIA
SAVANNAH DIVISION

| | |
|---|---|
| **SOLOMAN OLUDAMISI AJIBADE** and **ADENIKE HANNAH AJIBADE,** as natural parents of Mathew Ajibade, and<br><br>**THE ESTATE OF MATHEW AJIBADE** and Chris Oladapo, its Executor,<br><br>**Plaintiffs,**<br><br>*v.*<br><br>**JOHN WILCHER,** in his official capacity as Chatham County Sheriff, et al.,<br><br>**Defendants.** | CASE NO. 4:16-CV-82-WTM-GRS |

## JOINT STATUS REPORT

The parties hereby submit this Joint Status Report in accordance with the Court's Scheduling Order dated June 6, 2017.

**1.   The date and place of the conference of trial counsel, the duration thereof, and the names and addresses of counsel participating.**

This conference took place on August 14, 2017 by telephone and lasted 30 minutes.

The following counsel and parties participated in the status conference:

**Plaintiffs:**
Cameron Kuhlman, 236 East Oglethorpe Avenue, Savannah, Georgia 31401
Bill Cash III, 316 South Baylen Street, Suite 600, Pensacola, Florida 32502
Mark O'Mara, 221 NE Ivanhoe Blvd, Suite 200, Orlando, Florida 32804

**Defendants Corizon and Brown:**
Tom Withers
Eric Frisch, 191 Peachtree Street NE, Suite 3600, Atlanta, GA 30303.

1

**Defendant Sheriff:**
Jennifer Burns, 124 Bull Street, Savannah, Georgia 31401
Jonathan Hart, same
Ben Perkins, 218 West State Street, Savannah GA 31401

**Defendants Evans-Martinez and Johnson:**
Ben Perkins (above)

**Defendant Evans:**
Bobby Phillips

**Defendant Jason Kenny:** pro se

2. **A summary of pleadings for each party.**

**Plaintiffs:** Plaintiffs are the Estate of Mathew Ajibade, Mr. Ajibade's parents, and the executor of his estate. Plaintiffs' complaint alleges claims of excessive force and deliberate indifference against the Defendants, arising from an attack and torture committed against him by the Sheriff's deputies, and then all Defendants' deliberate indifference to his serious medical needs. Plaintiffs assert *Monell* liability against the Sheriff and individual constitutional claims against the deputies. Plaintiffs also bring state-law claims for wrongful death, assault, and battery.

**Corizon Defendants:** Corizon, LLC appeared and answered Plaintiffs' Complaint on May 31, 2016. (Doc. 56). Corizon Health, Inc. and Gregory Brown, LPN appeared and answered Plaintiffs' Complaint on May 31, 2016. (Doc. 57). Corizon, LLC, Corizon Health, Inc., and Greg Brown denied the material allegations and raised affirmative defenses.

**Defendant Sheriff Wilcher:** The Sheriff appeared and timely answered Plaintiffs' Complaint (doc. 1) as corrected (doc. 21) on May 19, 2016 (doc. 50). The Sheriff's motion for partial summary judgment and supporting briefs are pending. (Docs. 113, 124, and 139).

2

**Defendant Debra Johnson:** Ms. Johnson appeared and timely answered Plaintiffs' Complaint (doc. 1) as corrected (doc. 21) on May 6, 2016 (doc. 41).

**Defendant Andrew Evans-Martinez:** Mr. Evans-Martinez appeared and timely answered Plaintiffs' Complaint (doc. 1) as corrected (doc. 21) on May 20, 2016 (doc. 41).

3. **A statement of any disagreements to the jurisdiction and venue of the Court, including citations of applicable authorities in support of each side's contentions.**

   None.

4. **The status of matters which are presently set before the Court, e.g., hearings, motions, trial date, etc.**

   The Court has before it:

   - The Sheriff's motion for summary judgment on grounds of Eleventh Amendment immunity (ECF No. 113).

   - Motions relating to the second deposition of Betty Riner (ECF Nos. 145, 146).

   The parties are unaware of any other pending motions or any hearings or trial dates currently set.

5. **The status of discovery. If discovery has not been completed, then the report shall set forth a detailed and precise time schedule for the full completion thereof. Counsel should be advised that the Local Rules will be strictly adhered to, requests for extensions should be avoided, and all discoveries completed during the time allotted.**

   Fact discovery is mostly complete, with the sole exception being the second deposition of Betty Riner. The parties have served expert reports and have begun expert depositions.

