# UNITED STATES DISTRICT COURT
# SOUTHERN DISTRICT OF GEORGIA
# SAVANNAH DIVISION

SOLOMON OLUDAMISI AJIBADE, *et al.*,

    Plaintiffs,

v.       CV416-082

JOHN WILCHER, in his official capacity as Chatham County Sheriff, *et al.*,

    Defendants.

## **ORDER**

Before the Court is the latest round in the dispute over the deposition of Betty Riner. Plaintiffs moved to compel her testimony. Doc. 125. Riner responded that she was "willing *and eager* to fully comply with her obligation to give full and truthful testimony," but expressed concern that her testimony would subject her to liability under an (otherwise unrelated) settlement agreement between her and defendant Corizon Health. Doc. 130 at 8 (emphasis added). Corizon also opposed plaintiff's motion, contending Riner's testimony was both precluded by the settlement agreement and irrelevant. Doc. 131. The Court directed the parties to confer and try to formulate a protective order that would assuage Riner's liability concerns, protect Corizon's

bargained-for confidentiality, and allow plaintiffs to take Riner's testimony. Doc. 141.

The Court's hopes for a negotiated, mutually-agreeable solution have not borne fruit. Corizon now moves for a protective order. Doc. 145. Plaintiffs seek an order compelling Riner to testify, without any restriction, and awarding fees from Riner's counsel and Corizon "as a sanction for their conduct at the first deposition -- and now for Corizon's conduct during the meet-and-confer period." Doc. 146 at 14; doc. 156. Riner, for her part, asks the Court to issue a protective order excusing her from testifying, now contending that her testimony is irrelevant and cumulative, *see* doc. 151 at 5, and if the Court declines her request, for "topic-specific guidance as to *exactly* what she must testify about pursuant to Plaintiffs' subpoena or a Court order and provide [her with] protection from suit or liability instigated by Corizon under the confidential Settlement Agreement related to any testimony she might provide." *Id.* at 11. Naturally, both Corizon and Riner oppose any award of fees or the imposition of sanctions. *See* doc. 131 (Corizon's opposition to plaintiffs' original motion requesting it be denied "in its entirety"); doc. 151 at 11.

As the Court's last Order explained, the private agreement between Riner and Corizon[1] *cannot*, under Georgia law, remove her obligation to provide truthful testimony in response to plaintiffs' subpoena. *See Barger v. Garden Way, Inc.*, 231 Ga. App. 723, 725 (1998) ("The public policy of Georgia does not permit parties to contract privately for the confidentiality of documents or testimony and thereby foreclose others from obtaining, in the course of litigation, materials that are relevant to their efforts to vindicate a legal position. To hold otherwise could clearly not serve the truth-seeking function of discovery in civil litigation." (quotes, alterations, and cite omitted)). The common law, too, embodies the principle that "the public has a right to every man's evidence."[2] *United States v. Bryan*, 339 U.S. 323, 331 (1950); *Doe No. 1 v. United States*, 749 F.3d 999, 1009 (11th Cir. 2014) (declining to recognize a

---

[1] The Court has reviewed the agreement. *See* doc. 144. Since it contains a provision requiring that its terms remain confidential and, as explained below, its precise terms are irrelevant to plaintiffs' right to discovery, the Court will not discuss any particular provisions.

[2] "Were the Prince of Wales, the Archbishop of Canterbury, and the Lord High Chancellor, to be passing by in the same coach, while a chimney-sweeper and a barrow-woman were in a dispute about a halfpennyworth of apples, and the chimney-sweeper or the barrow-woman were to think proper to call upon them for their evidence, could they refuse it? No, most certainly." *Branzburg v. Hayes*, 408 U.S. 665, 668 n. 26 (1972) (quoting 4 THE WORKS OF JEREMY BENTHAM 320-21 (J. Bowring ed. 1843)).

common-law privilege for plea negotiations). If the testimony plaintiffs seek is otherwise discoverable, Corizon and Riner's agreement cannot prevent it.

