IN THE UNITED STATES DISTRICT COURT FOR
THE SOUTHERN DISTRICT OF GEORGIA
SAVANNAH DIVISION

SOLOMAN OLUDAMISI AJIBADE, as )
natural parent of Mathew )
Ajibade; and ADENIKE HANNAH )
AJIBADE, as natural parent of )
Mathew Ajibade; THE ESTATE OF )
MATHEW AJIBADE; and CHRIS )
OLADAPO, executor; )
                               )
        Plaintiffs, )
                               )
v. )
                               )
JOHN WILCHER, in his official )
capacity as Chatham County )
Sheriff; CORIZON HEALTH, INC.; )
CORIZON LLC; GREGORY BROWN; )
FREDERICK BURKE; ABRAM BURNS; )
MARK CAPERS; MAXINE EVANS; )
ANDREW EVANS-MARTINEZ; PAUL )
FOLSONE; DEBRA JOHNSON; JASON )
KENNY; and ERIC VINSON; )
                               )
        Defendants. )
_____)

U. S. DISTRICT COURT
Southern District of Ga.
Filed in Office

JAN 25 2018

Deputy Clerk

CASE NO. CV416-082

**O R D E R**

Before the Court is Defendant John Wilcher's Motion for
Partial Summary Judgment. (Doc. 113.) In his motion, Defendant
Wilcher contends that he is entitled to partial summary judgment
on three counts of Plaintiffs' amended complaint. For the
following reasons, his motion is **GRANTED IN PART** and **DENIED IN
PART**. Defendant Wilcher's motion with respect to Plaintiffs'
assault and battery claim, and 42 U.S.C. § 1983 excessive force
claim is **GRANTED** and these claims are **DISMISSED**. However,

Defendant Wilcher's request for summary judgment as to Plaintiffs' wrongful death claim is **DENIED**.

## BACKGROUND

After experiencing a mental health crisis, Mathew Ajibade was detained and transported to the Chatham County Detention Center ("CCDC") on January 1, 2015.[1] (Doc. 115 at 2.) While waiting to be processed, Ajibade failed to comply with a sheriff deputy's instruction to sit down. (Id. at 3.) His non-compliance led to a physical altercation between Ajibade and multiple officers. (Id.) As a result, Ajibade was allegedly placed in a restraint chair and repeatedly tasered in his groin area. (Id. at 4.) He was then placed in a separate cell where Plaintiffs allege that jail staff failed to provide him with adequate medical care as required by law. (Id. at 4-6.) Ajibade was found dead in his cell nearly two hours later. (Id. at 5.)

Subsequently, Ajibade's parents, Soloman Oledamisi and Adenike Hannah Ajibade, and his estate brought suit citing various constitutional and state law violations. (Doc. 21.) Against Defendant John Wilcher in his official capacity as sheriff, Plaintiffs brought suit seeking relief pursuant to 42

---

[1] These facts are taken from Plaintiffs' Statement of Material Facts (Doc. 115) and are not reflective of the entire record before the Court. Defendant, however, does not contest these factual allegations in his briefs and these facts are not relevant to the legal analysis in this order. This information is provided solely for context.

2

U.S.C. § 1983, alleging in Count Three that Defendant Wilcher maintained "a pattern and practice of inadequate and deplorable medical conditions for detainees at the CCDC," and in Count Four the existence of "a pattern and practice of the excessive use of force against detainees at the CCDC." (Id. at 14, 18.) In addition, Plaintiffs also sought relief in Count Five for "wrongful death premised on the criminal, intentional, and negligent acts of each of the Defendants." (Id. at 23.) Plaintiffs allege in Count Six a claim against Defendant Wilcher based on assault and battery. (Id. at 24.)

Defendant Wilcher now seeks dismissal of Counts Four, Five, and Six. In regards to the claim that Defendant Wilcher maintained a pattern and practice of the excessive use of force, Defendant Wilcher alleges that this suit is barred by the Eleventh Amendment. He contends that as sheriff, he functions as an arm of the state and is entitled to the state's immunity from being sued in federal court. With respect to the assault and battery claim, Defendant Wilcher alleges that this claim fails as a matter of law because sovereign immunity bars suits against sheriffs for state law tort claims. Finally, Defendant Wilcher contends that the wrongful death claim fails to the extent it is based on the assault and battery claim or the excessive use-of-force policy claim. The Court will assess each of these arguments in turn.

