IN THE UNITED STATES DISTRICT COURT FOR
THE SOUTHERN DISTRICT OF GEORGIA
SAVANNAH DIVISION

SOLOMAN OLUDAMISI AJIBADE, as )
natural parent of Mathew )
Ajibade; and ADENIKE HANNAH )
AJIBADE, as natural parent of )
Mathew Ajibade; THE ESTATE OF )
MATHEW AJIBADE; and CHRIS )
OLADAPO, executor; )
)
Plaintiffs, )
)
v. ) CASE NO. CV416-082
)
JOHN WILCHER, in his official )
capacity as Chatham County )
Sheriff; CORIZON HEALTH, INC.; )
GREGORY BROWN; FREDERICK BURKE; )
ABRAM BURNS; MARK CAPERS; )
MAXINE EVANS; ANDREW EVANS- )
MARTINEZ; PAUL FOLSONE; DEBRA )
JOHNSON; JASON KENNY; and ERIC )
VINSON; )
)
Defendants. )
)



## ORDER

Before the Court is Plaintiffs' Motion to Exclude the Testimony of Darrell Ross. (Doc. 201). For the following reasons, Plaintiffs' motion is **GRANTED IN PART** and **DENIED IN PART**. To the extent that Defendants wish to use Ross as an expert to offer testimony regarding his interpretation of the law and the legal sufficiency of Plaintiffs' claims, this testimony is excluded. To the extent, however, Defendants wish to use Ross as an expert to offer his interpretation of the

facts in this case as applied to his knowledge and expertise of law enforcement practices and in-custody deaths, this testimony is admissible.

## BACKGROUND

After experiencing a mental health crisis, Mathew Ajibade was detained and transported to the Chatham County Detention Center ("CCDC") on January 1, 2015. (Doc. 115 at 2.) While waiting to be processed, Ajibade failed to comply with a sheriff deputy's instruction to sit down. (Id. at 3.) His non-compliance led to a physical altercation between Ajibade and multiple officers. (Id.) As a result, Ajibade was allegedly placed in a restraint chair and repeatedly tasered in his groin area. (Id. at 4.) He was then placed in a separate cell where Plaintiffs allege that jail staff failed to provide him with adequate medical care as required by law. (Id. at 4-6.) Ajibade was found dead in his cell nearly two hours later. (Id. at 5.)

Subsequently, Ajibade's parents, Soloman Oledamisi and Adenike Hannah Ajibade, and his estate brought suit citing various constitutional and state law violations. (Doc. 1.) Against the various correctional officers involved[1], Plaintiffs brought suit seeking relief in Count One for the use of

---

[1] The correctional officers sued in this case are Frederick Burke, Abram Burns, Mark Capers, Maxine Evans, Andrew Evans-Martinez, Paul Folsone, Debra Johnson and Jason Kenny. For simplicity, these Defendants will be referred to as Defendants Corrections Officers throughout this order.

2

excessive force, and Count Two for alleged deliberate indifference to serious physical and mental health needs. (Id. at 10-13.) Against Defendant Sheriff Wilcher[2], Plaintiffs brought suit seeking relief in Count Three for maintaining a pattern and practice of substandard medical conditions for detainees, and Count Four for maintaining a pattern and practice of the excessive use of force against detainees. (Id. at 14-23.) Plaintiffs also brought suit against Defendant Wilcher and the Defendants Corrections Officers in Count Five for wrongful death, and Count Six for assault and battery.[3] (Id. at 23-25.)

After extensive discovery, both parties have identified a number of experts. Both sides have filed several motions seeking the exclusion of many of the identified experts in this case. At this time, the Court will only consider Plaintiffs' Motion to Exclude Darrell Ross.

**ANALYSIS**

I. STANDARD OF REVIEW

The admission of expert testimony is controlled by Federal Rule of Evidence 702:

---

[2] Originally, Plaintiffs sued Roy Harris in his official capacity as the Chatham County Sheriff. However, John Wilcher has since become the sheriff and is the appropriate defendant in this action.
[3] Plaintiffs also brought suit against Corizon Health, Inc., Corizon, LLC, and Gregory Brown, a nurse employed by Corizon. Those claims, however, are not relevant to Plaintiffs' current motion before the Court.

3

> A witness who is qualified as an expert by knowledge, skill, experience, training, or education may testify in the form of an opinion or otherwise if: (a) the expert's scientific, technical, or other specialized knowledge will help the trier of fact to understand the evidence or to determine a fact in issue; (b) the testimony is based on sufficient facts or data; (c) the testimony is the product of reliable principles and methods; and (d) the expert has reliably applied the principles and methods to the facts of the case.

