# UNITED STATES DISTRICT COURT
# SOUTHERN DISTRICT OF GEORGIA
# SAVANNAH DIVISION

SOLOMAN OLUDAMISI AJIBADE )
and ADENIKE HANNAH AJIBADE, )
as natural parents of Mathew Ajibade, )
and THE ESTATE OF MATHEW )
AJIBADE and CHRIS OLADAPO, )
its Executor, )
)
    Plaintiffs, )
)
v. )   CV416-082
)
JOHN WILCHER, in his official )
capacity as Chatham County Sheriff, )
et al., )
)
    Defendants. )

## **ORDER**

This case arises from the January 2015 death of Mathew Ajibade while in custody at the Chatham County Detention Center. Doc. 21 (Amended Complaint).[1] He was arrested "in the throes of an episode of mental illness," and the police "were informed about his mental state and his need for prescription medicine, and were even given the pill bottle at the arrest to give to [him]." *Id.* at ¶ 2. At the CCDC, however, Mathew

---

[1] For purposes of this brief synopsis only, the facts alleged in the Amended Complaint are accepted as true.

was subjected to excessive force. *Id.* at ¶ 3. No medical care was administered, and he died as a result of his injuries. *Id.* at ¶¶ 4-5.

This case has progressed through discovery and several defendants have moved for summary judgment. *See* docs. 183, 189, 190, 191, 192, & 193. Defendant Sheriff Wilcher seeks to exclude testimony from one of plaintiffs' expert witnesses. Doc. 184. The expert, J.P. Gingras, is a certified public accountant who plaintiffs offer to testify on "decedent's economic loss of wages, loss and benefits [sic] and loss of household services over an assumed projected lifespan, with constant uninterrupted work at wage levels up until retirement at the projected age of 67." *Id.* at 1. Wilcher objects that such testimony is purely speculative and fails to satisfy the requirements of Fed. R. Evid. 702 and *Daubert v. Merrill Dow Pharmaceuticals, Inc.*, 509 U.S. 579 (1993). *Id.*

Plaintiffs respond that the motion should be denied summarily as "[t]he Sheriff did not put in any evidence whatsoever"; neither Gingras' expert report, nor his CV, nor any deposition testimony are offered in support of defendant's motion. Doc. 220 at 1. If the Court does not accept that invitation, they argue that the motion should be denied on the merits because "Gingras's testimony is routinely admitted in court," and the

Sheriff's objections address the weight of Gingras' testimony, not its admissibility. *Id*. at 1-2.

The parties' briefs are not up to the standards this Court expects. As plaintiffs point out, Wilcher has not provided the Court with anything more than a cursory summary of Gingras' proffered testimony. He describes the "conjectural assumptions" of a "report" without attaching or citing to that report. *See* doc. 184 at 2. He has not even bothered to include full case citations. *See id*. at 2-3 (citing "<u>United States v. Downing</u>, 753 F. 2nd 1224," "<u>Liu v. Korean Air Lines</u>, 1993 WL 478343," and "<u>JMJ Enterprises, Inc. v. Via Veneto Italian Ice, Inc.</u>, 1998 WL 175888"). He ultimately abandons even those abbreviated citations, and resorts to a (mistaken) cross-reference. *See id*. at 3 (citing to "<u>JMJ Enterprises</u>, Supra, Page 4," on page 3 of the brief; page 4 includes nothing but counsels' signatures).[2] In the absence of any specific

---

[2] Even assuming that "Page 4" refers to the cited case, and not the "supra" reference, it appears to be a mistake. Page * 4 of the cited, unpublished, out-of-district and -circuit case, includes a discussion of Pennsylvania law on damages, the unremarkable determination that "[a]bsent a statutory exception, litigants must pay their own attorneys' fees," and a paragraph recitation of the factual background of the motion to exclude expert testimony on lost profits. *See JMJ Enters., Inc. v. Via Veneto Italian Ice, Inc.*, 1998 WL 175888 at * 4 (E.D. Pa. April 15, 1998). None of those discussions bear even tangential relation to the proposition that an expert's "assumptions [must be] grounded in facts and not merely conjecture or surmises." Doc. 184 at 3. The Court will pass over in (relative) silence the grammatical idiosyncrasy of the sentence

indication of Gingras' proposed testimony, Wilcher's brief does not provide much of a showing of its inadequacy under Rule 702 and *Daubert*.³  *See* doc. 184 at 2-3.