   All parties intend to see that expert depositions are completed by October 2. There are fourteen depositions left, and not all depositions have yet been scheduled. Experts are

located in places including California, Michigan, New Jersey, Nevada, Florida, and Georgia. Mindful of the Court's past orders, the parties nevertheless discussed the possibility of seeking a further extension to complete expert discovery.

Plaintiffs note that Defendants have not yet offered a deposition date for each expert so it has not yet been possible to schedule all remaining depositions.

6. **The names of any parties who should be joined or added, together with a detailed statement of reasons thereof.**

No party is anticipated to be added.

Corizon LLC asked to be dismissed from the action.

7. **The contentions of fact of each party in detail.  Do not argue your case, simply tell the Court what the facts are as seen by each side.**

**Plaintiffs:** Plaintiffs set forth their view of some of the relevant facts in their opposition to the Sheriff's motion for summary judgment (ECF No. 114 at 2-5).

Mathew Ajibade, a 21-year-old college student with a documented history of mental illness, experienced an episode of his bipolar disorder on January 1, 2015. Police were summoned to a domestic incident at a convenience store parking lot. Mathew was not acting in a mentally stable manner and the arresting officers debated whether he should be transported to a mental hospital. Instead, he was taken to the jail operated by the Sheriff, under the County's rules and regulations. The police officers informed booking deputies of their concerns regarding Mathew's mental health and gave those deputies Mathew's pill bottle for Depakote, a medicine that treats bipolar disorder. That bottle was given to Defendant Brown, an employee of Corizon, which had a contract to run the jail's medical services.

4

Deputies left Mathew alone for a nearly four-hour period and then escorted him out of his cell. After Mathew continued to exhibit signs of mental distortion and confusion, they knocked him to the ground, set upon him, and attacked him with closed fists, kicks, and a Taser. During this altercation, an elderly deputy fell over. In retribution for this scuffle, the deputies and their supervisor Defendant Johnson decided to strap Mathew to a restraint chair, and hold him in a cell in an older part of the jail where there were no surveillance cameras. Defendant Kenny Tasered Mathew in this cell four times. These Taserings of a restrained mentally ill man were pure torture not inflicted for any justified or penological purpose.

Defendant Brown, who witnessed the attack on Mathew, did nothing to render any medical care, spending only about 50 seconds in the cell with him and only for the purpose of checking his restraints to the chair. Defendant Brown never entered the cell again; nor did anyone else.

Mathew died strapped to the chair. The coroner and the Georgia Bureau of Investigation's medical examiner each ruled Mathew's death a homicide at the hands of the deputies and Corizon's nurse. The Sheriff fired ten people for misconduct, including many of the individual Defendants, and three of the individual Defendants were criminally tried and convicted.

The Sheriff had a history of problems with the excessive use of force and failure to render medical treatment. After, but only *after*, this incident did the Sheriff remove Tasers from the jail and conduct a review of excessive Taser use in the facility. That review uncovered several other misuses of Tasers, including an episode where a deputy was

allowed to take a Taser home and threaten a child with it. The Sheriff told the Washington Post that Taser usage was out of control and that deputies were using the Taser as punishment. Also, the Sheriff, who at one time expressed satisfaction with Corizon's services, soured on Corizon after, but only *after*, this incident and wrote that Defendant Brown was summarily "banished" from the building. This history and other facts show that the Sheriff willfully disregarded and failed to control the abuse of force in the facility and failed to monitor and ensure that Corizon provided appropriate levels of care. For its part, Corizon failed to maintain proper staffing levels, failed to keep key administrative staff filled (including the fact that there was no medical director on duty, nor had there been for months), and experienced extremely high levels of turnover. Corizon permitted nurse Brown to be in the jail, unsupervised, after just four days on the job. Corizon's administrative failures contributed to and caused Mathew's death.

**Corizon Defendants:** Mathew Ajibade was brought to the Chatham County Detention Center ("CCDC") on January 1, 2015 after being arrested for domestic violence. Mr. Ajibade was medically cleared at the scene. At the CCDC, custodial staff placed Mr. Ajibade in a holding cell to await pre-booking.

After a period of time, custodial staff started pre-booking Mr. Ajibade. While attempting to have Mr. Ajibade sit in a chair for the pre-booking process, Mr. Ajibade did not comply. A physical altercation ensued between Mr. Ajibade and several officers.