Under the Federal Rules, permissible discovery depends upon relevance.[3] *See* Fed. R. Civ. P. 26(b)(1) ("Parties may obtain discovery regarding any nonprivileged matter that is relevant to any party's claim or defense"). Relevance, however, is not a high bar. *See McCleod v. Nat'l R.R. Passenger Corp.*, 2014 WL 1616414 at * 3 (S.D. Ga. Apr. 22, 2014) ("Rule 26, quite simply, sets forth a *very* low threshold for relevancy . . . ." (quotes and cite omitted)). Plaintiffs' Amended Complaint includes a claim that Corizon and Sheriff Wilcher "knew, or should have known, of a history, custom, propensity, and pattern for Corizon employees and deputies, officers and employees at the CCDC to fail or refuse to provide prompt and competent access to and delivery of physical and mental health evaluation and treatment to detainees . . . ."

---

[3] Recent amendments to Rule 26(b), although substantive and substantial, do not change the *definition* of "relevance." Instead, they emphasize requirements already present in the Rules, like proportionality. *See* Fed. R. Civ. P. 26, advisory committee's note to 2015 amendment ("Restoring the proportionality calculation to Rule 26(b)(1) does not change the existing responsibilities of the court and the parties to consider proportionality . . . ."); *Sibley v. Choice Hotels Int'l*, 2015 WL 9413101 at * 2 (E.D.N.Y. Dec. 22, 2015) ("While proportionality factors have now been incorporated into the Rule 26(b)(1) definition, those factors were already a part of Federal discovery standards, appearing in Rule 26(b)(2)(C)(iii).").

Doc. 21 at 15, ¶ 99. Riner's testimony is clearly relevant to that claim, at least. Plaintiffs contend she "offers a totally unique view" as "the *only* person . . . not in the management structure of the Sheriff or Corizon" called to testify in this matter regarding a particular meeting at which (plaintiffs contend) deficiencies in the medical services provided at CCDC were discussed. Doc. 146.

Even if a party establishes that challenged discovery is relevant, the Court may nevertheless disallow or limit it. *See, e.g.,* Fed. R. Civ. P. 45(d)(3). The Federal Rules specifically direct courts to consider, among other factors affecting the scope of discovery, "whether the burden or expense of the proposed discovery outweighs its likely benefit." Fed. R. Civ. P. 26(b)(1). Riner contends that the burden imposed by her testifying, subject to the risk of litigation or liability, overwhelms its likely benefit. *See* doc. 151 at 7 ("[T]he nature of the testimony [Riner] is capable of providing does not justify the burden that testifying in this case places upon her, nor does it justify the jeopardy that testifying would subject her to."); *see also* doc. 145 at 6 ("Corizon Health simply cannot say in advance that Ms. Riner will not be in breach of the settlement agreement [if she testifies] or that a breach, should it occur,

will be consequence-free."). Plaintiffs have cited nothing that suggests such burdens should not be weighed in the balancing the Rules require.[4]

The difficulty the Court faces, then, is to balance the risk that Riner faces from testifying (slim as that may be) against the unknown value of testimony she has not yet provided. Rather than attempt to count the angels dancing on that pinhead, the Court will pursue a middle course. Plaintiffs and Corizon agree that a protective order would mitigate this difficulty, although they are unable to settle on terms amongst themselves. *See* doc. 145 at 6 (Corizon seeks an order sealing the deposition and only unsealing it "based on motion and after presentation of what information could and should be disseminated into

---

[4] Although *Barger* is clear that private agreements cannot preclude legitimate discovery, the Court will not go so far as to decide, given the procedural posture of the case, that *any* action for breach of such an agreement would be frivolous. *See* doc. 151 at 7-8 (expressing concern that "[i]f a subpoena or court order only compels a witness to offer discoverable testimony, and Riner offers testimony outside the scope of this case's permissible discovery, she might well subject herself to liability *even if* the Settlement Agreement or prevailing law provides for her to testify 'pursuant to a lawful subpoena' or court order."). Riner's liability concerns, given that Corizon does not contest that she may testify, seem attenuated. *See* doc. 145 at 6-7 ("What Corizon Health can say is that Plaintiffs should be able to take Ms. Riner's deposition, just like any other deposition, and Ms. Riner may answer, just like any other depo[nent]. Should Ms. Riner breach the terms of her settlement agreement, Corizon Health should be free to determine what to do in response."). Without deciding the issue, the Court is nevertheless skeptical that a suit for breach of a confidentiality agreement, arising out of testimony given in response to a lawful subpoena, could be successful (to say nothing of whether such a suit might give rise to a counterclaim for tortious abuse of civil process).

the public record."); doc. 146-4 (plaintiffs' proposed order, including a 14-day period in which the transcript would remain sealed.) Given the Court's broad discretion in this area, it will impose some minimal constraints on the dissemination of Riner's testimony.