I.  <u>COUNT FOUR: PATTERN OF EXCESSIVE FORCE</u>

In Count Four of the amended complaint, Plaintiffs contend that Defendant Wilcher is liable pursuant to 42 U.S.C. § 1983 for "maintain[ing] a pattern and practice of the excessive use of force against detainees at CCDC." (Doc. 21 at 18.) In his motion for partial summary judgment, Defendant Wilcher contends that he is entitled to summary judgment on this claim because the Eleventh Amendment bars suits in federal court against the state or arms of the state. (Doc. 113.) He contends that as the sheriff of Chatham County, Georgia, he functions as an arm of the state and can, therefore, claim immunity under the Eleventh Amendment. (<u>Id.</u>)

In response, Plaintiffs contend that sheriffs in Chatham County are not entitled to the same protections as other Georgia sheriffs. (Doc. 114.) Rather, Plaintiffs contend that an 1881 amendment to the Savannah City Charter ("Charter Amendment") changed the relationship between Chatham County, the local sheriff's office, and Georgia. (<u>Id.</u>) As a result, Plaintiffs argue that the sheriff in Chatham County functions more as a county actor when running the jail than a state actor. (<u>Id.</u>) If found to be a county actor, then Defendant Wilcher would not be to entitled to the immunity afforded to other sheriffs in Georgia.

Plaintiffs' argument is a matter of first impression. Accordingly, the Court will begin its analysis by reviewing the Charter Amendment and assessing its validity. After determining whether the Charter Amendment is effective, this Court will then consider what effect it has on whether Defendant Wilcher is entitled to immunity under the Eleventh Amendment.

A. 1881 Charter Amendment

To support its position, Plaintiffs rely on an 1881 amendment to Savannah's City Charter. Ga. L. 1881, p. 393. The Charter Amendment was enacted by the Georgia General Assembly in order to repeal the city's control of the local jail and return it to the control of Chatham County. Id. Within the Charter Amendment, the General Assembly also provided details as to how the jail would be run once under county control. Id.

More specifically, the Charter Amendment provides that the sheriff in Chatham County will function as the jailer and have the ability to hire a deputy jailer and guards subject to the approval of the local county commissioners. Id. Additionally, the provision sets the sheriff's income at one thousand dollars, and mandates that the sheriff must report the number of prisoners incarcerated at the jail and all financial expenditures to the county commissioners. Id. For the county, the Charter Amendment requires that the county provide the jail with supplies. Id. In addition, and most importantly for this

5

legal analysis, the Charter Amendment provides that the county "shall have power to make proper rules and regulations for the government and control of said jail of Chatham [C]ounty, and the prisoners and inmates therein, and, except as herein before provided, are hereby invested with the management and care of said jail." Id.

Plaintiffs contend that the Court should read the Charter Amendment as an express grant of authority to Chatham County over Defendant Wilcher in his operation of the jail. Plaintiffs argue that the Charter Amendment is the key distinguishing factor that makes Defendant Wilcher unlike any other sheriff running a jail in Georgia when considering immunity. In contrast, Defendant Wilcher argues that the Court should ignore the Charter Amendment because it is invalid. He contends that the law is ineffective or, alternatively, the law has been repealed by implication. The Court, however, cannot agree with either of Defendant Wilcher's arguments.

Defendant Wilcher first contends that the Charter Amendment should be ignored by the Court because he argues that it is ineffective. (Doc. 124 at 5.) To make this argument, Defendant first argues that the law is no longer included in Savannah's City Charter and is, therefore, no longer in effect. (Id.) To support his argument, Defendant has included in his briefing a certified copy of the current city charter. (Id. at Ex. 1.) This

argument, however, logically fails. The Charter Amendment initially repealed the City of Savannah's control over the local jail and returned control of the jail to Chatham County. Ga. L. 1881, p. 393. It would be contrary to common sense to expect a law repealing the city's control over the jail to continue to appear in updated forms of the city charter.