Rule 702 was amended in response to Daubert v. Merrell Dow Pharmaceuticals, Inc., 509 U.S. 579, 597 (1993), which compelled district courts to perform a gatekeeping function concerning the admissibility of expert testimony. The Eleventh Circuit Court of Appeals has explained that district courts fulfill that function by engaging in a three part inquiry, considering whether

> (1) the expert is qualified to testify competently regarding the matters he intends to address; (2) the methodology by which the expert reaches his conclusions is sufficiently reliable as to be determined by the sort of inquiry mandated in Daubert; and (3) the testimony assists the trier of fact, through the application of scientific, technical, or specialized expertise, to understand the evidence or to determine a fact in issue.

United States v. Frazier, 387 F.3d 1244, 1260 (11th Cir. 2004). While there will often be some overlap between these concepts of qualification, reliability, and helpfulness, they are distinct concepts that courts should be careful not to conflate. Quiet Tech. DC-8, Inc. v. Hurel-Dubois, UK, Ltd., 326 F.3d 1333, 1341 (11th Cir. 2003). The burden of establishing that these requirements are met rests with the proponent of the expert

testimony, and not the Daubert challenger. McCorvey v. Baxter Healthcare Corp., 298 F.3d 1253, 1257 (11th Cir. 2002).

I. MOTION TO EXCLUDE DARRELL ROSS

In their motion, Plaintiffs request that the Court exclude the opinion and testimony offered by Darrell Ross. (Doc. 201.) Ross is a defense expert who plans to testify based on his experience and knowledge of law enforcement policy and procedure, officer use-of-force incidents, and in-custody deaths. (Doc. 201, Attach. 1.) After reviewing the facts of this case, Ross offers three broad opinions in his expert report. First, Ross opines "[t]hat the Chatham County Sheriff's Office (CCSO) administrators have not abdicated their responsibility in developing and implementing operational policies." (Id. at 8.) Second, he concludes that "[a]dministrators of CCSO have provided their officers with training commensurate with their correctional duties." (Id. at 26.) Finally, he opines that "[a] pattern and practice of overusing the TASER is non-existent at CCSO." (Id. at 30.) In their motion, Plaintiffs challenge the admissibility of these opinions and other statements that Ross makes in support of these broader opinions. (Doc. 201.) Plaintiffs contend that his testimony should be excluded because (1) his opinions offer little value to the jury and improperly invade the province of the Court; and (2) his opinions are unreliable. (Id.) After a careful review, the Court disagrees

5

with many of Plaintiffs' assertions, but does conclude that Ross's testimony must be limited.[4]

A. Helpfulness

Plaintiffs' first major challenge to the admissibility of Ross's testimony is that it will not be helpful to the jury in determining any issue of material fact in this case. (Id. at 8.) Instead, Plaintiffs contend that his opinions offer legal conclusions that should be decided solely by a jury. (Id. at 9-11.) In response, Defendants contend that Ross's testimony does not offer any inappropriate legal conclusions, but instead provides useful information about use-of-force incidents and in-custody deaths outside the common knowledge of a typical juror. (Doc. 221.)

If an expert has specialized knowledge that will help the jury understand and determine a fact at issue, the expert's opinion is admissible. Frazier, 387 F.3d at 1262. To determine whether Ross's testimony and opinion will be helpful to the jury, the Court must consider whether "it concerns matters that are beyond the understanding of an average lay person." Id. (citing United States v. Rouco, 765 F.2d 983, 995 (11th Cir. 1985)). The Court will not admit testimony, however, if the

---

[4] Notably, Plaintiffs do not make a direct challenge to Ross's qualification as an expert in this case. Regardless, the Court finds that Ross is qualified as an expert to testify based on his education, research, and experience.

6

proposed testimony "offers nothing more than what lawyers for the parties can argue in closing arguments." Id. at 1262-63.

In this case, the Court is unable to agree with Plaintiffs' assertion that Ross's expert opinion will not help the jury determine the facts in this case. In the Court's view, Ross's testimony will provide significant information that is outside the common knowledge of a typical juror. Ross has extensive experience studying use-of-force policies and standard practices within correctional facilities. His ability to explain different policies and standards of practice will provide useful context for a jury trying to determine whether the various correctional officers in this case used excessive force or acted in accordance with the policies and procedures at the CCDC.