Before plaintiffs bask in the glow of *schadenfreude*, their own offering is only marginally better.  To their credit, they include full case citations.  The cases they cite, however, are not helpful.  Judge Posner's ruminations, witty as they may be, on the quality of an appellate brief do not amount to a wholesale rejection of short briefs.  *See Cent. States, Se. & Sw. Areas Health & Welfare Fund v. Lewis*, 745 F.3d 283, 286 (7th Cir. 2014) (criticizing an appellate brief of "eight and a half pages," of which "the first seven and a half pages [were] simply a recitation" of factual and procedural background).  The Court agrees that Wilcher's brief is not a paragon, but, as discussed below, its quality is ultimately beside the point.  Plaintiffs' reference to a recent case in which Gingras' testimony was admitted is similarly unhelpful.  *See* doc. 220 at 2.  The Northern

---

itself.

³ Even the limited description provided in the brief is not obviously pertinent to the admissibility of Gingras' testimony.  As discussed below, the value of attorneys' "*ipse dixit*" on such matters is of dubious value, at best.  *See infra*. at 8.

4

District of Georgia merely cited the applicable legal standards and concluded, without any substantive discussion, that the movant's "concerns . . . can be addressed through cross-examination at trial and through the testimony of their [sic] rebuttal expert . . . ." *Woodard v. Dempsey*, 2016 WL 4079713 at * 2-3 (N.D. Ga. Aug. 1, 2016). Plaintiffs surely do not contend either that because Gingras' testimony was admissible in one case, it must be admissible here, or that because cross-examination and counter-testimony were adequate there, they must be adequate here. Finally, although plaintiffs lament that Wilcher's failure to proffer "any evidence whatsoever" leaves the Court with "no basis to rule on the admissibility of Gingras's testimony – other than lawyer argument," they do no more than curse the proverbial darkness.

Despite the parties' efforts, the question presented by the motion is ultimately simple.[4] "[F]or expert testimony to be admissible under Rule

---

[4] Plaintiffs do not dispute Wilcher's implicit assumption that Gingras' testimony is expert testimony, within the meaning of Fed. R. Evid. 702, *Daubert*, and its progeny. *See generally* doc. 220. In different circumstances, the Eleventh Circuit has recognized that "accounting expertise is among the sorts of technical and specialized expertise the use of which is governed by Rule 702 and *Daubert*." *City of Tuscaloosa v. Harcros Chemicals, Inc.*, 158 F.3d 548, 563 n. 17 (11th Cir. 1998). Since the parties do not dispute it, the Court assumes that Rule 702 and *Daubert* provide the applicable standards.

5

702 of the Federal Rules of Evidence, the proponent of the testimony must show that: (1) the expert is qualified to testify competently regarding the matters he intends to address; (2) the methodology by which the expert reaches his conclusions is sufficiently reliable; and (3) the testimony assists the trier of fact, through the application of scientific, technical, or specialized expertise, to understand the evidence or to determine a fact in issue." *Maiz v. Virani*, 253 F.3d 641, 665 (11th Cir. 2001) (citation omitted). If the statement of the standard left any doubt as to the location of the burden of proof, it is clear that "'[t]he burden of laying the proper foundation for the admission of the expert testimony is on the party offering the expert, and admissibility must be shown by a preponderance of the evidence.'"[5] *Cook ex rel. Estate of Tessier v. Sheriff of Monroe Cty., Fla.*, 402 F.3d 1092, 1107 (11th Cir. 2005) (quoting *Allison v. McGhan Med. Corp.*, 184 F.3d 1300, 1306 (11th Cir. 1999)); *see also Jones v. Anderson*, 2018 WL 2717221 at * 5 (S.D. Ga. June 6, 2018) (Baker, J.) ("The proponent of an expert opinion bears the burden of establishing qualification, reliability, and helpfulness by a

---

[5] Plaintiffs are aware of where the burden lies. They correctly state the principle in their brief seeking the exclusion of a defense expert's testimony. *See* doc. 199 at 2.

preponderance of the evidence."). Indeed, "[w]here the [foundational] burden has not been satisfied, Rule 702 precludes expert testimony," and the burden "cannot be satisfied by conclusory arguments and should not be taken lightly." *Jones*, 2018 WL 2717221 at * 6; *see also College Park Holdings, LLC v. Racetrac Petroleum, Inc.*, 239 F. Supp. 2d 1334, 1344 (N.D. Ga. 2002) (citing, *inter alia*, *McCorvey v. Baxter Healthcare Corp.*, 298 F.3d 1253 (11th Cir. 2002)) ("[T]he burden of establishing the standards for admissibility rests with the proffering party.").