When the altercation started, Corizon Health, Inc.'s employee, Greg Brown, LPN, was performing an intake screening on a female detainee. Mr. Brown was not aware that Mathew Ajibade was a new male arrival at the CCDC. Mr. Brown heard a commotion,

6

looked outside of his work area and observed the deputies trying to restrain a male, African American detainee. Mr. Brown then assisted security staff with returning the female detainee to a holding cell.

Mr. Brown next observed a female deputy get injured during the altercation. Per protocol, Mr. Brown did not interfere with the attempts by the security staff to restrain the male detainee. Mr. Brown was able to remove the injured deputy and he summoned assistance for her while he tended to her immediate injuries. Meanwhile, the altercation continued.

Eventually, deputies secured Mr. Ajibade's hands and legs. The custodial officers then placed Mr. Ajibade in a restraint chair and moved him to a holding cell. Custodial staff alerted Mr. Brown that the male detainee was restrained. Per protocol, Mr. Brown went into the cell to check the restraints and assess the restrained male detainee. Mr. Brown returned to check on the restrained male detainee at approximately 1:32 AM on January 2, 2015. Mr. Brown found that the restrained male detainee was unresponsive. Mr. Brown started resuscitation and summoned additional help. Resuscitation efforts continued for a significant period of time, including the use of an automatic external defibrillator and Ambu-bag. The male detainee was transported to the hospital, where he was declared deceased.

**Ms. Johnson and Mr. Evans-Martinez:** Plaintiffs allege against these Defendants Section 1983 excessive force claims (Count I), Section 1983 deliberate indifference to physical and mental health needs claims (Count II), wrongful death claims (Count V), and state law assault and battery claims (Count VI).  Ms. Johnson and Mr. Evans-Martinez did

not apply any force to Mr. Ajibade, and thus logically deny they used or acquiesced in any alleged excessive force. Ms. Johnson and Mr. Evans-Martinez deny they were deliberately indifferent to Mr. Ajibade's alleged (and unknown at the time) serious medical needs. Neither Ms. Johnson nor Mr. Evans-Martinez assaulted nor battered Mr. Ajibade (Plaintiffs are in possession of surveillance footage which confirms as much, but nonetheless maintain the claims in violation of Rule 11). Finally, Ms. Johnson and Mr. Evans-Martinez bear no liability on Mr. Ajibade's wrongful death claim.

**Sheriff Wilcher:** Plaintiffs allege against Sheriff Wilcher a Section 1983 "Pattern and Practice of substandard medical conditions" claim (Count III), a Section 1983 "Pattern and Practice of Excessive Force" claim (Count IV), a wrongful death claim (Count V), and an assault and battery claim (Count VI). Plaintiffs concede their assault and battery claim is barred by sovereign immunity (doc. 114, p. 24). Plaintiffs' excessive force claim is barred by Eleventh Amendment immunity (Docs. 113, 124, and 139). Count III fails because there is no evidence of substandard medical conditions at the CCDC (indeed, the facility had been reaccredited by a leading medical accreditation agency shortly before the subject incident), nor any purported notice of any such substandard conditions. The Sheriff is not liable for Mr. Ajibade's alleged wrongful death.

**8.    A summary of disputed facts.**

   **Plaintiffs:**

   Plaintiffs believe the facts disputed by one party or another include:

- What was done, and the degree of care exercised, in booking Mathew into the facility and investigating his history of mental illness.

8

- What occurred during the scuffle between Mathew and the deputies.
- What certain Defendants knew or should have known about the scuffle and Mathew's mental state.
- What certain Defendants did or did not do with regard to the treatment of Mathew when he was placed into a restraint chair and a cell after the scuffle.
- What certain individuals did to render any medical care to Mathew or to treat Mathew with any basic decency after he was Tasered.
- The level of knowledge the Sheriff had about constitutionally infirm medical conditions or uses of force.
- What Corizon did to ensure that the care rendered in the jail met the standard of care or met constitutional levels of care.
- What the organizational defendants did to establish appropriate policies and whether they saw that their policies were carried out.

Plaintiffs agree that the "facts" raised by the Defendants below are mostly in dispute, but also assert that some of the contentions made by the Defendants are really disputed legal matters (e.g., whether certain Defendants are entitled to summary judgment).

**Corizon Defendants:**

The Corizon Defendants dispute that Corizon, LLC had any involvement with the provision of healthcare services at the CCDC.