Plaintiffs and Corizon agree that *some* level of confidentiality for Riner's testimony will not undermine plaintiffs' interest in hearing her testimony and determining its value for themselves. Plaintiffs correctly point out that the stringent confidentiality measures Corizon proposes run afoul of the, law's general disfavor of secret judicial proceedings and records. *See* doc. 146 at 12; *F.T.C. v. Abbvie Prods. LLC*, 713 F.3d 54, 62 (11th Cir. 2013) ("The common-law right of access establishes a general presumption that criminal and civil actions should be conducted publicly . . . ." (quotes, alterations, and cite omitted)); *see also, e.g.,* S.D. Ga. L. Civ. R. 79.7(d) (noting the "presumption of openness [of court records] is derived from the First Amendment"). Since the parties were unable to resolve this difficulty on their own, the Court will do it for them.

The parties, and any person privy to the substance of Riner's testimony, are **DIRECTED** to maintain that information in confidence until 14 days after the transcripts are served. If any party (or Riner)

7

objects that the testimony elicited is outside the scope of permissible discovery (and thus subject to her confidentiality obligations), they may move the Court to order that that portion of the transcript remain confidential, and should the deposition be filed of record, that the confidential portion be sealed, pursuant to Local Rule 79.7 (Sealed Documents). If no party makes such a motion within 14 days, the confidentiality obligations expire and the transcripts, if filed, shall be unsealed. If such a motion is filed, the parties privy to that testimony shall keep it confidential until further Order from the Court. This procedure will enable the Court to resolve any dispute about the confidentiality of Riner's testimony without its premature disclosure.[5]

The Court, however, can neither provide Riner with a definitive interpretation of her agreement with Corizon nor indemnify her against suit. The Court may not issue advisory opinions. *See, e.g., Thigpen v. Smith*, 792 F.2d 1507, 1514 (11th Cir. 1986) (citation omitted)

---

[5] The parties and Riner remain free to negotiate an alternative to the Court's protective order. The Court also notes that Corizon's proposals include an undertaking, when moving to seal portions of the deposition, to identify portions it contends "would breach the terms of the settlement agreement." *See* doc. 146-4 at 3. The Court expects that any motion filed by Corizon or Riner to extend the limitations on disclosure of Riner's testimony transcript would include an explanation of why the challenged portion(s) would not only breach the settlement agreement but disclose matters not relevant to any parties' claim or defense in this litigation. After all, any such burden is directly linked to the possibility of a breach.

(Constitution's limitation of federal court's jurisdiction to "cases" and "controversies" implies that they "have no authority to issue advisory or hypothetical decisions."). Riner's request for an interpretation of her own agreement and "protection" against a hypothetical future suit by Corizon seeks nothing less. She doesn't provide any authority, beyond the Court's broad discretion to control discovery, suggesting the Court has the power to issue the order she's requested in the context of a discovery dispute.[6] *See* doc. 151 at 3-4 (arguing "[t]he Court has wide latitude to fashion any remedy it wishes."). Whether a procedure exists for her to seek a judicial determination of her potential liability is a question for her counsel, but this isn't it.[7]

---

[6] Riner suggests that the Court can "define[ ] what the subpoena or Court order actually compels her to testify *about*." Doc. 151 at 9. However, there is no requirement that a notice of deposition or a subpoena specify the topics counsel intends to cover. *See* Fed. R. Civ. P. 30(b)(1) ("The notice must state the time and place of the deposition and, if known, the deponent's name and address."); Fed. R. Civ. P 45(a)(1) (listing the required contents of a subpoena, including "command each person to whom it is directed to do the following at a specified time and place: attend and testify . . . ."). The Court cannot exhaustively identify, in advance, what topics covered in a deposition are relevant, and thus discoverable. As discussed above, the Court imposes a procedure whereby any such contentions can be considered specifically, before the content of Riner's testimony is made public.