Next, Defendant Wilcher argues that the law is invalid because it is listed in an index for the 2009 Edition, Volume 42A of the Official Code of Georgia Annotated as "repealed" and "noncurrent." However, this argument must also fail. Defendant Wilcher misreads the index, which states that the Charter Amendment actually repealed the earlier law vesting power of the jail in the City of Savannah. There is no evidence in the index that the Charter Amendment has been repealed. Moreover, Georgia law expressly provides that indexes lack the force of law. Code Revision Comm'n v. Public.resource.org, Inc., 244 F. Supp. 3d 1350, 1357 (N.D. Ga. 2017). Accordingly, this Court cannot find that the index is evidence that the Charter Amendment has been repealed.

In the alternative, Defendant Wilcher argues that the Charter Amendment is invalid because it was repealed by implication in two different provisions of the Georgia Constitution. First, Defendant Wilcher cites Article IX, § 2,

¶ I(c)(1) of the 1983 Georgia Constitution. This provision provides:

(c) The power granted to counties in subparagraphs (a) and (b) above shall not be construed to extend to the following matters or any other matters which the General Assembly by general law has preempted or may hereafter preempt, but such matters shall be the subject of general law or the subject of local acts of the General Assembly to the extent that the enactment of such local acts is otherwise permitted under this Constitution:

(1) Action affecting any elective county office, the salaries thereof, or the personnel thereof, except the personnel subject to the jurisdiction of the county governing authority.

Ga. Const. art. IX, § 2, ¶ I(c)(1). Defendant Wilcher contends that the Charter Amendment gives Chatham County the direct authority to control the sheriff's office. As a result, the Charter Amendment is directly contradictory to the terms of the provision in the Georgia Constitution that preempts local "action affecting any elective county office." Id. Accordingly, he contends the Charter Amendment has been repealed by implication.

However, the Court cannot agree that this constitutional provision implicitly repeals the Charter Amendment. As an initial matter, "[r]epeals by implication are disfavored under Georgia law." Georgiacarry.org, Inc. v. Code Revision Comm'n, 299 Ga. 896, 899, 793 S.E.2d 35, 37 (2016). Moreover, Georgia law is clear that "a subsequent statute repeals prior

8

legislative acts by implication only when they are clearly and indubitably contradictory, when they are in irreconcilable conflict with each other, and when they cannot reasonably stand together." Moore v. Baldwin Cty., 209 Ga. 541, 545, 74 S.E.2d 449, 452 (1953). In this case, the Court is not convinced that this constitutional provision and the Charter Amendment are clearly contradictory. Rather, it appears that the provision expressly allows counties to regulate matters that are the "subject of local acts of the General Assembly." Ga. Const. art. IX, § 2, ¶ I(c)(1). The Charter Amendment appears to be an example of such an act by the General Assembly. Therefore, the Court cannot find that Article IX, § 2, ¶ I(c)(1) of the 1983 Georgia Constitution clearly repeals the Charter Amendment.

In his second argument that the Charter Amendment has been repealed by implication, Defendant Wilcher cites Article III, § 6, ¶ IV(a) of the 1983 Georgia Constitution. This provision, often called the uniformity clause, provides:

> Laws of a general nature shall have uniform operation throughout this state and no local or special law shall be enacted in any case for which provision has been made by an existing general law, except that the General Assembly may by general law authorize local governments by local ordinance or resolution to exercise police powers which do not conflict with general laws.

Ga. Const. art. III, § 6, ¶ IV(a).

In reliance on the uniformity clause, Defendant Wilcher argues that the General Assembly has passed general laws

9

regarding some of the powers within the Charter Amendment. As a result, he contends that the Charter Amendment has been repealed by implication. Specifically, Defendant Wilcher points to general laws that set the sheriff's salary, allow the Governor to discipline sheriffs for their policies, and require annual training of sheriffs. He contends that because these general laws conflict with the Charter Amendment's instruction, the Charter Amendment is invalid under the uniformity clause.

This Court, however, is unwilling to find that the uniformity clause repeals the Charter Amendment. As previously mentioned, courts disfavor repeals by implications. Moreover, repeals by implication only occur when the laws cannot be reconciled "or the most recent enactment appears to cover the whole law on the subject and substitutes for every prior general, local, and special law relating to that subject matter." Chatham Cty. v. Hussey, 267 Ga. 895, 895, 485 S.E.2d 753, 754 (1997) (citing Cotton States Mut. Ins. Co. v. DeKalb Cty., 251 Ga. 309, 311, 304 S.E.2d 386, 388-89 (1983)). While it is true that certain portions of the Charter Amendment seem to be at odds with some general laws pertaining to sheriffs, Defendant Wilcher is unable to show that general laws are contrary to the entirety of the Charter Amendment. Defendant Wilcher has made no argument that the portion of the Charter Amendment vesting control of the jail in Chatham County is at

10

odds with any general law subsequently enacted by the Georgia General Assembly. Therefore, the Court is unwilling to conclude that the uniformity clause overrules by implication the Charter Amendment.