Although the Court is unconvinced by Plaintiffs' argument that Ross's testimony will be unhelpful to a jury in this case, Plaintiffs raise two additional points about the usefulness of Ross's testimony that need to be addressed. First, Plaintiffs contend that Ross's testimony improperly offers his understanding of the law throughout his opinion. (Doc. 201 at 11.) For example, Plaintiffs cite that Ross may try to testify as to what an excessive use-of-force claim includes as detailed by Kingsley v. Hendrickson, 135 S. Ct. 2466 (2015), or may offer his interpretation of Graham v. Connor, 490 U.S. 369 (1989). (Doc. 201 at 11.) In response, Defendants concede that it would

7

be improper for Ross to explain the law to the jury and assert that his testimony at trial will include no such explanations. (Doc. 221 at 19-20.) Although Defendants assert that Ross will not attempt to explain his understanding of the law, it is important that both parties are reminded that any such attempt would be improper. See Montgomery v. Aetna Cas. & Sur. Co., 898 F.2d 1537, 1541 (11th Cir. 1990) ("[T]he court must be the jury's only source of law."). The Court will properly instruct the jury as to the law and no expert will be permitted to expound upon their own understanding of the law.

Next, Plaintiffs contend that Ross's testimony is not useful because it improperly invades the province of the jury by deciding certain issues that should be reserved solely for the jury's consideration. (Doc. 201.) Here, Plaintiffs take issue with several specific statements that Ross makes in support of his opinions. These statements include:

(1) "In my opinion, Lt. Johnson did not abdicate her supervisory duties by relying on the officers in the cell to perform their job properly, within the jail policies, and within the totality of circumstances facing them and the varied circumstances facing her during the period." (Doc. 201, Attach. 1 at 23.)

(2) "In [the CCSO policies on using force and restraints] collective totality, these policies provide a systematic process for guiding officers in the appropriate and reasonable response to various types of detainee resistance." (Id. at 20.)

(3) "From reviewing the thousands of pages contained in this civil action, it is my opinion that Lt. Johnson performed her supervisory duties commensurate to the policies of the jail." (Id. at 33.)

(4) "A pattern and practice of overusing the TASER is non-existent at CCSO." (Id. at 30.)

Plaintiffs argue that these conclusions reach issues that should only be decided by the jury. (Doc. 201.) In response, Defendants argue that Ross is permitted to offer his opinions about these issues in light of his experience and knowledge as an expert. (Doc. 221.)

After careful review of Ross's opinions, the Court can only partially agree with Plaintiffs. It is well settled that experts can offer opinions regarding the ultimate issue in a case. Fed. R. Evid. 704. However, experts cannot make statements that address the legal sufficiency of an argument. Montgomery, 898 F.2d at 1541 ("An expert may not, however, merely tell the jury what result to reach."). Courts have acknowledged that the "the distinction between whether challenged testimony is either an

admissible factual opinion or an inadmissible legal conclusion is not always easy to perceive." Shew v. Horvath, 8:16-cv-766, 2017 WL 632515, at *7 (M.D. Fla. Feb. 16, 2017) (citing Hanson v. Waller, 888 F.2d 806, 811 (11th Cir. 1989)).

In this case, Ross's opinions offer his analysis of the facts he reviewed in light of his expert knowledge of standard law enforcement policies. He opines as to the reasonableness of the CCSO policies and Lieutenant Johnson's conduct in the context of his understanding of typical practices. Moreover, his opinion regarding the use of tasers is presented in light of his expertise and knowledge of the use of force in correctional facilities. As an expert, Ross is permitted to offer these sort of opinions. See Knight v. Miami-Dade Cty., 856 F.3d 795, 907 (11th Cir. 2017) (permitting an expert to testify that the officers in the case "acted objectively reasonabl[y] and in accordance with what is recognized as training throughout the country"); Samples v. City of Atlanta, 916 F.2d 1548, 1551 (11th Cir. 1990) (allowing the admission of a use of force expert to opine that an officer's use of force was permissible because "the manner in which the expert answered the question, properly informed the jury that the expert was testifying regarding prevailing standards in the field of law enforcement"). The Court cannot conclude that Ross's testimony would improperly tell the jury how to rule on certain issues. Rather, he would be

simply providing his opinion based on his understanding of the facts as applied to his knowledge of standard practices. Accordingly, the Court does not find that any of the statements cited are improperly opining as to the legal sufficiency of Plaintiffs' claims. The Court will not limit Ross's ability to offer an opinion that is based on his understanding of the facts and expertise of standard law enforcement practices and in-custody deaths.

Although the Court finds that Ross is permitted to issue his opinion regarding certain ultimate issues in this case, Ross will not be permitted to offer legal conclusions to the jury. Of particular concern to the Court is Ross's statement that "[t]he actions of the officers were reasonable and did not deprive [] Ajibade of his constitutional rights." (Doc. 201, Attach. 1 at 16.) Ross is not permitted to determine whether any person in this case violated Ajibade's constitutional rights. This question is a legal question that must be determined solely by the jury. To the extent that Ross makes any other statements that address the legal sufficiency of a claim, that statement is also excluded and should not be offered at trial.