The closest plaintiffs come to an argument in favor of the admissibility of Gingras' testimony is their reference to a District of Colorado case, which they contend supports the proposition that criticism of an accountant's "'assumptions and conclusions' . . . 'go to the weight rather than the admissibility' of an opinion." Doc. 220 at 2 (quoting *Jaffrey v. PorterCare Adventist Health Sys.*, 2017 WL 5624572 at * 5 (D. Colo. Nov. 22, 2017)). *Jaffrey* may well accurately represent the law on such challenges, but it does nothing to alleviate the initial burden of proof. It implies, moreover, that both the proponents and opponents of the expert testimony proffered evidence. *See id.* at * 1 (noting that, in addition to the original motion, response and reply briefs were filed and

7

an evidentiary hearing was held). Nothing in *Jaffrey*'s analysis, therefore, undermines the conclusion that, in this circuit at least, proponents – here the plaintiffs – bear the burden of establishing the foundations for the admissibility of expert testimony. As discussed below, it is the location of that burden that determines the outcome here.

As plaintiffs rightly point out, there is *no* evidence bearing on the foundations of Gingras' testimony. Doc. 220 at 1. Their inference based on that total lack – that Wilcher's motion should be summarily denied, *id.* at 2 – is exactly backwards. It is *plaintiffs'* burden to establish the foundations required by the Federal Rules and *Daubert*. They have not borne that burden; not only is there no *preponderance* of the evidence on those foundations, there is *no* evidence at all.[6] The briefs themselves are not evidence. After all, "[t]he *ipse dixit* of [a] lawyer is no better than the *ipse dixit* of the expert in establishing the foundation for admissibility of expert testimony." *Jones*, 2018 WL 2717221 at * 10. Given the utter lack

---

[6] The Court concedes that Gingras' testimony, or discussion of its foundation, might be included elsewhere in the record. If so, neither party has pointed to it. It is simply not the Court's responsibility to trawl through a record containing hundreds of filings comprising thousands of pages in the hope that evidence will turn up. *See Jones*, 2018 WL 2717221 at * 10 (cites omitted) ("[I]t is not the Court's burden to sift through the record and cobble together support for [a proposed expert's] opinions.")

8

of foundation for Gingras' testimony, defendant's motion must be, and is, **GRANTED**.[7]  Doc. 184.

**SO ORDERED,** this  15th  day of January, 2019.

_____
UNITED STATES MAGISTRATE JUDGE
SOUTHERN DISTRICT OF GEORGIA

---

[7] The Court might have convened a *Daubert* hearing, which would provide the plaintiffs an additional opportunity to present foundational evidence for Gingras' testimony. However, such hearings are not automatic. *See Cook*, 402 F.3d at 1113. Given that plaintiffs have not even attempted to satisfy their evidentiary burden, the Court sees no reason to hold a hearing at this time. The Court might also postpone exclusion of the testimony, to allow more detailed briefing on the issue. As noted above, *see supra.* n. 9, it seems clear that plaintiffs are aware that the burden of proof rests with the proponent of expert testimony. The Court cannot fathom why they have ignored the implications of that burden to this motion. Nevertheless, rulings on motions *in limine* are a prophylactic against the introduction of damaging evidence that could "'irretrievably affect the fairness of the trial." *Benson v. Facemeyer*, 2017 WL 1400558 at * 1 (N.D. Ga. April 19, 2017) (quoting *Soto v. Geico Indem. Co.*, 2014 WL 3644247 at * 1 (M.D. Fla. July 21, 2014)). They are granted "'only if the evidence in question is clearly inadmissible,'" and any such ruling is only provisional, subject to reversal by the trial judge. *Id.* (quoting *Wilson v. Pepsi Bottling Grp., Inc.*, 609 F. Supp. 2d 1350, 1359 (N.D. Ga. 2009)) (citing *Ohler v. United States*, 529 U.S. 753, 758 n. 3 (2000) ("[*I*]*n limine* rulings are not binding on the trial judge . . . .")). It is clear enough that plaintiffs have not borne their burden of establishing the foundations of Gingras' testimony, but, if they believe that they can supply that foundation for all or a portion of the testimony they wish to introduce, this Order does not preclude them from trying.