The Corizon Defendants dispute that Greg Brown knew that the male detainee the deputies were trying to restrain was Mathew Ajibade.

9

The Corizon Defendants dispute that Greg Brown knew that Mathew Ajibade had an alleged serious mental health condition while he was at the CCDC.

**Sheriff Wilcher:** It is the Sheriff's position that no material fact is in dispute as to the claims alleged against him, and thus he is entitled to summary judgment. There is no evidence that the Sheriff had reason to believe that medical conditions at the CCDC were any less than the MAG audit revealed them to be when it fully accredited the facility shortly before Mr. Ajibade's death. Despite reams of discovery and scores of depositions, Plaintiffs have adduced no evidence to support their *Monell* excessive force claim. Assuming arguendo Plaintiffs had some evidence, the claim is barred by Eleventh Amendment immunity in any event.

**Ms. Johnson and Mr. Evans-Martinez:** It is Ms. Johnson and Mr. Evans-Martinez's position that no material fact is in dispute as to the claims alleged against them, and thus they are entitled to summary judgment. There is simply no evidence of deliberate indifference, no evidence of a use of force (much less excessive force) by either of them, no evidence of acquiescence in any alleged excessive use of force by another officer, nor evidence that they even laid hands on Mr. Ajibade (thus rendering the assault and battery claim spurious).

9. **A summary of disputed legal issues.**

    **Plaintiffs:**

    Plaintiffs believe that at least the following legal issues may be in dispute:

    - Whether certain core defenses, such as qualified immunity or the Eleventh Amendment shield any of the Defendants.

- Whether *Monell* liability can be established against the Sheriff.
- Whether and how any Defendant has indemnified any other Defendant (e.g., whether Corizon indemnifies the Sheriff).

At the conference, not much time was spent discussing specific "legal issues." Plaintiffs assume that they bear the burden of proving their claims. The Defendants did not raise many "legal issues" at the conference. Regarding many of the "legal issues" the Defendants raised, many appear to just be contentions without raising a specific issue. (E.g., defendant "is not liable to Plaintiffs.") Further illumination of exactly which legal issues remain would assist in resolving this action.

**Corizon Defendants:**

(a) Corizon Health, Inc. is not liable to Plaintiffs for alleged deliberate indifference to Mr. Ajibade's serious medical needs or violate Mr. Ajibade's constitutional rights.

(b) Gregory Brown, LPN is not liable to Plaintiffs for alleged deliberate indifference to Mr. Ajibade's serious medical needs or violate Mr. Ajibade's constitutional rights.

(c) Corizon, LLC is not liable to Plaintiffs for alleged deliberate indifference to Mr. Ajibade's serious medical needs or violate Mr. Ajibade's constitutional rights.

(d) Corizon Health, Inc. did not maintain a pattern or practice of deficient medical or mental health care that rose to the level of policy and that was the cause of Mr. Ajibade's alleged injuries or death.

(e)     Nothing Plaintiffs contend Corizon Health, Inc. allegedly did or failed to do was the cause-in-fact of Mr. Ajibade's death.

(f)     Nothing Plaintiffs contend Mr. Brown allegedly did or failed to do was the cause-in-fact of Mr. Ajibade's death.

(g)     Nothing Plaintiffs contend Corizon, LLC did or failed to do was the cause-in-fact of Mr. Ajibade's death.

(h)     Nothing Plaintiffs contend Corizon Health, Inc. allegedly did or failed to do was the proximate cause of Mr. Ajibade's death.

(i)     Nothing Plaintiffs contend Mr. Brown allegedly did or failed to do was the proximate cause of Mr. Ajibade's death.

(j)     Nothing Plaintiffs contend Corizon, LLC did or failed to do was the proximate cause of Mr. Ajibade's death.

(k)     Plaintiffs are not entitled to recover any alleged damages from the Corizon Defendants.

(l)     Plaintiffs are not entitled to an award of punitive damages against the Corizon Defendants.

(m)     Whether Plaintiffs can recover punitive damages for the ancillary wrongful death claim under Georgia law.

(n)     Plaintiffs are not entitled to an award of attorneys' fees against the Corizon Defendants.

**Defendants Sheriff, Johnson and Evans-Martinez:** none of these Defendants are liable to Plaintiffs on any of their claims.