[7] To the extent that Riner is (as her brief puts it) on a "tightrope" it is one that she walked onto when she undertook confidentiality obligations under the settlement agreement. Her position may be precarious, but she received monetary consideration to undertake it. In that regard, "[t]he possibility of being sued by those adversely affected [by a decision] is an inherent risk faced by the decisionmakers. Needless to

Finally, the Court will not accede to plaintiffs' request to recover the fees they have incurred in this dispute from Riner's counsel and Corizon. *See* doc. 145 at 14-15. Although the Court cannot say that the parties' conduct has been entirely above reproach, it does appear that there is a sufficient "genuine dispute" that shifting expenses is not warranted. *See, e.g.,* CHARLES ALAN WRIGHT, ARTHUR R. MILLER, *et al.* 8B FED. PRAC. & PROC. CIV. § 2288 (3d ed. 2017) ("Making a motion, or opposing a motion, is 'substantially justified' if the motion raised an issue about which reasonable people could genuinely differ on whether a party was bound to comply with a discovery rule."). Despite the Court's ultimate agreement with plaintiffs that the Settlement Agreement could not *preclude* Riner's testimony, Riner and Corizon have shown that reasonable people might differ on whether that testimony should be

---

say, the decisionmakers would benefit greatly by having guidance as to the potential legal ramifications of their decisions. *Furnishing such guidance prior to the making of the decision, however, is the role of counsel, not of the courts.*" *Hendrix v. Poonai*, 662 F.2d 719, 722 (11th Cir. 1981) (emphasis added). Although 28 U.S.C. § 2201 creates a remedy whereby a party may obtain "a declaration [of the rights and other legal relations of an interested party] . . . hav[ing] the force and effect of a final judgment or decree," a discovery dispute is not the context to seek it. The risk of being sued (and thus the burden of that risk) is pervasive in our litigious age. That risk does not and cannot, however, excuse anyone from their social and civic responsibilities.

subject to burden-limiting protections. That's enough, in the Court's discretion, to avoid fee shifting.[8]

In summary, plaintiffs shall be allowed to subpoena Riner for a second deposition. *See* Fed. R. Civ. P. 30(a)(2)(A)(ii) (requiring leave of court before second deposition of the same deponent). Plaintiffs' various requests concerning Riner's deposition (docs. 125, 146, & 156) are **GRANTED in part** and **DENIED in part**. Corizon's Motion for a Protective Order (doc. 145) and Riner's Motion for a Protective Order (doc. 151) are also **GRANTED in part** and **DENIED in part**.

Finally, plaintiffs have expressed concern over the effect that the prolonged dispute over Riner's deposition has had on the schedule for completing discovery in this case. *See* doc. 156. To assuage that reasonable concern, the Court will proactively extend the close of expert discovery and the civil motions deadline by 30 days. Accordingly, the Court's scheduling Order (doc. 155) is amended as follows:

---

[8] The parties are advised, however, that the Court routinely imposes sanctions against litigants, *and/or their attorneys*, for frivolous objections to relevant questions. *See* Fed. R. Civ. P. 37; *see also, e.g.,* Fed. R. Civ. P. 11(b)(1) (allowing sanctions to be imposed for presenting an argument "for any improper purpose, such as to harass, cause unnecessary delay, or needlessly increase the cost of litigation"). Briefly put, the Court expects that all counsel will scrupulously abide by both the spirit and letter of their professional obligation to cooperate fully in discovery, and avoid further unnecessary delay or expense.

**Close of Expert Discovery**: January 8, 2018

**Last Day for Filing Civil Motions,
including *Daubert* motions but
excluding motions *in limine***: February 21, 2018.

**SO ORDERED,** this  9th  day of November, 2017.

/s/ G.R. Smith
UNITED STATES MAGISTRATE JUDGE
SOUTHERN DISTRICT OF GEORGIA