Moreover, the Georgia Supreme Court has upheld the validity of the Charter Amendment. See Griffin v. Chatham Cty., 244 Ga. 628, 629, 261 S.E.2d 570, 571 (1979). In Griffin, Georgia's Supreme Court considered whether Chatham County had the authority to require the sheriff to accept prisoners at the Chatham County jail pursuant to a contract with the City of Savannah. Id. Although the opinion lacks a detailed discussion of the law, the court ultimately found that Chatham County commissioners had the authority to require the sheriff to accept city prisoners because control of the jail was "returned to the county in 1881".[2] Id. Because the Georgia Supreme Court has upheld the validity of the Charter Amendment, this Court sees no reason to upend the judgment of the state's highest court as to its own laws.

---

[2]Although Griffin predates the 1983 constitutional amendments cited by Defendant Wilcher, the Court finds this point immaterial. The 1983 constitutional amendments are nearly identical to their predecessors. Compare Ga. Const. art. IX, § 2, ¶ I(c)(1), with Ga. Const. of 1976, art IX, § 2, ¶ I(c)(1); compare also Ga. Const. art. III, § 6, ¶ IV(a), with Ga. Const. of 1976, art. I, § 2, ¶ VII. Therefore, the 1983 constitutional amendments do not undermine the Georgia Supreme Court's decision in Griffin.

## B. Eleventh Amendment Analysis

Because this Court has found that the 1881 Charter Amendment is valid and effective, the Court will now consider Plaintiffs' contention that this law prohibits Defendant Wilcher from now seeking immunity under the Eleventh Amendment. The Eleventh Amendment provides immunity to the state and arms of the state from being sued in federal court without the state's consent. Manders v. Lee, 338 F.3d 1304, 1308 (11th Cir. 2003). Instead, a party seeking to sue either the state or one of its agents, must sue the state or its agent in the state's own court. Id. In this case, the question now becomes whether Defendant Wilcher functions as an arm of the state or is instead a local actor that is not entitled to the protections of the Eleventh Amendment.

When determining whether a Georgia sheriff is entitled to immunity, this Court must assess whether the sheriff acts as a state or local actor "in light of the particular function in which the [sheriff] was engaged when taking the actions out of which liability is asserted to arise." See Shands Teaching Hosp. & Clinics, Inc. v. Beech St. Corp., 208 F.3d 1308, 1311 (11th Cir. 2000) ("The pertinent inquiry is not into the nature of [an entity's] status in the abstract, but its function or role in a particular context."). In making this assessment, the Court must consider four factors: "(1) how state law defines the entity;

(2) what degree of control the State maintains over the entity; (3) where the entity derives its funds; and (4) who is responsible for judgments against the entity." Id. at 1309. In this case, the Court must consider these four factors in light of Defendant Wilcher's role in setting the use-of-force policy at the Chatham County jail.

As an initial matter, all courts considering the four-factor test have found that sheriffs in Georgia typically function as arms of the state. See Frederick v. Brown, No. 1:03-cv-176, 2015 WL 4756765, at *14 (S.D. Ga. Aug. 10, 2015) ("Indeed, it is now insurmountable that Georgia sheriffs act as arms of the state-not as county officials . . . ." (internal quotation omitted)); Smith v. Daniels, No. 1:07-cv-2166, 2010 WL 4882950, at *9 (N.D. Ga. Nov. 24, 2010) ("A Georgia sheriff functions as an arm of the state in setting use-of-force policy and possesses Eleventh Amendment immunity from § 1983 use-of-force damage claims brought against him in his official capacity."). Even the Eleventh Circuit Court of Appeals, while considering a comparable case to the one presently before this Court, found that a Clinch County sheriff was an arm of the state when setting a jail's use-of-force policy. Manders, 338 F.3d at 1308-1329. In that case, the court reasoned that although the sheriff was labeled as a "county officer," the county had no real authority over the sheriff or his use-of-

13

force policy. Id. In this case, however, the Court must consider whether the Charter Amendment makes Defendant Wilcher's position materially different from other sheriffs in Georgia.