B. Reliability

In addition to considering whether an expert will assist the trier of fact, the Court must also determine whether the expert is admissible by examining the reliability of the

methodology used to form the expert's opinion. Frazier, 387 F.3d at 1264. In making a decision as to the reliability of Ross's opinions, this Court must "focus 'solely in principles and methodology, not on the conclusions that they generate.'" Seamon v. Remington Arms Co., LLC, 813 F.3d F.3d 983, 988 (11th Cir. 2016) (quoting Daubert, 509 U.S. at 591). In this case, Plaintiffs raise four specific issues with the reliability of Ross's proposed testimony. (Doc. 201.) These issues include that (1) Ross appeared to skim the information in this case in order to form his opinion; (2) Ross refused to apply his own research to the facts of this case; (3) Ross's private consulting work "primarily motivates and propels his scholarship;" and (4) Ross's opinion about taser usage shows an unwillingness to adapt his own "predetermined opinions." (Id. at 12-14.)

After careful review, the Court does not find any meritorious basis to any of Plaintiffs' challenges. First, the Court is not convinced that Ross conducted an inadequate review of the record in this case. His written report shows extensive knowledge of the pertinent facts. (Doc. 201, Attach. 1.) Moreover, to the extent that Plaintiffs believe that Ross did not properly review the record, this point can be raised on cross examination.

Additionally, the Court finds no merit to Plaintiffs' argument that Ross refuses to apply his own research to this

12

case. In support of their argument, Plaintiffs cite that in his research Ross purports that most in-custody deaths result not from the physical aspects of restraint, but rather from "cardiac ischemia or failure, drug overdose or other underlying disease of the subject." (Doc. 201 at 13.) Plaintiffs take issue because Ross opined that it was not the physical restraints that caused Ajibade's death, while also refusing to identify what actually caused Ajibade's death. (Id.) Plaintiffs assert that Ross's failure constitutes a refusal to apply his own research to this case. (Id.)

The Court wholly disagrees. Ross's research opined that any number of underlying medical issues could result in an in-custody death. Simply because he refused to opine as to what specifically led to Ajibade's death does not mean that his testimony is unreliable, or not based on his research and experience. In the Court's view, Ross's testimony does the exact opposite. He applies his knowledge, research, and experience to offer explanations of the facts in this case. Plaintiffs are, of course, reminded that they are permitted to challenge the content of Ross's findings on cross examination. The Court, however, will not exclude Ross's testimony simply because he refuses to opine as to the actual cause of Ajibade's death.

Third, the Court rejects Plaintiffs' argument that Ross's research is unreliable because his research is "motivated and

13

propelled" by his consulting work. (Id.) Here, Plaintiffs cite that Ross's research relies on his expert-consulting work and contact with defense attorneys. (Id.) As a result, Plaintiffs argue that his work is the result of confirmation bias and is, therefore, unreliable. (Id. at 14.)

Again, the Court does not agree with Plaintiffs' assertion. Experts are permitted to use their own consulting work in forming their own opinions about their research. However, Plaintiffs may raise this point at trial during cross examination.

Finally, the Court rejects Plaintiffs' contention that Ross's testimony is unreliable because he has demonstrated an unwillingness to change his opinions. Here, Plaintiffs cite to Ross's opinion about taser usage. (Id.) During his deposition, Ross stated that he would not change his opinion about the usage of tasers in this case after he was asked whether his view would change if he were presented with additional or contradictory evidence. (Id.) Plaintiffs argue that this shows that Ross had predetermined opinions that did not change based on the facts of the case. (Id.) Accordingly, Plaintiffs assert that his testimony should be excluded because it is unreliable. (Id.)

Again, the Court does not agree. Plaintiffs cannot show that Ross's testimony should be excluded simply because he replied that his opinion about an issue would not change given

14

additional information. As an expert, Ross may consider the facts in this case as he sees fit. Plaintiffs, however, are again free to cross examine Ross as to any weaknesses in his argument, including whether or not he properly accounted for all of the evidence in this case.

## CONCLUSION

For the foregoing reasons, Plaintiffs' motion is **GRANTED IN PART** and **DENIED IN PART**. To the extent Defendants wish to use Ross as an expert to offer testimony regarding his interpretation of the law and the legal sufficiency of Plaintiffs' claims, this testimony is excluded. To the extent, however, Defendants wish to use Ross as an expert to offer his interpretation of the facts in this case as applied to his knowledge and expertise of law enforcement practices and in-custody deaths, this testimony is admissible.

SO ORDERED this 11th day of June 2018.

WILLIAM T. MOORE, JR
UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF GEORGIA