**Defendant Sheriff:** asserts that he is entitled to Eleventh Amendment immunity.

**Defendants Johnson, Evans-Martinez, and Evans:** assert that they are not liable for assault or battery.

10. **Any proposed amendments to the pleadings and a brief statement of their necessity.**

Plaintiffs intend to amend their complaint to correct certain errors and reflect the dismissal of previously-dismissed defendants. Plaintiffs will consider Corizon LLC's request to be dismissed from the case. The Defendants agreed to Plaintiffs' amending the complaint if it does not add new claims.

11. **A statement of any law and motion matters contemplated. If the Court on any prior occasion has indicated it would decide matters pre-trial, a brief summary of those matters and the position of each party with respect thereto should be included.**

**Plaintiffs:** Plaintiffs do not anticipate filing any motions at this point, except *Daubert* motions. The other Defendants did not disclose the nature of all their anticipated motions at the conference or in followup communications thereafter.

**Corizon Defendants:** The Corizon Defendants anticipate filing motions for summary judgment by the deadline set forth in the scheduling order. The Corizon Defendants anticipate filing motions to exclude expert opinions under FRE 702, 703, and 704 by the deadline set forth in the scheduling order.

**Sheriff Wilcher:** The Sheriff's partial motion for summary judgment (docs. 113, 124, and 139) is pending. The Sheriff will move for summary judgment on each of Plaintiffs' claims within the dispositive motions deadline, and will file motions to exclude certain

expert opinions under FRE 702, 703, and 704 by the deadline set forth in the scheduling order.

**Defendants Johnson and Evans-Martinez:** These Defendants will move for summary judgment on each of Plaintiffs' claims within the dispositive motions deadline, and will file motions to exclude certain expert opinions under FRE 702, 703, and 704 by the deadline set forth in the scheduling order.

12. **If either party has any request for the trial of certain issues first, or bifurcation for possibly shortening the trial, this should be included.**

    All Defendants who spoke at the conference asked that the issue of punitive damages be bifurcated. Plaintiffs oppose this request. No other proposals were discussed.

13. **If the case involves a class action governed by FRCP 23, state the areas and grounds for all disputes which exist as to certification by the Court as a class action under Rules 23 (a) and (b).**

    Not applicable.

14. **An estimate of the number of trial days required. Where counsel cannot agree, then each party shall provide an estimate.**

    **Plaintiffs:** Depending on the scope of claims and number of experts that survive any motions, Plaintiffs anticipate that this trial could run 15 to 25 days. Plaintiffs disclosed eight experts, the Sheriff has four and Corizon has four. Further, there are about ten Defendants depending on how you count. It is too early to be too certain about the number of days required.

    **Corizon Defendants and Defendants Sheriff, Johnson, and Evans-Martinez:** Estimate 10-14 trial days.

15. **A statement whether the case is a jury or non-jury trial.**

    Jury trial.

16. **At the status conference, the Court will expect a serious discussion regarding settlement. The status report is to set forth the following:**

    1. **The <u>realistic</u> demand of the plaintiff(s).**

    2. **The <u>realistic</u> offer of the defendant(s).**

    3. **The specific aspects of the case which are inhibiting settlement, e.g., outstanding discovery, pending motions, etc.**

    4. **The <u>realistic</u> likelihood that negotiations will continue.**

    **Plaintiffs:**

Plaintiffs initiated a pre-suit mediation that was attended in person in Atlanta by counsel for the Sheriff and Corizon. At that mediation, Plaintiffs made an opening demand of $25,000,000 for the pain, mental anguish, torture, killing, and full value of the life of Mathew Ajibade. Defendants made no counteroffer.

Not much has changed since mediation. The parties spent more time discussing this item #16 than any other item on the Court's list. Plaintiffs received the following offers: Corizon Health and Brown, $150,000; Sheriff, $0; Evans, $2500; Johnson and Evans-Martinez, $0; Kenny, $0; other Defendants: did not participate in this call.

Plaintiffs' demand, although it is negotiable and Plaintiffs would hope to continue negotiations, remains $25,000,000. In Plaintiffs' view, the collective offer of the Defendants is not realistic to reflect the value of damages incurred, even if discounted by the trial risk each party retains. One of the "specific aspects" of this case that inhibits settlement appears to be the Sheriff's unwillingness to negotiate. At the conference, the

15

Sheriff indicated that "no offer was necessary" so long as the Sheriff had a pending motion for summary judgment. Other Defendants maintain they have "complete defenses" and need not offer anything.

Negotiations will continue, but resolution seems unlikely if Defendants are not willing to make serious offers.