## 1.    How state law defines the entity

The first factor this Court must consider is how state law defines the sheriff's office in Chatham County. As a starting point, sheriffs in Georgia are elected officials pursuant to state law. Ga. Const. art. IX, § 1, ¶ 1. By design, sheriffs function independently from the county governments where they are elected. Ga. Const. art. IX, § 1, ¶ 1(c)(1). The Georgia Supreme Court has found that "[t]he sheriff . . . is an elected, constitutional officer; he is subject to the charge of the General Assembly and is not an employee of the county commission." Bd. of Comm'rs of Randolph Cty. v. Wilson, 260 Ga. 482, 482, 396 S.E.2d 903, 903 (1990). Moreover, the authority of sheriffs in Georgia to act as jailers overseeing local jails comes directly from the state. O.C.G.A. § 42-4-4(a)(1)-(2).

Although it is clear that sheriffs generally are governed by state law, this Court must focus on how to classify the Chatham County sheriff's office in light of the specific function of setting the jail's use-of-force policy. On this point, the Eleventh Circuit's analysis in Manders is particularly informative. 338 F.3d at 1320. In that case, the Eleventh Circuit specifically looked at Clinch County's

14

influence over the sheriff in setting a use-of-force policy at the jail. Id. The Eleventh Circuit held that although considering the "jail context is important, it likewise is significant that the sheriff's force policy is at issue in many settings and that location alone does not control." Id. Because the sheriff's force policy was not limited to the context of the jail, the Eleventh Circuit in Manders found that the state law still defined the sheriff as a state actor when setting the force policy in the jail. Id.

In this case, Plaintiffs challenge a similar use-of-force policy implemented at a jail. Similar to the use-of-force policy in Manders, Defendant Wilcher's force policy is also not limited to the jail context. Even if Chatham County has control over policies in the jail, this does not give the county control over the sheriff and his general use-of-force policy that applies both inside and outside of the jail. Because the Charter Amendment does not transfer the entirety of the sheriff's authority to the county, the Court finds that Georgia law defines Defendant Wilcher as a state entity. Accordingly, this factor cuts in favor of finding that Defendant Wilcher functions as an arm of the state that is entitled to immunity under the Eleventh Amendment.

## 2. Where state law vests control

The second factor that this Court must consider is where the state vests control over the sheriff's ability to implement a use-of-force policy at the jail. At the outset, the Court notes that there is both state and county control over Defendant Wilcher's use-of-force policy at the jail. On one hand, the state's control over a sheriff's use-of-force policy is well documented. Under O.C.G.A. § 15-16-3, the state requires specialized training of all sheriffs in Georgia. Included in this training, sheriffs receive general law enforcement training that covers the use of force when arresting and handling individuals. See also Manders, 338 F.3d at 1320. Moreover, the governor in Georgia has the ability to investigate and discipline sheriffs in Georgia for any alleged misconduct. O.C.G.A. § 15-16-26. The governor can even seek to permanently remove a sheriff for alleged misconduct. Id. Accordingly, if Defendant Wilcher implements an improper use-of-force policy, the Georgia governor can seek to suspend or remove him from his duties.

On the other hand, however, the Charter Amendment grants Chatham County considerable authority to "make proper rules and regulations" in its control of the jail. Ga. L. 1881, p. 393. In Manders, the Eleventh Circuit determined that the Charter Amendment's grant of authority was material. 338 F.3d at 1318

n.34. In that case, the Eleventh Circuit found that the Charter Amendment "granted the Chatham County Commissioners considerable power over the county jail." Id. The court then concluded that without a local act like the Charter Amendment, the local county in Manders did not have any control over the sheriff. The Eleventh Circuit later reiterated the importance of the Charter Amendment in Powell v. Barrett, 496 F.3d 1288, 1308 (11th Cir. 2007), vacated on other grounds, 541 F.3d 1298 (11th Cir. 2008). In Powell, the Eleventh Circuit again compared the grant of power in the Charter Amendment with a local law and found that, unlike the Charter Amendment, the local law was insufficient to give the county control over the local sheriff. Id.