**Corizon Defendants and Sheriff Wilcher:** Prior to suit being filed, Plaintiffs demanded $25 million collectively from the Corizon Defendants and the Sheriff. The $25 million demand is an impediment to reasonable settlement discussions. The Corizon Defendants and Sheriff are prepared to attempt to resolve the case on reasonable terms and will participate in further good-faith efforts to negotiate. The Sheriff's complete defenses to Plaintiffs' claims, and his pending motion for partial summary judgment are also likely to inhibit resolution.

**Ms. Johnson and Mr. Evans-Martinez:** Neither of these Defendants have insurance coverage for Plaintiffs' claims, and have minimal assets, which is likely an impediment to resolution. Moreover, Ms. Johnson and Mr. Evans-Martinez have complete defenses to Plaintiffs' claims.

Respectfully submitted,

/s/ William F. Cash III
Troy A. Rafferty (Fla. Bar No. 024120)
Timothy M. O'Brien (Ga. Bar No. 548714)
William F. Cash III (Fla. Bar No. 68443)
**LEVIN, PAPANTONIO, THOMAS,**
**MITCHELL, RAFFERTY & PROCTOR, P.A.**
316 South Baylen Street, Suite 600
Pensacola, FL 32502
Phone: 850-435-7059
Fax: 850-435-7020
E-mail: trafferty@levinlaw.com
bcash@levinlaw.com

Mark O'Mara (Fla. Bar No. 359701)
Alyssa Flood (Fla. Bar No. 99755)
**O'MARA LAW GROUP**
221 NE Ivanhoe Boulevard
Orlando, FL 32804
Phone: 407-898-5151
Fax: 407-898-2468
E-mail: mark@omaralawgroup.com

William R. Claiborne (Ga. Bar No. 126363)
**THE CLAIBORNE FIRM, P.C.**
410 East Bay Street
Savannah, GA 31401
Phone: 912-236-9559
Fax: 912-236-1884
E-mail: will@claibornefirm.com

Cameron C. Kuhlman (Ga. Bar No. 596159)
**DUFFY & FEEMSTER, LLC**
236 E. Oglethorpe Ave.
Savannah, GA 31401
Phone: 912- 236-6311
Fax: 912- 236-6423
Email: cck@duffyfeemster.com

*Counsel for the Plaintiffs*

17

/s/ R. Jonathan Hart
R. Jonathan Hart (Ga. Bar. No. 333692)
Jennifer R. Burns (Ga. Bar No. 330328)
**CHATHAM COUNTY ATTORNEY**
PO Box 8161
Savannah, GA 31412
Phone:    912-652-7881
Fax:        912-652-7887
E-mail:    rjhart@chathamcounty.org
              jburns@chathamcounty.org

*Attorneys for Defendant John Wilcher*

/s/ Thomas S. Carlock
Thomas S. Carlock (Ga. Bar. No.110200)
Eric Frisch (Ga. Bar. No. 261683)
**CARLOCK, COPELAND & STAIR, LLP**
191 Peachtree Street, NE Suite 3600
Atlanta, GA 30303
Phone:    404-522-8220
Fax:        404-523-2345
E-mail:    tcarlock@carlockcopeland.com
              efrisch@carlockcopeland.com

*Attorneys for Defendants Corizon Health, Inc., Corizon, LLC, and Gregory Brown*

/s/ Robert P. Phillips III
Robert P. Phillips III (Ga. Bar. No. 576700)
**PHILLIPS & CARSON**
420 W. Broughton Street, 2nd Floor
Savannah, GA 31401
Phone:    912-232-0081
Fax:        877-617-1480
E-mail:    bplaw@msn.com

*Attorney for Defendant Maxine Evans*

18

/s/ Benjamin M. Perkins
Benjamin M. Perkins (Ga. Bar No. 140997)
**OLIVER MANER, LLP**
218 West State Street
Savannah, GA 31401
Phone:   912-236-3311
Fax:     912-236-8725
E-mail:  bperkins@olivermaner.com

*Attorneys for Defendants Andreux Evans-Martinez, Debra Johnson and John Wilcher*

/s/ Jason Kenny
Jason Kenny

*Defendant Pro Se*

**CERTIFICATE OF SERVICE**

I certify that on August 14, 2017, this *Joint Status Report* will be filed on CM/ECF, which will serve it on all parties.

/s/ William F. Cash III  
William F. Cash III