Although the Court notes that there is both state and county control over the sheriff's use-of-force policy in the jail, the Court ultimately finds the Eleventh Circuit precedent to be dispositive. The Eleventh Circuit has emphasized that the Charter Amendment is a unique grant of power to a local county over a sheriff in implementing a jail's use-of-force policy. Accordingly, the Court finds that this factor cuts in favor of finding that Defendant Wilcher is a local actor that is not entitled to immunity.

### 3. Where the entity derives its funds

The third factor that this Court must consider is whether the sheriff's office derives its funds from the county or the

17

state. As a starting point, it is undisputed that the sheriff's office in Chatham County derives at least some of its funds from the state. In fact, all sheriffs in Georgia receive some funding from the state. See Manders, 338 F.3d at 1323 ("The State funds the annual training of sheriffs, funds the Governor's disciplinary procedure over sheriffs for use of excessive force, and pays for certain state offenders assigned to the county jails under the sheriff's supervision."). It is also undisputed that state law mandates that every county must provide to its sheriff's office some funding to run the county jail. See O.C.G.A. §§ 36-9-5, 42-5-2(a). As a result, Chatham County, like every other county in Georgia, provides funding and sets the budget for the sheriff's office. Previous courts have found that the state mandate to the county to provide funding weighs in favor of finding that the sheriff is a state actor. See, e.g., Pellitteri v. Prine, 776 F.3d 777, 782 (11th Cir. 2015). Those courts have concluded that the local county has no real discretion over how the sheriff office spends the allotted funds and would not otherwise provide these funds, but for the state's mandate. Id.

Plaintiffs contend that the Charter Amendment gives Chatham County unique control over the sheriff's office and how it spends its allotted funds. It is true that the Charter Amendment requires the sheriff to provide detailed financial statements to

18

the county commissioners. Ga. L. 1881, p. 393. More importantly, Plaintiffs contend that Chatham County actively oversees financial decisions made by Defendant Wilcher and dictates how he spends the provided funds. For example, Plaintiffs cite evidence that the Chatham County Board of Commissioners actually approved the purchase of tasers to be used by the sheriff's office. (Doc. 114, Ex. W.)

While there is evidence that Chatham County approved a certain purchase of tasers for the sheriff's office, this is insufficient to show that Chatham County has active control over how Defendant Wilcher decides to allocate allotted funds. The approval of the purchase of tasers was done at Defendant's request. Defendant Wilcher made an independent decision as to how to spend the allotted funds and the county commissioners merely approved the funding to buy the tasers. Moreover, the record also shows that the sheriff's office did not need approval for purchases of tasers or other expenditures totaling less than $2,500. (Id.) As a result, Chatham County Board of Commissioners does not have any special authority to dictate how the local sheriff's office spends its funding.

Ultimately, it is apparent that the jail derives its funding from both the state and the county. As a result, the Court cannot conclude that this factor definitively weighs in favor of finding that the sheriff functions as either a state or

a local actor. See Pellitteri, 776 F.3d at 782. However, because Chatham County only provides funding to the sheriff's office pursuant to a state mandate, the Court finds that this factor tips the balance in favor of finding that Defendant Wilcher acts as a state actor when setting the jail's use-of-force policy.

### 4.    Liability for and payment of judgments

The final factor that this Court must consider is whether payment of any judgment granted in this case will come from either the state or the county. Plaintiffs contend that in this case, Chatham County will be paying for any judgment awarded against Defendant Wilcher. In support of this position, Plaintiffs cite that the county has frequently paid settlements on Defendant Wilcher's behalf. In addition, Plaintiffs contend that Defendant Wilcher responded to an interrogatory inquiring as to whether "any insurance agreements exist under which any person or company carrying on an insurance business may satisfy part of all of the judgment" with "No. Chatham County is self-insured." (Doc. 114, Ex. X.) Plaintiffs contend that this admission is sufficient to show that Chatham County is liable for any damages awarded against Defendant Wilcher.

However, the Court cannot agree. Georgia law expressly provides that "counties are not liable for and not required to give sheriff's money to pay judgments against sheriffs in civil rights actions." Manders, 338 F.3d at 1326 (citing Wayne Cty.

Bd. of Comm'rs v. Warren, 236 Ga. 150, 152, 223 S.E.2d 133, 133 (1976)). Simply because Chatham County has paid certain settlements on behalf of the sheriff does not mean that they must pay the settlement in this case. Moreover, the Court is unconvinced that the interrogatory response is proof that the county will pay any judgment award against Defendant Wilcher. The county is not bound by law to pay for any such judgments.

Rather, if Plaintiffs are awarded a favorable judgment, it is likely that neither the state nor the county will be directly responsible for the judgment against the sheriff. Manders, 338 F.3d at 1327. Instead, any award would be paid from the sheriff's own budget—implicating both state and county funds. Id. ("If a significant adverse judgment occurs, both county and state funds are implicated because [the sheriff] would need to seek a greater total budget from the county for his office and a greater daily rate from the State for felony offenders serving their state sentences in the county jail."). Because state and county funds are implicated by the possibility of a judgment against Defendant Wilcher, the Court cannot determine that this factor weighs in favor of finding that Defendant Wilcher is a state or county actor.

## 5. Conclusion

Ultimately, the Court finds that the Charter Amendment does not change the typical analysis used to consider a sheriff's

status under the Eleventh Amendment in Georgia. With the Charter Amendment, there are both indicators that Defendant Wilcher functions as an arm of the state and as a local actor when setting the use-of-force policy at the jail. This Court, however, finds that the balance tips in favor of finding that Defendant Wilcher does function as an arm of the state when setting the use-of-force policy at the jail. Accordingly, Defendant Wilcher is entitled to immunity under the Eleventh Amendment and his request for summary judgment as to Plaintiffs' claim that he maintains a pattern of the excessive use of force at the jail is **GRANTED**.

II. COUNT SIX: ASSAULT AND BATTERY

In their amended complaint, Plaintiffs also allege that Defendant Wilcher is "liable in *respondeat superior* for the [assault and battery] alleged to have been committed by [the sheriff's] deputies." (Doc. 21 at 24.) In his partial motion for summary judgment, Defendant Wilcher argues that as a sheriff acting in his official capacity he is entitled to sovereign immunity and is protected from suits based on state-law tort claims unless the immunity is otherwise waived. (Doc. 113-1 at 5-6). In this case, he contends there has been no such waiver. (Id. at 6.)

While Defendant Wilcher may be entitled to sovereign immunity, this Court will not address the merits of his

argument. In their response brief, Plaintiffs "concede that the facts as developed do not support the claim" for assault and battery. (Doc. 114 at 23.) Because Plaintiffs have agreed that this claim fails as a matter of law, Count Six for assault and battery is **DISMISSED** with respect to Defendant Wilcher.

III. COUNT FIVE: WRONGFUL DEATH

In Plaintiffs' Amended Complaint, Plaintiffs have also brought suit against Defendant Wilcher in his official capacity for Ajibade's wrongful death "premised on the criminal, intentional, and negligent acts of each of the Defendants, as described in all the other Counts of this Complaint." (Doc. 21 at 23.) In his motion for summary judgment, Defendant Wilcher contends that he is entitled to summary judgment on this claim "to the extent it is premised upon the barred 42 U.S.C. § 1983 excessive force claim or a barred state law tort claim." (Doc. 113, Attach. 1 at 7.) While the Court ultimately agrees with Defendant's logic, the Court cannot dismiss the wrongful death claim. Although Defendant Wilcher is entitled to dismissal of Counts Four and Six, Plaintiffs also have brought suit against Defendant Wilcher in Count Three of the amended complaint for "maintain[ing] a pattern and practice of substandard medical conditions for detainees." (Doc. 21 at 14.) Defendant Wilcher has made no argument to this Court that Count Three should be dismissed. Because Plaintiffs' claim for wrongful death can be

premised on Count Three, Defendant Wilcher is not entitled to summary judgment with respect to Plaintiffs' wrongful death claim. Accordingly, Defendant Wilcher's request for summary judgment as to the wrongful death claim is **DENIED**.

## CONCLUSION

After careful consideration, Defendant Wilcher's motion is **GRANTED IN PART** and **DENIED IN PART**. As a result, Defendant Wilcher is entitled to summary judgment on Counts Four and Six. However, Defendant Wilcher is not entitled to summary judgment on Plaintiffs' claim in Count Five for wrongful death.

SO ORDERED this 25ᵗʰ day of January 2018.

WILLIAM T. MOORE, JR
UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF GEORGIA